JUAN C. BASOMBRIO (#150703)
JOHN S. BAKER (#144073)
Dorsey & Whitney LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626-7655
Telephone:   (714) 800-1400
Facsimile:   (714) 800-1499
basombrio.juan@dorsey.com
baker.john@dorsey.com

Attorneys for Defendants Republic of Mozambique;
Ministry of Education of the Republic of Mozambique;
Joaquim Chissano Foundation a/k/a Fundacao
Joaquim Chissano; Joaquim Chissano and
Celio Mondlane

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EDUMOZ, LLC,** | Case No. CV13 02309 MMM (CWx) |
| **Plaintiff,** | Assigned for all purposes to: Honorable Margaret M. Morrow |
| **v.** | |
| **REPUBLIC OF MOZAMBIQUE; MINISTRY OF EDUCATION OF THE REPUBLIC OF MOZAMBIQUE; CELIO MONDLANE, an individual; ZEFERINO MARTINS, an individual; JOAQUIM CHISSANO FOUNDATION a/k/a FUNDACAO JOAQUIM CHISSANO, a quasi-governmental organization; JOAQUIM CHISSANO, an individual; DOES, 1-50, inclusive,** | **DECLARATION OF JUAN C. BASOMBRIO, ESQ.** <br><br> **HEARING:** <br><br> **DATE:  JULY 8, 2013** <br> **TIME:  10:00 A.M.** <br> **COURTROOM: 780** <br> **255 E. TEMPLE STREET, LOS ANGELES, CALIFORNIA 90012** |
| **Defendants.** | |

I, JUAN C. BASOMBRIO, ESQ., declare that if called as a witness in this action, I could and would competently testify to the following based on my personal knowledge and/or information and belief:

1.      I am an attorney at law, duly admitted to practice before this Court, and a partner with Dorsey & Whitney LLP, counsel for the following Defendants in this action:  Defendants Republic of Mozambique; Ministry of Education of the Republic of Mozambique; Joaquim Chissano Foundation a/k/a Fundacao Joaquim Chissano; Joaquim Chissano and Celio Mondlane ("collectively, "Defendants").

2.      Attached hereto as Exhibit 1 is a true and correct copy of Defendants' meet and confer letter, dated April 23, 2013, with respect to the instant Motion to Dismiss the Complaint, which I sent by email on that day to the Plaintiff's counsel, and a true and correct copy of the transmission email also in attached as Exhibit 1.

3.      Attached hereto as Exhibit 2 is a true and correct copy of email exchanges between the Defendants' counsel and the Plaintiffs' counsel, on the dates of April 24 and 27, 2013.

4.      Attached hereto as Exhibit 3 is a true and correct copy of email exchanges between the Defendants' counsel and the Plaintiffs' counsel, on the date of April 29, 2013.

5.      Attached hereto as Exhibit 4 is a true and correct copy of the LinkedIn web page of "Alan W. Silberberg" that I obtained from the Internet.

6.       Attached hereto as Exhibit 5 is a true and correct copy of excerpts of the web page of "Silberberg Innovations" that I obtained from the Internet.

7.      Attached hereto as Exhibit 6 is a true and correct copy of a PR Newswire article, dated January 12, 2006, entitled "Former White House Aide and Paramount Pictures Executive, Alan W Silberberg Appointed as CorpHQ Senior Vice President," which I obtained from Westlaw.

/ / /

---

8.     Attached hereto as Exhibit 7 is a true and correct copy in the original Portuguese of the following Mozambican law:  State Financial Administration System, which I obtained from my client, cited in the Declaration of Defendants' Mozambican legal expert Teresa Filomena Muenda filed herewith at paragraphs 6 and 7, and an English translation of excerpts thereof and a certification of translation for the same.

9.     Attached hereto as Exhibit 8 is a true and correct copy in the original Portuguese of the following Mozambican law:  Regulations for Contracting Public Works Contracts, the Supply of Goods and Rendering of Services to the State, which I obtained from my client, cited in the Declaration of Defendants' Mozambican legal expert Teresa Filomena Muenda filed herewith at paragraphs 8 and 9, and an English translation of excerpts thereof and a certification of translation for the same.

10.     Attached hereto as Exhibit 9 is a true and correct copy of web page search results for "Silberberg Innovations, LLC," searched on April 23, 2013, obtained from the California Secretary of State website.

11.     Attached hereto as Exhibit 10 is a true and correct copy of web page search results for "Edumoz, LLC," searched on April 23, 2013, obtained from the following website: delecorp.delaware.gov/tin/controller.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on May 2, 2013 in Costa Mesa, California.


_____*/s/ Juan C. Basombrio*_____

JUAN C. BASOMBRIO

**JUAN C. BASOMBRIO**
**DORSEY & WHITNEY LLP**
**600 ANTON BOULEVARD, SUITE 2000**
**COSTA MESA, CALIFORNIA 92626**
**TEL (714) 800-1405**
**FAX (714) 800-1499**
basombrio.juan@dorsey.com

April 23, 2013

<u>**VIA EMAIL**</u>

Zein Obagi, Jr. Esq.
Seth Stodder, Esq.
The Obagi Law Group
433 North Camden Drive, Suite 400
Beverly Hills, California 90210

   Re: *Edumoz LLC v. Republic of Mozambique et al.*

Dear Counsel:

  Pursuant to the Local Rules, I am writing meet and confer regarding the proposed motions to dismiss the Complaint, to be filed by my clients Defendants Republic of Mozambique and Ministry of Education of the Republic of Mozambique (collectively, the "Government Defendants") and Defendants Joaquim Chissano Foundation, Joaquim Chissano and Celio Mondlane (collectively, the "Foundation Defendants"). In the event that the Court enters the default of any of these Defendants, this meet and confer also would be on said Defendants' motions to vacate the defaults and then dismiss the Complaint against them. This letter also relates to an intended motion to strike portions of the Complaint, also as detailed below.

A. <u>Lack of Subject Matter Jurisdiction/FSIA (FRCP 12(b)(1)</u>

  The Complaint must be dismissed as to the Government Defendants because there is a lack of subject matter jurisdiction over the claims against them. The Government Defendants have foreign sovereign immunity under the Foreign Sovereign Immunities Act, 28 USC sections 1602, et seq. ("FSIA").

  Although in prior correspondence the Plaintiff's counsel has invoked the commercial activity exception, the verified Complaint only invokes the "waiver" exception to the FSIA. *See* paragraph 3(a). The waiver exception (Section 1605(a)(1)) is different from the commercial activity exception (Section 1605(a)(2)). A waiver under the FSIA is narrowly construed and has to be clear. Here, no facts are alleged that there has been any "waiver" of sovereign immunity. The subject purported contract also contains no waiver of sovereign immunity. Courts generally do not grant leave to amend complaints in FSIA cases, and we would oppose such a request here because there is no good cause. Plaintiff has waived the argument that the commercial activity exception applies.

  In any event, the commercial activity exception (which would have been presumably invoked by Plaintiff based on the contract purportedly signed between the former Mozambique

**EXHIBIT 1**     EXHIBIT ___ PAGE 3

Zein E. Obagi, Jr. Esq.
Seth Stodder, Esq.
The Obagi Law Group
433 North Camden Drive, Suite 400
Beverly Hills, California 90210
April 23, 2013
Page 2

Minister of Education and the Plaintiff's alleged predecessor) does not apply because the former Minister of Education lacked actual authority to execute that contract. *Phaneuf v. Republic of Indonesia*, 106 F.3d 302 (9th Cir. 1997). The former Minister of Education lacked actual authority for various reasons including that (1) the contract required prior approval of the Mozambique Minister of Finance and such approval was never obtained, (2) the contract was required to be submitted to the Mozambique public bidding process and that was never done, and (3) the contract required approval of the Mozambique Administrative Tribunal and that also was never done. As such, the contract is null and void, and cannot be the basis to invoke the commercial activity exception.

Thus, apparent authority does not apply to foreign sovereigns. Whether a plaintiff reasonably perceives that the foreign state has empowered its agent to engage in a transaction is irrelevant if the sovereign's laws proscribe or do not authorize the agent's conduct and the plaintiff fails to make a proper inquiry. A foreign official's manifestation of authority to bind the sovereign is insufficient to bind the sovereign. *Velasco v. Government of Indonesia*, 370 F.3d 392 (4th Cir. 2004). Nonetheless, it is noteworthy that the verified Complaint in paragraphs 24 and 25 not only admits that Mr. Silberg was aware that the subject contract needed to meet "Mozambique's protocol for procurement," but also that Mr. Silberg himself "researched what form a 'Contract of Mandate' should take," and then drafted the subject contract. In paragraph 2(c), Mr. Silberg also claims to have "expertise" in "diplomacy."

The subject contract also cannot be the basis of asserting the waiver or commercial activity exception against the Republic or Ministry because the Republic and Ministry are not parties to the contract. According to the Complaint, SI's principal drafted the purported contract and, thus, any ambiguities will be construed against him. The purported contract, on its face, is only between Defendant Zeferino Martins and SI (the alleged predecessor to Edumoz, LLC). The contract does not say that Martins is entering into the contract on behalf of the Ministry or Republic. The object of the contract is to represent "him" and provide certain services. The purported Appendix I states that the "Mandator [Martins] shall pay" the fees in section 3(a). It does not state that the Ministry of Republic or any other Defendant shall pay said fees. With respect to the "recovery fees" in section 3(b), the contract does not specify who has to pay said fees. The contract merely asserts that the "Mandatary is entitled to a fee …" On the face of the contract, the Republic and Ministry are not a party to said contract. As a result, the contract cannot constitute commercial activity "of the foreign state" also for this reason. The contract also does not indicate any waiver of immunity by the Republic or Ministry.

In addition, the acts of the Foundation Defendants also cannot be commercial activity "of" the Government Defendants, because the Foundation is not an "agent or instrumentality" of the Government Defendants as defined in Section 1603(a) and (b) of the FSIA. The Foundation, *inter alia*, is a separate juridical body and the Government Defendants do not own a majority interest in it or control it.

EXHIBIT __1__ PAGE __4__

Zein E. Obagi, Jr. Esq.
Seth Stodder, Esq.
The Obagi Law Group
433 North Camden Drive, Suite 400
Beverly Hills, California 90210
April 23, 2013
Page 3


The Complaint also should be dismissed as to the Foundation Defendants in order to give full effect to the foreign sovereign immunity of the Government defendants under the FSIA and pursuant to FRCP 19.  *Philippines v. Pimentel,* 552 U.S. 851 (2008).  *Pimentel* stands for the proposition that where a sovereign party cannot be joined in an action owing to sovereign immunity, the entire case must be dismissed if there is the potential for the interests of the sovereign to be injured. The same promotion of comity interest referred to in *Pimentel*, supports dismissal of this action against the Foundation Defendants.  If the Court proceeded against the Foundation Defendants without the Government Defendants, it could prejudice the interests of the Government Defendants.

B.     International Comity

Even if the Court had subject matter jurisdiction, the Complaint should be dismissed as to the Government and Foundation Defendants based on the doctrine of international comity. This dispute involves the issue whether a former Minister had authority, under local law, to enter into the subject contract.  That issue should be adjudicated in the Mozambique judicial system. The District Court should exercise its discretion and abstain from adjudicating this dispute.

C.     Lack of Personal Jurisdiction

The Complaint also should be dismissed as to the Government Defendants for lack of personal jurisdiction.  The personal jurisdictional analysis involves two prongs:  whether the requirements of the state long-arm statute are met, and whether Due Process is satisfied.  With respect to foreign states, the FSIA takes the place of the long-arm statute, and it is not satisfied for the reasons stated above.  In addition, in the Ninth Circuit, foreign states also are afforded Due Process protection under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Because the subject contract is null and void and cannot be attributed to the Government Defendants, the Government Defendants lacks sufficient minimum contacts with the State of California to exercise jurisdiction over them under *International Shoe Co.*

The Complaint also should be dismissed as to Defendant Joaquim Chissano for lack of personal jurisdiction.  The facts alleged in the Complaint fail to meet either prong of the personal jurisdiction analysis as to said defendant.

D.     *Forum Non Conveniens* Doctrine

The Complaint should be dismissed as to the Government and Foundation Defendants based on the doctrine of *forum non conveniens.*  (a)  The Mozambique judicial system is an adequate alternative forum because all of the defendants are subject to process there.  (b)  The public interest factors favor the Mozambique forum.  The government of Mozambique has a

Zein E. Obagi, Jr. Esq.
Seth Stodder, Esq.
The Obagi Law Group
433 North Camden Drive, Suite 400
Beverly Hills, California 90210
April 23, 2013
Page 4

strong interest in seeing that this dispute is resolved in Mozambique, because the dispute involves grants to the government of Mozambique, and an unauthorized entry into a contract by a former Minister of Education of Mozambique in violation of the laws of Mozambique.  The United States government does not have an interest in resolving this dispute.  (c)  The private interest factors also favor the Mozambique judicial forum.  Most of the witnesses are in Mozambique or overseas.  The evidence related to the subject grants also is in Mozambique or overseas.  While the Plaintiff's alleged principal in in California, his LLC entered into the alleged agreement with a foreign government, and should have anticipated having to litigate overseas.  In any event, there are no allegations in the Compliant that this Plaintiff, Edumoz -- a Delaware LLC -- had any activity in connection with this dispute in California.

E.     Failure to State a Claim (FRCP 12(b)(6)).

We start with the proposition that the Court can take judicial notice of foreign law under FRCP 44.1, without converting a FRCP 12(b)(6) motion into a summary judgment motion.  *In re Potash Antitrust Litigation*, 686 F.Supp.2d 816, 825 note 14 (N.D.Ill. 2010).  As noted above, under the laws of Mozambique, the former Minister of Education lacked authority to enter into the subject contract and the contract is null and void.

Assuming *arguendo*, and only for purposes of this motion, that California law applies to the asserted causes of action, it is well-established in California law that persons dealing with a public agency are presumed to know the law with respect to an agency's authority to contract.  *People ex rel. Harris v. Rizzo*, 214 Cal. App. 4th 921 (2013).  When a contractor provides service to a public agency and the agency was not authorized to execute the contract, the contractor cannot recover for the work done.  *Amelco Electric v. City of Thousand Oaks*, 27 Cal. 4th 228 (2002).

With these principles in mind, we turn to the individual, purported causes of action in the Complaint:

Fourth COA for Breach of Contract (Defendants Republic, Ministry and Mondlane).

Plaintiff cannot state a claim for breach of contract because the contract is void, and the former Ministry of Education lacked authority to enter into said contract.

As noted above, according to the Complaint, SI's principal drafted the purported contract and, thus, any ambiguities will be construed against him.  The contract, on its face, is also only between Defendant Zeferino Martins and SI.  The contract does not say that Martins is entering into the contract on behalf of the Ministry or Republic.  The object of the contract is to represent "him" and provide certain services.  The purported Appendix I states that the "Mandator shall pay" the fees in section 3(a).  It does not state that the Ministry of Republic or any other

EXHIBIT __1__ PAGE __6__

Zein E. Obagi, Jr. Esq.
Seth Stodder, Esq.
The Obagi Law Group
433 North Camden Drive, Suite 400
Beverly Hills, California 90210
April 23, 2013
Page 5

Defendant shall pay said fees.  With respect to the "recovery fees" in section 3(b), the contract does not specify who has to pay said fees.  The contract merely asserts that the "Mandatary is entitled to a fee ..."  Thus, on the face of the contract, there is no obligation by any of the Government Defendants to pay anything to SI.

Plaintiff's allegation that SI entered into a "verbal contract" with Defendant Mondlane that contained the "same material terms" as the contract is a sham.  If the Government Defendants were obligated to pay the subject fees to SI, as the Plaintiff contends in its verified Complaint, Mondlane did not have an obligation to pay said fees.  No facts have been alleged that Mondlane ever undertook such an obligation.

In paragraph 30(b) of the verified Complaint, the Plaintiff has alleged under oath that Defendant Martins "initial[ed ]or sign[ed] each page" of the contract.  The copy of pages 4-6 of the contract attached to the complaint contain no initials or signatures.  Please provide us with a copy of pages 4-6 with initials or signatures.  The copy attached as page 5 also does not contain a "start date."  Please provide us with a copy that contains the start date, if one exists.

<u>First, Second and Fifth COAs (All Tort Claims) (All Defendants)</u>

Plaintiff cannot plead around the rule that a government defendant is not contractually bound by acts of an agent without actual authority, by attempting to recast the contract claim under tort theories.  Tort theories are designed to vindicate public policy, and public policy provides that the Plaintiff is presumed to know the law when dealing with governmental agencies.  Tort claims also require an independent duty from the contract claim, and there is no such duty here owed to the Plaintiff by any Defendant.  *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.*, 119 Cal.App. 4th 848 (2004).

<u>First COA for Fraud and Second COA for Constructive Fraud (All Defendants)</u>

Plaintiff cannot state a claim against any Defendant, because fraud requires proof of reasonable reliance, and the issue can be decided as a matter of law.  *Broberg v. Guardian Life Ins. Co. of America*, 171 Cal.App. 4th 912 (2009).  Plaintiff lacked reasonable reliance because he is presumed to know that the former Minister lacked actual authority.

Similarly, for purposes of constructive fraud, the reliance element is not relaxed here because, based on the fact allegations in the Complaint, the Defendants were not fiduciaries of the Plaintiff.  The alleged contract, an ordinary commercial transaction, does not give rise to a fiduciary duty.  *Lopez v. Washington Mutual Bank, F.A.,* 2010 WL 1558938 (E.D.Cal. 2010).

As discussed above, the facts conceded in the Complaint also admit that Mr. Silberberg was aware that the contract was subject to local procurement laws.

EXHIBIT ___1___ PAGE __7__

Zein E. Obagi, Jr. Esq.
Seth Stodder, Esq.
The Obagi Law Group
433 North Camden Drive, Suite 400
Beverly Hills, California 90210
April 23, 2013
Page 6

The alleged oral representations of the former Minister also cannot bind the Government Defendants, because the Government Defendants cannot be bound by the representations of a government officer who purports to bind the government when he is without authority to do so. *Los Angeles Customs & Freight Brokers Ass'n v. Johnson*, 277 F.Supp. 525 (C.D. Cal. 1967). If a government officer cannot so bind the Government Defendants, it follows that the Foundation Defendants (a third party) also cannot so bind the Government Defendants.

Third COA for Negligence (All Defendants)

The elements of any negligence cause of action are duty, breach of duty, proximate cause and damages. *Berkley v. Dowds*, 152 Cal.App.4th 518, 526 (2007). Defendants did not owe any duty to advice the Plaintiff regarding the authority of the former Minister to enter into the subject contract, because persons dealing with a public agency are presumed to know the law with respect to an agency's authority to contract.

Seventh COA for Unfair Competition, Section 17200 (All Defendants)

Because the Plaintiff has failed to state claims for any underlying violation of state law, the Plaintiff also cannot proceed on its unfair competition law claim under Section 17200. *Kimball v. Flagstar Bank F.S.B.*, 881 F.Supp.2d 1209 (S.D.Cal. 2012). Moreover, Plaintiff cannot recover damages under the unfair competition law – it is limited to restitution of any money it paid to defendants. *Cal-Tech Comms. v. Los Angeles Cellular Tele Co.*, 20 Cal 4th 163 (1999). Because Plaintiff has not paid, and is not seeking repayment of money it paid to the defendants, it has no claim for damages or restitution under the unfair competition law. Thus, the Section 17200 claim clearly lacks merit.

Sixth COA for Unjust Enrichment (All Defendants)

Plaintiff includes a separate cause of action for unjust enrichment. However, California law entitles a party to the equitable remedy of unjust enrichment only as restitution for an underlying claim, and not as an independent cause of action. *Levine v. Blue Shield of California,* 189 Cal.App.4th 1117 (2010). Plaintiff has failed to state any underlying claim.

Third COA for Accounting (All Defendants)

The right to an accounting is dependent upon the validity of a plaintiff's underlying claims. *Duggal v. G.E. Capital Communications Services, Inc.*, 81 Cal.App.4th 81 (2000). Thus, it also fails because the Plaintiff cannot state an underlying claim.

EXHIBIT ___1___ PAGE __8__

Zein E. Obagi, Jr. Esq.
Seth Stodder, Esq.
The Obagi Law Group
433 North Camden Drive, Suite 400
Beverly Hills, California 90210
April 23, 2013
Page 7

Further, an accounting will not be accorded with respect to a sum that a plaintiff seeks to recover and alleges in his complaint to be a sum certain. *Ford v. Lehman Bros. Bank, FSB*, 2012 WL 2343898 (N.D.Cal. 2012). Plaintiff has alleged, in its verified Complaint, to be owed a sum certain; thus, it is not entitled to an accounting.

And, an accounting also requires a fiduciary relationship, and here there is no fiduciary relationship. *Ford v. Lehman Bros. Bank, FSB, supra.*

<u>Lack of Standing and Failure to Join an Indispensable Party (FRCP 19)</u>

Edumoz LLC lacks standing to sue. Edumoz claims to be the "successor" to Silberberg Innovations LLC ("SI"), but SI is an active LLC. SI is the party to the purported contract attached to the Complaint, and should have been joined under FRCP 19.

<u>Motion to Strike</u>

The Government Defendants will move to strike the request for exemplary damages. Such damages are not available in an FSIA action (*see* Section 1606 of the FSIA). Said Defendants also will move to strike the request for jury trial, because jury trials also are not available in suits brought under the FSIA. *de Csepel v. Republic of Hungary*, 808 F.Supp.2d 113 (D.D.C.2011).

Please confirm that the Plaintiff will consent to the dismissal of this action based on the grounds discussed herein. I look forward to your immediate response, particularly because of the actions that the Plaintiff is taking before the Court. We are also available to immediately discuss the foregoing. In the event that the Plaintiff will not agree to dismissal of the action, we request that the Plaintiff stipulate to waive any remaining portion of the five-day waiting period under the Local Rules.

Very truly yours,

/ss/

Juan C. Basombrio
Partner, Dorsey & Whitney LLP

cc.  John Baker, Esq.
Enclosure(s)

EXHIBIT ___1___ PAGE ___9___

## Basombrio, Juan

| | |
|---|---|
| **From:** | Basombrio, Juan |
| **Sent:** | Tuesday, April 23, 2013 3:26 PM |
| **To:** | zobagi@obagilaw.com; Seth Stodder (sethstodder@obagilaw.com) |
| **Cc:** | Baker, John |
| **Subject:** | Edumoz LLC v. Republic of Mozambique et al. |

Dear Counsel:

Enclosed please find our meet and confer letter.



J. Basombrio April
23 2013 Let...

Best regards,

**Juan C. Basombrio**
Partner
Co-Head of International Group
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
**D O R S E Y  &  W H I T N E Y  LLP**
600 Anton Boulevard, Suite 2000
Costa Mesa, California 92626-7655
**P:** 714.800.1405  **F:** 714.800.1499
California New York Washington D.C. London Shanghai Hong Kong
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**CONFIDENTIAL COMMUNICATION**
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.*

EXHIBIT ____1____ PAGE 10

**Basombrio, Juan**

| | |
|---|---|
| **From:** | Basombrio, Juan |
| **Sent:** | Saturday, April 27, 2013 9:58 AM |
| **To:** | 'sethstodder@obagilaw.com' |
| **Cc:** | 'zobagi@obagilaw.com'; Baker, John |
| **Subject:** | Re: Edumoz LLC v. Republic of Mozambique et al. |

Seth,

We still have not received a response to our meet and confer letter. Please send a response or make yourself available to discuss by the end of business on Monday. Thank you.

Sincerely,

Juan Basombrio
Dorsey & Whitney LLP

---

**From:** Seth Stodder, Esq. [mailto:sethstodder@obagilaw.com]
**Sent:** Wednesday, April 24, 2013 11:37 AM
**To:** Basombrio, Juan
**Cc:** Zein E Obagi Jr <zobagi@obagilaw.com>; Baker, John
**Subject:** Re: Edumoz LLC v. Republic of Mozambique et al.

Juan,

Thanks much for your letter.  We are reviewing it, and will respond later in the week in all likelihood.  Much appreciated, and hope you had a pleasant journey back from Africa.

Best regards,
Seth

On Tue, Apr 23, 2013 at 3:25 PM, <Basombrio.Juan@dorsey.com> wrote:
Dear Counsel:

Enclosed please find our meet and confer letter.

Best regards,

**Juan C. Basombrio**
Partner
Co-Head of International Group
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
**D O R S E Y  &  W H I T N E Y  LLP**
600 Anton Boulevard, Suite 2000
Costa Mesa, California 92626-7655
**P:** 714.800.1405  **F:** 714.800.1499
California New York Washington D.C. London Shanghai Hong Kong
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

EXHIBIT 2   PAGE 11

**EXHIBIT 2**

**CONFIDENTIAL COMMUNICATION**
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted  the e-mail, all attachments and any copies thereof. Thank you.*

EXHIBIT _2_ PAGE _12_

**Basombrio, Juan**

| | |
|---|---|
| **From:** | Zein Obagi <zobagi@obagilaw.com> |
| **Sent:** | Monday, April 29, 2013 4:03 PM |
| **To:** | Basombrio, Juan |
| **Cc:** | Seth Stodder, Esq.; Baker, John |
| **Subject:** | RE: Mozambique |

Juan,

I am appalled by your behavior and that of your co-counsel. You struck me as a consummate professional when we spoke earlier this month, and when we reached an unlikely accord for our clients. I have just returned to the United States this afternoon. Why the fire sirens with regard to your meet and confer efforts? These are complex matters that require thorough research on our part. Our consideration of the issues you raised in your April 23, 2013 letter are not assisted by the total of three cases and one congressional act you used to support approximately 14 positions.

Suffice it to say that in addition to not stipulating to vacate your foreign state clients' defaults, Plaintiff will not be dismissing this action. Defendants' strategy of defending every person in the case except for the Education Minister Zeferino Martins, is a transparent attempt by a corrupt government to dodge responsibility for a legitimate contract.

In your prior correspondence (email of April 9, 2013) you indicated a filing date for your motion of May 28, 2013. You have not altered your opinion that May 28 is the correct due date for your foreign state clients' to respond to the complaint. You have not indicated that your foreign state clients intend to file their motions sooner, now, in light of the defaults sought against them. As Mr. Stodder astutely pointed out in his email, we are required to confer with you by May 23, 2013, per L.R. 7-3, and that we will do.

I do not see why you need any such conference sooner, since the local rules merely require the following written statement in your clients' papers: "This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)." Surely, you can fill out a date with five days notice, right?

Moreover, you are well aware that I am lead counsel on this case. I am unclear why on several occasions you have contacted Mr. Stodder without carbon copying me. Rest assured, you will obtain the same result regardless of whom you contact, but your efforts to counsel shop are not taken kindly, nor do they reflect well on your professionalism. Moreover, Mr. Baker's tone in his last email was exceptionally untoward and unbecoming. Let me echo my colleague: "Dial it back."

In sum, Plaintiff will not dismiss its complaint against your clients. Your meet and confer letter is inadequately supported by authority as to why Plaintiff should dismiss its complaint and, in any event, an education minister patently had authority to enter into a contract that patently benefitted the education ministry, and the entire Republic of Mozambique for generations to come. Do you dispute that Zeferino Martins was education minister at the time Mozambique and the Ministry entered into the Contract of Mondate? Do you contend that the Contract of Mandate did not benefit Mozambique and the Education Ministry? Have you considered that the potential entry of default and default judgment against Martins could collaterally estop Mozambique and the Education Ministry from denying all the things Martins has admitted through his default?

We are too are thoughtfully working through these issues and others. Stop harassing us. We will be with you in due course. Thank you.

Zein E. Obagi, Jr.
Attorney at Law | THE OBAGI LAW GROUP
433 North Camden Drive | Suite 400
Beverly Hills, California 90210

EXHIBIT 3 PAGE 13

**EXHIBIT 3**

Website: www.ObagiLaw.com
Email: zobagi@obagilaw.com
Office: (424) 245-4217
Mobile: (310) 625-9426
Fax: (310) 734-1814

CONFIDENTIALITY NOTICE:  This e-mail and any files attached may contain confidential information that is legally privileged.  If you are not the intended recipient, or a person responsible for delivering it, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is strictly prohibited.  If you have received this transmission in error, please destroy the original transmission and its attachments without reading or saving in any manner.

**From:** Seth Stodder [mailto:sethstodder@obagilaw.com]
**Sent:** Monday, April 29, 2013 3:20 PM
**To:** zobagi@obagilaw.com
**Subject:** Fwd: Mozambique

This guy is becoming annoying....

Sent from my iPhone

Begin forwarded message:

> **From:** <Basombrio.Juan@dorsey.com>
> **Date:** April 29, 2013, 3:12:37 PM PDT
> **To:** <sethstodder@obagilaw.com>
> **Cc:** <Baker.John@dorsey.com>
> **Subject: Re: Mozambique**
>
> Seth,
>
> You may find your comments about "testosterone," the Marquess of Queensbury, etc. to be clever, but we are not interested in word games.
>
> Tomorrow you will have had our meet and confer letter for one week, and you still will not commit to a time when you would make yourself available to discuss it with us. Thus, we must stand by our deadline.
>
> Regards,
>
> Juan Basombrio
> Dorsey & Whitney LL

EXHIBIT *2* PAGE 14

**From:** Seth Stodder, Esq. [mailto:sethstodder@obagilaw.com]
**Sent:** Monday, April 29, 2013 04:51 PM
**To:** Basombrio, Juan
**Cc:** Baker, John
**Subject:** Re: Mozambique

Juan,

Well, I suppose we all should consult the Marquess of Queensbury rules as to how we all might define what is "civil" or "uncivil," and how we might set our rules of engagement.  Suffice it to say, I found the aggressive, testosterone-infused tone of John's email to be unwarranted and out of the blue, given our cordial dealings thus far -- but perhaps that's just me, or perhaps you guys do things a bit differently in Orange County...  Additionally, I never promised a response to your 7-page, 14-point meet and confer letter last week.  I said we would aim to do so, "in all likelihood."  No promises were made.

Regardless, let's move on, and return to the more cordial, professional mode of dealing to which I am accustomed.  We're drafting a response, will run it by our client, and will get it to you when it is done -- it will not be unduly delayed, I assure you.  It is possible it will be in your hands by noon tomorrow, but I will not promise that.  Nor on the other hand will I accept any arbitrary "deadline" set by you that is not grounded in some law somewhere.  If we don't get the response to the meet and confer to you by noon tomorrow, you're of course free to do whatever you want to do, but you might look silly to Judge Morrow if you do something rash, and end up receiving our response to your letter just a few hours later.  But I leave that up to you.

Until then, best regards,

- Seth


Seth M.M. Stodder
Of Counsel
THE OBAGI LAW GROUP
433 North Camden Drive, Ste. 400
Beverly Hills, CA  90210
Tel.: 310-625-9346
Mobile:  310-944-0592
Fax:  310-734-1814

EXHIBIT 3  PAGE 15

On Mon, Apr 29, 2013 at 2:23 PM, <Basombrio.Juan@dorsey.com> wrote:

Seth,

There was nothing uncivil in John's email. You promised a response to our meet and confer letter last week, and there has been no response from you.

Zein was on vacation last week and you nonetheless promised to respond last week, so that is not a good reason to delay now.

Tomorrow, you will have had our meet and confer letter for one week. We have been available to discuss with you for a week. That is sufficient time to respond. Telling us now that you will instead respond "in due course" is unacceptable.

If you will not withdraw your requests for entry of default, we will not allow the Plaintiff to continue to delay our meet and confer process hoping that a default gets entered against my clients in the meanwhile. In order for you to invoke the position that you don't have to complete the meet and confer process until five days before the deadline to respond, you cannot at the same time claim that the deadline to respond has elapsed. Here, you refuse to agree to a date certain for the Government Defendants to respond. You can't have it both ways.

As a courtesy to you, we will give you until Noon tomorrow, Tuesday to make yourself available to discuss our meet and confer letter with us. If you fail to do so, we will proceed accordingly.

Please confirm when we can call you before Noon tomorrow and at what number. Thank you.

Best regards,

Juan Basombrio
Dorsey & Whitney LLP

---

**From:** Baker, John
**Sent:** Monday, April 29, 2013 03:58 PM
**To:** Seth Stodder, Esq. <sethstodder@obagilaw.com>
**Cc:** Basombrio, Juan
**Subject:** RE: Mozambique

Seth:

I am not sure why you view my tone as unprofessional, as that was not the intent. We just don't want to delay any further. We need to meet and confer five days before we file, and we have done that. Do you have an anticipated time for your response?

**From:** Seth Stodder, Esq. [mailto:sethstodder@obagilaw.com]
**Sent:** Monday, April 29, 2013 12:39 PM
**To:** Baker, John
**Subject:** Re: Mozambique

John,

There is no need for your uncivil tone, and I ask that in the future you dial it back. I do not think Judge Morrow will appreciate such a tone in our correspondence (which, over the coming months of motion and discovery practice, she will no doubt see), and

EXHIBIT 3 PAGE 16

I will endeavor to keep our correspondence cordial, professional and civil throughout this litigation. I would request a similar tone from you and your colleagues in the future.

First, with regard to our requests for defaults: We believe our position is solid with regard to our interpretation of the Federal Rules of Civil Procedure and the FSIA. You have filed an ex parte application, and we have opposed it. We have spoken to our client, and he is of the view that Judge Morrow should be allowed to resolve this pure legal issue. We are not inclined to agree to a stipulation setting a different briefing schedule for the government defendants, other than that required by Rule 81.

Second, with regard to your meet and confer letter: Your arbitrary "deadline" of today to respond to the 7-page letter, filled with by my count 14 different legal arguments, that you sent just last Tuesday is not supported by the Local Rules. By my read of the Local Rules (Rule 7-3), there is no such deadline -- other than that we must all conference by 5 days before your deadline to file your clients' motion to dismiss. Of course, we will respond to your meet and confer well before that deadline. But, rest assured, your bluster and uncivil tone will not intimidate us to accelerate our research into the 14 different legal issues you have raised, or our accelerate our time table. Be patient, and you will get a response shortly and in due course.

Best regards,
Seth


Seth M.M. Stodder
Of Counsil
THE OBAGI LAW GROUP
433 North Camden Drive, Ste. 400
Beverly Hills, CA  90210
Tel: 310-625-9346
Mobile: 310-944-0592
Fax: 310-734-1814



On Mon, Apr 29, 2013 at 12:10 PM, <Baker.John@dorsey.com> wrote:
Seth,

We are not agreeable to further delays on the Plaintiff's side in this meet and confer process.

On April 19, 2013, the Plaintiff filed requests for entry of defaults against the Government Defendants. One business day later, on April 22, 2013, you filed amended requests for entry of defaults against the Government Defendants, arguing again that the Government Defendants had not responded to the complaint since the April 19th requests. These requests are premature yet you refuse to withdraw them. You also have opposed our ex parte application to have the Court specially set a response date for the Government Defendants.

Before Zein left on his trip, he stated in an email that you were capable counsel and would be available to deal with this case during his absence. Zein and you also have not had any difficulty

EXHIBIT 3  PAGE 17

filing pleadings in the meanwhile.

We believe that the Plaintiff is now improperly using Zein's trip as an excuse to delay and try to default my clients.  Last week, you stated in an email that you would respond to my client's meet and confer letter by the end of last week. Zein was on his trip last week so that made no difference.

You have now had our meet and confer letter for six days, as it was emailed to you on April 23, 2013. In our letter, we said that we were available to discuss. Your side has had ample time to meet and confer.

As Juan reminded you two days ago, we remain available to discuss and request that you make yourself available to meet and confer with us today. If you fail to do so, we will consider that as a refusal on your part to meet and confer and we will proceed accordingly.

In the alternative, if the Plaintiff withdraws its improper requests for default against the Government Defendants, we would agree to wait longer to meet and confer later.  However, we are not going to allow you to pursue your meritless defaults on the one hand, while delaying the filing of our motion to dismiss on the other hand.

Please call me at (714) 800-1400 today, or let us know by email at what time and number it would be convenient for me to call you today.

Thank you.

Very truly yours,

John Baker
Dorsey & Whitney LLP

EXHIBIT 3   PAGE 18



### Alan W. Silberberg
**Founder, CEO at Silberberg Innovations**
Greater Los Angeles Area · Online Media

### Join LinkedIn and access Alan W. Silberberg's full profile. It's free!

As a LinkedIn member, you'll join 200 million other professionals who are sharing connections, ideas, and opportunities.

* See who you and **Alan W. Silberberg** know in common
* Get introduced to **Alan W. Silberberg**
* Contact **Alan W. Silberberg** directly

View Alan W.'s full profile

### Alan W. Silberberg's Overview

| | |
|---|---|
| Current | **Founder, CEO at Digijaks / Silberberg Innovations** |
| | **Founder at Gov 2.0 LA** |
| | **Co-Founder at Twain Group** |
| Recommendations | **12 people have recommended Alan W.** |
| Connections | **500+ connections** |
| Websites | Company Website |
| | Blog |
| | Portfolio |

### Alan W. Silberberg's Summary

Technology catalyst, and incubator who is consistently ahead of the curve lately with Government 2.0 technologies, media and apps. Digital private diplomacy, digital crisis communications, political branding and brand engagements are major focuses. Digital Branding. Social media strategy and tactics for campaigns, politicians and corporations as well as governments.

Silberberg Innovations, is the first Gov 2.0 based Private Diplomacy and tactical research and advisory company in the space. Now part of Digijaks, LLc.

Gov 2.0 L.A. "Gov20LA" is the first major West Coast Gov 2.0 live and online streaming event. It is an annual event that brings a wide collection of technology, government, academic and finance leaders.

You2Gov was one of the pioneering Gov 2.0 citizen/government engagement platforms that paved the way for Governments in the United States and elsewhere to envision how data and communications can occur in the Government 2.0 era. We developed groundbreaking citizen to government online communications channels and demonstrated the power of open source platforms to multiple federal agencies. I put the site in hiatus in July 2010 when most Federal agencies in the U.S. began their own platforms.

Specialties: Government 2.0. Social Media Strategy and Tactics. Cyber Strategy. Cyberwar. Digital National Security. Politics. E-Politics. E-Government. Private Diplomacy. Crisis Media. Strategic Alliances. Diplomacy. Crisis Communications. Digital Branding. Web 2.0, 3.0, Gov 3.0, 1700 + hours Live Television Hosting/Broadcasting. Los Angeles. Washington DC.

### Alan W. Silberberg's Experience

**Founder, CEO**
**Digijaks / Silberberg Innovations**
Privately Held; 1-10 employees; Investment Banking industry
April 2010– Present (3 years 1 month)
Government 2.0 based Private Diplomacy and Advisory in the Gov 2.0 space as well as other key strategic economic targets. Strategic and tactical analyst and adviser to government agencies and corporations in business with government. International Gov 2.0 relationships across most of the Globe. Now part of Digijaks, LLC which is focused entirely on using cyber tools to defend and protect.

**Founder**
**Gov 2.0 LA**
Privately Held; 1-10 employees; Investment Banking industry
April 2008– Present (5 years 1 month)   Los Angeles and Internet
Launched Gov20LA – First major Government 2.0 "un-conference" on West Coast.

We bring together the best people of Government, Business, Academia and Technology to casually discuss how social media and mobility technology is drastically changing the landscape of how we all view our existence as citizens. And how governments are learning to use the very same tools we use on our own.

See this link for the 2011 Event:
http://www.silberberginnovations.com/gov-2-0-la/

and this link for the 2010 Event:
http://www.vimeo.com/gov20la

**Co-Founder**
**Twain Group**
Public Company; 1-10 employees; Public Relations and Communications industry
March 2011– Present (2 years 2 months)  Beverly Hills, CA and Washington, DC
Client Services: cutting edge digital branding, platform positioning, speech-writing, media coaching and micro-gesture analysis.

EXHIBIT 4   PAGE 19

**EXHIBIT 4**

Alan W. Silberberg's Skills & Expertise

| Public Speaking | Internet Entrepreneur | Community Outreach | Government | Trusted Advisor | Cyber Warfare |
| Social Media Strategist | Gov 2.0 | Gov 3.0 | Digital Diplomacy | Defense | Intelligence Analysis | Threat Intelligence |
| American Politics | Election Technology | Digital | Cyber Strategy | Digital National Security | Strategy |

Alan W. Silberberg's Additional Information

| Websites: | • Company Website |
| | • Blog |
| | • Portfolio |

| Groups and Associations: | Los Angeles World Affairs Council Gov20LA |

Broadridge - SWIFT Service Bureau

Clinton Gore Advance Alumni

Defense 2.0

Gov 2.0 L.A.

Government 2.0

International Government Relations and Public Affairs

Linked CEO

PSengage

Paramount Pictures Alumni

The Federal Circle

The Intelligence Community

U.S. Government Relations & Public Affairs

Viacom Alumni

White House

White House Advance Associates

View Alan W. Silberberg's full profile to...
• See who you and **Alan W. Silberberg** know in common
• Get introduced to **Alan W. Silberberg**
• Contact **Alan W. Silberberg** directly

[View Full Profile]

LinkedIn member directory - Browse members by country abc de fg hi jk lm no pq rs tu vw xy zmore

LinkedIn Corporation © 2011  |

EXHIBIT __4__ PAGE __20__

Digital Private Diplomacy



**Alan W. Silberberg** founded Silberberg Innovations (now part of DIGIJAKS, LLC) and **Gov20LA**. He is one of the most sought after international **Gov 2.0 Analysts** and a frequent blogger and media commentator. He speaks often on Government and Corporate innovations in technology, and private/public partnerships. He is currently advising multinational corporations

**EXHIBIT 5**

EXHIBIT 5 PAGE 21

and national governments on technology, social media and crisis communications. Additionally he advises startups and high growth companies.

He has a long background in Politics, Media and Technology. As a young staffer in the Clinton White House, he was a part of the transformational team that brought the White House into the digital age for phones and other communications. His media background crosses live television, radio and a deep understanding of the technology fundamentals and concerns in politics and Government.

**Alan W. Silberberg** is one of the **leading analysts in Gov 2.0 and (Gov 3.0)**.

He is the founder of Gov20LA which is the first west coast un-conference for Gov 2.0 tech. Alan has a 20 year background in national politics and technology. He is an innovator, thought leader and a leading Analyst on Gov 2.0 – and Gov 3.0 issues surrounding development and implementation of innovative and trans-formative technologies. As the co-founder of "YOU2GOV" in 2008 – he participated in the formative years and played a key role in the public dialog and debates around Government 2.0

Alan W. Silberberg introducing Gov20LA 2010.

You can learn more about him here.

Copyright © 2011-2013 Silberberg Innovations Gov 2.0 Analysts and Advisors Gov 2.0, Gov 3.0, Gov 2.0 L.A Design by Alana Joy

EXHIBIT 5 PAGE 22

Westlaw.

NewsRoom

1/12/06 PRWIRE 14:15:00

Page 1

1/12/06 PR Newswire 14:15:00

PR Newswire
Copyright 2006 PR Newswire

January 12, 2006

Former White House Aide and Paramount Pictures Executive, Alan W Silberberg Appointed as CorpHQ Senior Vice President

REDONDO BEACH, Calif., Jan. 12

REDONDO BEACH, Calif., Jan. 12 /PRNewswire-FirstCall/ -- CorpHQ, Inc. (OTC: COHQ) today announced the appointment of former White House Aide, Alan W Silberberg as Senior Vice President. Mr. Silberberg will direct the Marketing and Communications Departments of both CorpHQ and its group of portfolio companies. He will work closely with the Chief Executive Officer, Chief Operating Officer, and Executive Vice President to manage internal and external communications to strengthen and expand CorpHQ's businesses.

(Logo: http://www.newscom.com/cgi-bin/prnh/20050628/LATU103LOGO )

Alan Silberberg worked in the White House in the Executive Office of the President after successfully serving on the Presidential Transition Team of 1992/1993 and the Clinton/Gore 1992 campaign. At the invitation of The White House, Alan served as an Advance Aide, managing and producing live and taped for broadcast events for both the President and Vice President. Alan also served on several statewide and national political campaigns, including Senator Harris Wofford, PA; Governor John Baldacci, ME; and Vice President Al Gore.

Mr. Silberberg served as government relations executive for Paramount Pictures from 1996-2000. During his tenure with Paramount, he advised the President and Chairman on legislative and political issues, and integrated government relations into the company's business model.

Alan Silberberg comes to CorpHQ after serving as the Chairman of Coolenergy Group, LLC, a venture consulting firm in Los Angeles. Prior to this, Alan was the Executive Producer and Co-host of a live Statewide TV show, "So Goes the Nation" in New England for almost 3 years. Alan led the show's development and led much of the coverage on major issues, including the War on Iraq and the 2004 elections. He negotiated all the broadcast and syndication agreements and completed over 1700 hours of live broadcasting.

Mr. Silberberg was an early innovator in building Internet-based businesses. His first company, Interconcom, developed pilot Internet ISP programs in 1994 and identified the bundled service concept. Another company, 3Vectors, Inc., an Internet auction company for surplus and distressed corporate assets, received venture capital financing, and developed contracts with the Los Angeles MTA, among others.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT _6_ PAGE _23_

**EXHIBIT 6**

"We plan to increase the scope of our marketing and communications efforts during 2006. Alan possesses the superior communications skills and rich media experience needed to drive our ongoing efforts to build increasing market awareness for CorpHQ and its portfolio companies," stated Steve Crane, Chief Executive Officer for CorpHQ.

About CorpHQ, Inc. (OTC: COHQ)

CorpHQ, Inc. provides money and management to high caliber early stage companies, fast-tracking their growth from startup to profitability. Acting as a business accelerator, CorpHQ takes on entrepreneurs with commercially viable products and services and delivers both the capital and hands-on leadership needed for long term growth. The company has a track record of building successful businesses and making a profit. Since 2001, it has helped develop seven companies while generating four consecutive years of growth and earnings for shareholders. In October two portfolio companies, Safeguard Technology International, Inc. and The Giving Card, Inc., announced they received $1 million funding commitments and have agreed to go public.

Forward-Looking Statements

Any statements made in this press release which are not historical facts contain certain forward-looking statements, as such term is defined in the Private Litigation Reform Act of 1995, concerning potential developments affecting the business, prospects, financial condition and other aspects of the company to which this release pertains. These forward looking statements involve known and unknown risks, uncertainties and other factors that may cause our actual results of the specific items described in this release, and the company's operations generally, to differ materially from what is projected in such forward-looking statements. Although such statements are based upon the best judgments of management of the company as of the date of this release, significant deviations in magnitude, timing and other factors may result from business risks and uncertainties including, without limitation, the company's dependence on third parties, general market and economic conditions, technical factors, the availability of outside capital, receipt of revenues and other factors, many of which are beyond the control of the company. Although we believe that the expectations reflected in the forward looking statements are reasonable, we cannot guarantee future results, levels of activity, performance, or achievements. Moreover, neither we nor any other person assumes responsibility for the accuracy and completeness of such statements, and we disclaim any obligation to update information contained in any forward-looking statement.

```
For more information please contact:
Big Apple Consulting USA, Inc.        CorpHQ
Investor Relations                    Alan Silberberg/Gregg Davis
407-884-0444                          310-540-8851
1-866-the-apple                       aws@corphq.com
```

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT __6__ PAGE __74__

SOURCE CorpHQ, Inc.

CONTACT: Alan Silberberg, aws@corphq.com, or Gregg Davis, both of CorpHQ, Inc., +1-310-540-8851; or Investors, Big Apple Consulting USA, Inc., +1-407-884-0444, or +1-866-the-apple, for CorpHQ, Inc.

---- INDEX REFERENCES ---

NEWS SUBJECT: (HR & Labor Management (1HR87); Infrastructure (1IN78); Corporate Funding (1XO17); Business Management (1BU42); Finance Management (1FI66); Funding Instruments (1FU41); Venture Capital (1VE73))

INDUSTRY: (TV (1TV19); Entertainment (1EN08); TV Programming Syndication & Distribution (1TV80); Telecom (1TE27); TV Marketing & Promotion (1TV57); Financial Services (1FI37))

REGION: (Americas (1AM92); North America (1NO39); USA (1US73); California (1CA98))

Language: EN

OTHER INDEXING: (ADVANCE AIDE; BIG APPLE CONSULTING; COOLENERGY GROUP; CORPHQ; CORPHQ INC; EXECUTIVE OFFICE; INVESTORS; ISP; PRESIDENTIAL TRANSITION TEAM; SAFEGUARD TECHNO-LOGY INTERNATIONAL INC; SOURCE CORPHQ INC; TV; WHITE HOUSE) (Al Gore; Alan; Alan Silberberg; Clinton; Communications Departments; Gregg Davis; Harris Wofford; John Baldacci; Logo; Paramount; Paramount Pictures Executive; Prior; Silberberg; Silberberg Appointed; Steve Crane) (Los Angeles; Iraq; Los Angeles; California)

KEYWORDS: (FIN); (OTC); (PER)

COMPANY TERMS: CORPHQ INC

TICKER SYMBOL: NASDAQ-OTCBB:COHQ

Word Count: 1077
1/12/06 PRWIRE 14:15:00
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 6 PAGE 25

Wednesday, February 13, 2002

SERIES 1, ISSUE 7

**[escutcheon:]**

**REPUBLIC OF MOZAMBIQUE**

**OFFICIAL GAZETTE OF THE REPUBLIC**

**The Official Publication of the Republic of Mozambique**

**2nd SUPPLEMENT**

**Law No. 9/2002:**

Creates the State Financial Administration System.

Article 16

**(International Contracts and Agreements)**

1. Signing international contracts and agreements that implicate the State in assuming financial responsibilities or that involve public revenue requires prior authorization by the Minister in charge of Finances, even if the State Budget contains a budget line for such expenditures.
2. The lack of authorization by the Minister in charge of Finances will result in the contract or agreement being null and void, and thus no funds may be paid under that void contract.

**EXHIBIT 7**


EXHIBIT 7 PAGE 26



**TRANSPERFECT**

### CERTIFICATE OF ACCURACY

I, Nida Nunka, of TransPerfect, Inc. do hereby declare that the following are to the best of my knowledge and belief, a true and accurate translation, within the given parameters, of the document "Portions of REPUBLIC OF MOZAMBIQUE OFFICIAL GAZETTE OF THE REPUBLIC The Official Publication of the Republic of Mozambique 2nd SUPPLEMENT: Wednesday, February 13, 2002, Series 1, Issue 7" translated from Portuguese into English.

A copy of the final translation is attached.

I so declare under penalty of perjury under the laws of the United States on this 30th day of April, 2013.

_____

Nida Nunka
TransPerfect Translations, Inc.

Sworn before me this 30th of April, 2013

_____
Signature, Notary Public

RYAN ALEXANDER DROST
Notary Public - State of New York
No. 01DR6262048
Qualified in NEW YORK County
My Commission Expires MAY 21, 2016

_____
Stamp, Notary Public

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 80 CITIES WORLDWIDE

EXHIBIT ___ PAGE ___

Case 2:13-cv-02309-MMM-CW   Document 32-2   Filed 05/02/13   Page 29 of 71   Page ID #:959

**Quarta-feira, 13 de Fevereiro de 2002**            I SÉRIE — Número 7



# BOLETIM DA REPÚBLICA

### PUBLICAÇÃO OFICIAL DA REPÚBLICA DE MOÇAMBIQUE

# 2.º SUPLEMENTO

## IMPRENSA NACIONAL DE MOÇAMBIQUE

### — AVISO·

A matéria a publicar no «Boletim da República» deve ser remetida em cópia devidamente autenticada, uma por cada assunto, donde conste, além das indicações necessárias para esse efeito, o averbamento seguinte, assinado e autenticado· Para publicação no «Boletim da República».

## SUMÁRIO

Assembleia da República:

**Lei n.º 9/2002:**

Cria o Sistema de Administração Financeira do Estado.

## ASSEMBLEIA DA REPÚBLICA
—
### Lei n.º 9/2002
#### de 12 de Fevereiro

O Sistema de Administração Financeira vigente assenta em normas legais que remontam de há mais de cem anos, sendo de destacar o Regulamento de Fazenda, que data de 1901 e o Regulamento de Contabilidade Pública, de 1881.

A necessidade de reforma com vista a introduzir legislação e modelos de gestão mais adequados às necessidades actuais de administração do erário público foram determinando a adopção e implementação pontuais de algumas medidas.

Com efeito, a partir de 1997 tem se vindo a desenvolver esforços de modernização nas áreas do orçamento do Estado, impostos indirectos, alfândegas, entre outras, com o objectivo de melhorar o sistema de programação e execução orçamental, harmonizar o sistema dos impostos indirectos e a pauta aduaneira com os sistemas vigentes nos países da região em que Moçambique se insere e delinear circuitos de registo na área da contabilidade pública, visando torná-los mais eficientes, eficazes e transparentes.

Assim, convindo estabelecer de uma forma global mais abrangente e consistente os princípios básicos e normas gerais de um sistema integrado de administração financeira dos órgãos e instituições do Estado, ao abrigo do disposto no n.º 1 do artigo 135 da Constituição da República, a Assembleia da República determina:

### TÍTULO I

### Sistema de administração financeira do Estado

#### CAPÍTULO I

#### Disposições gerais

##### ARTIGO 1
##### (Objecto)

1. É criado o Sistema de Administração Financeira do Estado, doravante designado por SISTAFE.

2. O SISTAFE compreende os seguintes subsistemas:

   a) Subsistema do Orçamento do Estado;

   b) Subsistema da Contabilidade Pública;

   c) Subsistema do Tesouro Público;

   d) Subsistema do Património do Estado; e

   e) Subsistema do Controlo Interno.

3. O SISTAFE estabelece e harmoniza regras e procedimentos de programação, gestão, execução e controlo do erário público, de modo a permitir o seu uso eficaz e eficiente, bem como produzir a informação de forma integrada e atempada, concernente à administração financeira dos órgãos e instituições do Estado.

##### ARTIGO 2
##### (Âmbito de aplicação)

1. A presente Lei aplica-se a todos os órgãos e instituições do Estado.

2. Estão compreendidas no número anterior as instituições do Estado com autonomia administrativa e financeira, nos termos previstos no artigo 6 desta Lei.

3. A presente Lei aplica-se também às autarquias e empresas do Estado, excepto no tocante à prestação de contas, que se rege por legislação específica.

EXHIBIT 4   PAGE 28

### Artigo 3
#### (Objectivos do SISTAFE)

O SISTAFE tem por objectivos:

    *a)* estabelecer e harmonizar regras e procedimentos de programação, gestão, execução, controlo e avaliação dos recursos públicos;

    *b)* desenvolver subsistemas que proporcionem informação oportuna e fiável sobre o comportamento orçamental e patrimonial dos órgãos e instituições do Estado;

    *c)* estabelecer, implementar e manter um sistema contabilístico de controlo da execução orçamental e patrimonial, adequado às necessidades de registo, da organização da informação e da avaliação do desempenho das acções desenvolvidas no domínio da actividade financeira dos órgãos e instituições do Estado;

    *d)* estabelecer, implementar e manter o sistema de controlo interno eficiente e eficaz e procedimentos de auditoria interna internacionalmente aceites;

    *e)* estabelecer, implementar e manter um sistema de procedimentos adequados a uma correcta, eficaz e eficiente condução económica das actividades resultantes dos programas, projectos e demais operações no âmbito da planificação programática delineada e dos objectivos pretendidos.

### Artigo 4
#### (Princípios fundamentais)

O SISTAFE rege-se, de entre outros, pelos seguintes princípios:

    *a)* regularidade financeira, pela qual a execução do orçamento do Estado deve ser feita em harmonia com as normas vigentes e mediante o cumprimento dos prazos estabelecidos;

    *b)* legalidade, o qual determina a observância integral das normas legais vigentes;

    *c)* economicidade, na base do qual se deve alcançar uma utilização racional nos recursos postos à disposição e uma melhor gestão de tesouraria;

    *d)* eficiência, que se traduz na minimização do desperdício para a obtenção dos objectivos delineados;

    *e)* eficácia, de que resulta a obtenção dos efeitos desejados com a medida adoptada, procurando a maximização do seu impacto no desenvolvimento económico e social.

### Artigo 5
#### (Autonomia administrativa)

O regime geral de administração financeira dos órgãos e instituições do Estado é o de autonomia administrativa, entendendo-se, por esta, a capacidade concedida aos serviços e organismos do Estado de praticar actos administrativos definitivos e executórios, no âmbito da respectiva gestão administrativa corrente.

### Artigo 6
#### (Autonomia administrativa e financeira)

1. O regime excepcional de administração financeira dos órgãos e instituições do Estado é o de autonomia administrativa e financeira, entendendo-se, por esta, a capacidade reconhecida por lei a uma entidade pública, dotando-a com poderes próprios para praticar actos administrativos definitivos e executórios, no âmbito da respectiva gestão administrativa e financeira corrente.

2. Os órgãos e instituições do Estado só podem dispor de autonomia administrativa e financeira quando esta se justifique para a sua adequada gestão e, cumulativamente, as suas receitas próprias atinjam o mínimo de dois terços das respectivas despesas totais.

3. Para efeitos do disposto neste artigo não são consideradas receitas próprias os recursos provenientes do orçamento do Estado, nomeadamente os resultantes das transferências correntes e de capital, dos orçamentos da segurança social, de quaisquer outros órgãos ou instituições do Estado dotados ou não de autonomia administrativa e financeira e as receitas provenientes de donativos ou legados.

4. A atribuição do regime excepcional, com fundamento na verificação dos requisitos previstos neste artigo, bem como a sua cessação, nos termos a regulamentar, é da competência do Governo, salvo nos casos em que a lei expressamente defina em contrário.

### CAPÍTULO II

#### Organização e funcionamento do SISTAFE

### Artigo 7
#### (Organização)

1. O SISTAFE compreende um conjunto de órgãos, subsistemas, normas e procedimentos administrativos que tornam possível a obtenção da receita, a realização da despesa e a gestão do património do Estado, incluindo suas aplicações e correspondente registo.

2. O SISTAFE compreende também a obtenção e gestão das receitas que não determinem alterações ao património do Estado.

### Artigo 8
#### (Órgão coordenador)

A direcção e coordenação do SISTAFE competem ao Ministro que superintende a área das Finanças.

### Artigo 9
#### (Exercício económico)

1. O exercício económico, no âmbito do SISTAFE, coincide com o ano civil.

2. São consideradas no exercício económico respectivo:

    *a)* as receitas nele cobradas;

    *b)* as despesas nele pagas;

    *c)* as despesas nele por pagar quando regularmente efectuadas.

### TÍTULO II

#### Subsistemas do SISTAFE

### CAPÍTULO I

#### Subsistema do Orçamento do Estado

##### SECÇÃO I

Organização e competências

### Artigo 10
#### (Organização)

O Subsistema do Orçamento do Estado, designado abreviadamente por SOE, compreende todos os órgãos ou

EXHIBIT 7 PAGE 29

instituições que intervêm nos processos de programação e controlo orçamental e financeiro e abrange ainda as respectivas normas e procedimentos.

### Artigo 11
#### (Competências)

Compete aos órgãos e instituições que integram o SOE:

*a)* preparar e propor os elementos necessários para a elaboração do Orçamento do Estado;

*b)* preparar o projecto da Lei Orçamental e respectiva fundamentação;

*c)* avaliar os projectos de orçamentos dos órgãos e instituições do Esfádo;

*d)* propor medidas necessárias para que o Orçamento do Estado comece a ser executado no início do exercício económico a que respeita;

*e)* preparar, em coordenação com o Subsistema do Tesouro Público, a programação relativa à execução orçamental e financeira, mediante a observância no disposto na presente Lei e respectiva regulamentação complementar;

*f)* avaliar as alterações ao Orçamento do Estado;

*g)* avaliar os processos de execução orçamental e financeira.

### SECÇÃO II
### Orçamento

#### Artigo 12
#### (Objecto)

O Orçamento do Estado é o documento no qual estão previstas as receitas a arrecadar e fixadas as despesas a realizar num determinado exercício económico e tem por objecto a prossecução da política financeira do Estado.

#### Artigo 13
#### (Princípios)

1. Na sua preparação e execução, o Orçamento do Estado observa, de entre outros, os seguintes princípios e regras:

*a)* anualidade, nos termos do qual o Orçamento do Estado tem um período de validade e de execução anual, sem prejuízo da existência de programas que impliquem encargos plurianuais;

*b)* unidade, na base do qual o Orçamento do Estado é apenas um;

*c)* universalidade, pelo qual todas as receitas e todas as despesas que determinem alterações ao património do Estado, devem nele ser obrigatoriamente inscritas;

*d)* especificação, segundo o qual cada receita e cada despesa deve ser suficientemente individualizada;

*e)* não compensação, através do qual as receitas e as despesas devem ser inscritas de forma ilíquida;

*f)* não consignação, por força do qual o produto de quaisquer receitas não pode ser afectado à cobertura de determinadas despesas específicas, ressalvadas as excepções previstas no n.º 2 seguinte;

*g)* equilíbrio, com fundamento no qual todas as despesas previstas no orçamento devem ser efectivamente cobertas por receitas nele inscritas;

*h)* publicidade, em conformidade com o qual a Lei Orçamental, as tabelas de receitas e as tabelas de despesas e bem assim as demais informações económicas e financeiras julgadas pertinentes devem ser publicadas em *Boletim da República.*

2. Exceptuam-se do princípio da não consignação os casos em que:

*a)* por virtude de autonomia administrativa e financeira, as receitas tenham de ser afectadas a determinado fim específico ou a determinada instituição ou instituições;

*b)* os recursos financeiros sejam provenientes de operações específicas de crédito público;

*c)* os recursos provenientes decorrem de doações, heranças ou legados a favor do Estado com destino específico;

*d)* os recursos tenham, por lei especial, destino específico.

3. Constitui excepção ao princípio da especificação a inscrição no Orçamento do Estado de uma dotação provisional, sob gestão do Ministro que superintende a área das Finanças, por forma a permitir a sua afectação, em momento oportuno e atempado, à realização de despesas não previsíveis e inadiáveis.

#### Artigo 14
#### (Receitas)

1. Constituem receita pública todos os recursos monetários ou em espécie, seja qual for a sua fonte ou natureza, postos à disposição do Estado, com ressalva daquelas em que o Estado seja mero depositário temporário.

2. Nenhuma receita pode ser estabelecida, inscrita no Orçamento do Estado ou cobrada senão em virtude de lei e, ainda que estabelecidas por lei, as receitas só podem ser cobradas se estiverem previstas no Orçamento do Estado aprovado.

3. Os montantes de receita inscritos no Orçamento do Estado constituem limites mínimos a serem cobrados no correspondente exercício.

#### Artigo 15
#### (Despesas)

1. Constitui despesa pública todo o dispêndio de recursos monetários ou em espécie, seja qual for a sua proveniência ou natureza, gastos pelo Estado, com ressalva daqueles em que o beneficiário se encontra obrigado à reposição dos mesmos.

2. Nenhuma despesa pode ser assumida, ordenada ou realizada sem que, sendo legal, se encontre inscrita devidamente no Orçamento do Estado aprovado, tenha cabimento na correspondente verba orçamental e seja justificada quanto à sua economicidade, eficiência e eficácia.

3. As despesas só podem ser assumidas durante o ano económico para o qual tiverem sido orçamentadas.

4. As dotações orçamentais constituem o limite máximo a utilizar na realização de despesas públicas, no correspondente exercício.

#### Artigo 16
#### (Contratos e acordos internacionais)

1. A assinatura de contratos e acordos internacionais que impliquem a assunção de responsabilidades financeiras para o Estado ou envolvam matéria fiscal carecem de prévia autorização do Ministro que superintende a área das Finanças, ainda que tais despesas tenham dotação no Orçamento do Estado.

EXHIBIT 7 PAGE 30

2. A falta de autorização do Ministro que superintende a área das Finanças determina a nulidade do contrato ou do acordo, não podendo por isso ser licenciada qualquer transferência cambial no âmbito de algum contrato ou acordo nulo.

### Artigo 17
#### (Escalonamento de encargos contratuais)

Os compromissos resultantes de leis, tratados ou contratos já firmados pelos órgãos e instituições do Estado que envolvam despesas em mais de um ano económico devem apresentar o escalonamento plurianual dos respectivos encargos, associado ao respectivo enquadramento orçamental, por forma a que a liquidação do encargo esteja garantida na dotação do próprio ano em que for determinado o pagamento do respectivo montante escalonado.

### SECÇÃO III
## Orçamento por programas
### Artigo 18
#### (Regime)

1. Sem prejuízo da sua especificação de acordo com as classificações orgânica, territorial, económica e funcional, as despesas que integram o orçamento do Estado podem estruturar-se, no todo ou em parte, por programas.

2. Com o objectivo de racionalizar a preparação e reforçar o controlo da gestão e da execução orçamental, a estruturação da programação orçamental é composta por programas, medidas e projectos ou acções.

### Artigo 19
#### (Programas orçamentais)

1. O programa orçamental inclui as despesas correspondentes a um conjunto de medidas ou projectos ou acções de carácter plurianual que concorrem, de forma articulada e complementar, para a concretização de um ou vários objectos específicos, relativos a uma ou mais políticas públicas, dele fazendo necessariamente parte integrante um conjunto de indicadores que permitam avaliar a economia, a eficiência e a eficácia da sua realização.

2. O programa orçamental pode ser executado por uma ou várias entidades gestoras.

3. Para efeito do disposto no número anterior, consideram-se entidades gestoras dos programas orçamentais todos os órgãos e instituições do Estado, incluindo serviços e organismos com autonomia administrativa e financeira, competentes para realizar as despesas compreendidas naqueles programas.

4. Cada programa orçamental pode dividir-se em medidas, podendo existir programas com uma única medida.

5. Os programas orçamentais que não se dividirem em medidas, dividem-se em projectos ou acções, podendo existir programas com um único projecto ou acção.

6. Os projectos ou acções, integrados ou não em medidas, podem ser criados no decurso da execução do Orçamento do Estado.

### Artigo 20
#### (Medidas)

1. A medida compreende despesas de um programa orçamental correspondente a projectos, ou acções, ou ambos, bem especificados e caracterizados, que se articulam e se complementam entre si e concorrem para a concretização dos objectivos do programa em que se inserem.

2. A medida é executada por uma única entidade gestora.

3. Cada medida divide-se em projectos ou acções, que constam de anexo informativo, podendo existir medidas com um único projecto ou acção.

4. O projecto ou acção corresponde a unidades básicas de realização do programa ou medida com orçamento e calendarização rigorosamente definidos, susceptíveis de, quando executadas, darem imediatamente lugar a resultados avaliáveis.

### SECÇÃO IV
## Elaboração da proposta orçamental
### Artigo 21
#### (Orçamento do Estado)

1. A elaboração do Orçamento do Estado é anual e da competência do Governo.

2. Na elaboração anual dos seus programas e orçamentos, o Governo deve ter em conta a sua compatibilização com os orçamentos de investimento plurianuais, considerando toda a planificação delineada na preparação destes.

3. A programação e execução do Orçamento do Estado devem ser tratadas a preços correntes.

### Artigo 22
#### (Propostas orçamentais dos órgãos e instituições do Estado)

1. Os órgãos e instituições do Estado apresentam ao Ministério que superintende a área das Finanças, nos prazos legalmente definidos, as suas propostas orçamentais, tendo em vista as acções a desenvolver no âmbito das suas funções.

2. Das propostas orçamentais a que alude o número anterior constam, com base nas directrizes orçamentais fixadas pelo Governo, através do Ministério que superintende a área das Finanças, os limites quantitativos, bem como os objectivos a atingir a figurar na proposta do Orçamento do Estado.

### Artigo 23
#### (Classificação orçamental)

1. Compete ao Governo aprovar e manter um classificador orçamental de receitas e despesas do Estado, cuja estrutura obedeça às seguintes regras:

    *a)* a receita orçamental é classificada de acordo com os critérios económico, territorial e por fontes de recursos;

    *b)* a despesa orçamental é classificada de acordo com os critérios orgânico, territorial, económico e funcional.

2. A classificação económica, tanto da receita como da despesa, compreende as duas categorias seguintes:

    *a)* corrente; e
    *b)* de capital.

### Artigo 24
#### (Proposta do Orçamento do Estado)

1. A proposta do Orçamento do Estado observa estrita conformidade com a política económico-financeira e o programa anual do Governo.

2. A proposta do Orçamento do Estado compõe-se do articulado da respectiva proposta de Lei Orçamental e respectivos mapas.

3. Os mapas orçamentais a que se refere o n.º 2 deste artigo compreendem:

    *a)* mapas globais das previsões de receitas, dos limites das despesas e financiamento do défice;

EXHIBIT 7   PAGE 31

*b)* mapas das previsões das receitas correntes e de capital, de âmbito central e provincial, classificados de acordo com os critérios orgânico, territorial e por fontes de recursos;

*c)* mapas dos limites das despesas correntes, de âmbito central e provincial, classificados de acordo com os critérios orgânico, territorial, económico e funcional;

*d)* mapa das despesas de capital, de âmbito central e provincial, classificados de acordo com os critérios orgânico, territorial, económico, funcional e por fontes de recursos.

4. O Governo apresenta ainda à Assembleia da República, com a proposta do Orçamento do Estado, todos os elementos necessários à justificação da política orçamental, nomeadamente:

*a)* o Plano Económico e Social do Governo;

*b)* o balanço preliminar da execução do Orçamento do Estado do ano em curso;

*c)* a fundamentação da previsão das receitas fiscais e da fixação dos limites da despesa;

*d)* a demonstração do financiamento global do Orçamento do Estado com discriminação das principais fontes de recursos;

*e)* a relação de todos os órgãos e instituições do Estado, assim como de todas as instituições autónomas, empresas públicas e autarquias;

*f)* a proposta de orçamento de todos os organismos com autonomia administrativa e financeira, autarquias e empresas do Estado.

SECÇÃO V

## Apresentação do orçamento

ARTIGO 25

**(Apresentação)**

O Governo submete até ao dia 30 de Setembro de cada ano à Assembleia da República a proposta do Orçamento do Estado a que se refere o n.º 1 do artigo 21 desta Lei.

ARTIGO 26

**(Aprovação do Orçamento do Estado)**

1. A Assembleia da República delibera sobre a proposta de Lei do Orçamento do Estado até 15 de Dezembro de cada ano.

2. Aprovado o Orçamento do Estado, o Governo fica autorizado a:

*a)* proceder à gestão e execução do Orçamento do Estado aprovado, adoptando as medidas consideradas necessárias à cobrança das receitas previstas e à realização das despesas fixadas;

*b)* proceder à captação e canalização de recursos necessários, tendo sempre em conta o princípio da utilização mais racional possível das dotações orçamentais aprovadas e o princípio da melhor gestão de tesouraria;

*c)* proceder à abertura de créditos públicos para atender ao défice orçamental;

*d)* realizar operações de crédito por antecipação da receita, para atender a défices momentâneos de tesouraria.

3. Aprovado o Orçamento do Estado, os deputados e as Comissões da Assembleia da República não podem tomar iniciativas de lei que envolvam o aumento das despesas ou a diminuição das receitas.

ARTIGO 27

**(Não aprovação do Orçamento)**

1. Não sendo aprovada a proposta do Orçamento do Estado, é reconduzido o de exercício económico anterior, com os limites nele definidos, incluindo os ajustes verificados ao longo desse exercício, mantendo-se assim em vigor até à aprovação de novo Orçamento do Estado.

2. A manutenção da vigência do Orçamento do Estado reconduzido, nos termos do número anterior abrange a manutenção da autorização para cobrança das receitas e realização de despesas nele previstas, salvo aquelas cujos regimes vigorariam apenas até ao final do respectivo exercício.

3. A realização das despesas previstas no Orçamento do Estado reconduzido deve obedecer ao princípio da utilização por duodécimos das verbas nele fixadas.

SECÇÃO VI

## Execução do Orçamento do Estado

ARTIGO 28

**(Regras para a execução)**

Para dar início à execução orçamental, o Governo aprova as disposições que se mostrem necessárias, sem prejuízo da imediata aplicação das normas da Lei do Orçamento do Estado que sejam directamente exequíveis.

ARTIGO 29

**(Execução das receitas)**

A execução das receitas compreende as três fases seguintes:

*a)* lançamento e procedimento administrativo de verificação da ocorrência do facto gerador da obrigação correspondente;

*b)* liquidação, cálculo do montante da receita devida e identificação do respectivo sujeito passivo;

*c)* cobrança, acção de cobrar, receber ou tomar posse da receita e subsequente entrega ao Tesouro Público.

ARTIGO 30

**(Realização das despesas)**

1. A realização das despesas compreende as três fases seguintes:

*a)* cabimento, acto administrativo de verificação, registo e cativo do valor do encargo a assumir pelo Estado;

*b)* liquidação, apuramento do valor que efectivamente há a pagar e emissão da competente ordem de pagamento;

*c)* pagamento ou entrega de importância em dinheiro ao titular do documento de despesa.

2. As despesas que sejam reconhecidas judicialmente no exercício em curso, pertencentes a exercícios anteriores mas neles não liquidadas, são pagas na rubrica adequada do Orçamento do Estado desse exercício em curso.

3. Pode ser autorizada a realização de despesas sob o regime de adiantamentos em numerário, denominado fundo de maneio, para atender despesas cujos valores sejam de pequena monta e para as quais se dispense o cumprimento do normal processo de realização de despesas.

4. Compete ao Governo aprovar, quer os limites máximos para a realização das despesas a que se refere o

EXHIBIT 7   PAGE 32

número anterior, quer as dotações orçamentais a este regime sujeitas, quer ainda à regulamentação sobre a sua concessão, aplicação e prestação de contas.

### Artigo 31
### (Despesas por pagar)

Relativamente ao período do exercício económico em curso, devem ser observadas as seguintes regras:

a) constituem despesas por pagar as despesas liquidadas e não pagas até 31 de Dezembro;

b) as despesas por pagar devem ser anuladas, caso não sejam pagas, decorrido um ano.

### Artigo 32
### (Anulação de despesas e receitas)

1. Reverte à respectiva dotação o valor da despesa anulada no exercício.

2. Quando a anulação do valor da despesa ocorrer após o encerramento do respectivo exercício económico, o valor anulado é considerado receita do ano em que a anulação se efectivar.

3. A restituição da receita arrecadada indevidamente, quando ocorra no respectivo exercício da sua arrecadação, é efectuada nesse exercício, mediante anulação do valor na rubrica orçamental respectiva.

4. A restituição da receita arrecadada indevidamente, quando ocorra em exercícios posteriores, é realizada em rubrica orçamental de despesa adequada do exercício em que ela ocorrer.

### Artigo 33
### (Receitas liquidadas e não cobradas)

Os valores relativos a contribuições e impostos e demais créditos fiscais do Estado, liquidados e não cobrados dentro do exercício financeiro de origem, constituem dívida activa e são incorporados em conta própria, findo o exercício, pela contabilidade pública.

### Artigo 34
### (Alterações orçamentais)

1. As alterações dos limites fixados no Orçamento do Estado são efectuadas por lei, sob proposta do Governo devidamente fundamentada.

2. O Governo pode efectuar reforços de verbas no Orçamento do Estado, utilizando, para o efeito, a dotação provisional prevista no n.º 3 do artigo 13 da presente Lei, desde que as mesmas sejam devidamente fundamentadas.

3. É ainda da competência do Governo a redistribuição das verbas dentro dos limites estabelecidos pela Assembleia da República.

4. A transferência de verbas de um órgão ou instituição do Estado para outro deve ser tratada no Orçamento do Estado a crédito daquele e a débito deste.

### Artigo 35
### (Informação periódica)

1. O Governo presta informação semestral sobre a execução do Plano Económico e Social e Orçamento do Estado, à Assembleia da República, até 45 dias após o semestre.

2. O Governo presta ainda informação trimestral à Assembleia da República sobre a execução do Orçamento do Estado, devendo esta ser publicada no *Boletim da República*.

## CAPÍTULO II
## Subsistema de Contabilidade Pública
### SECÇÃO I
### Organização e competências
### Artigo 36
### (Organização)

O Subsistema de Contabilidade Pública, designado abreviadamente por SCP, compreende todos os órgãos e instituições do Estado que intervêm nos processos de execução orçamental, recolha, registo, acompanhamento e processamento das transacções susceptíveis de produzir ou que produzam modificações no Património do Estado, e abrange ainda as respectivas normas e procedimento.

### Artigo 37
### (Competências)

Compete aos órgãos ou instituições que integram o SCP:

a) elaborar e propor normas, procedimentos técnicos, relatórios e mapas, bem como a respectiva metodologia e periodicidade, tendo em vista a harmonização e uniformização contabilísticas;

b) elaborar e manter actualizado o plano de contas;

c) proceder à execução do Orçamento do Estado;

d) acompanhar e avaliar o registo sistemático e atempado de todas as transacções;

e) elaborar os relatórios de informação periódica a apresentar pelo Governo à Assembleia da República;

f) elaborar a Conta Geral do Estado.

### SECÇÃO II
### Escrituração contabilística
### Artigo 38
### (Objecto)

1. A Contabilidade Pública tem por objecto a produção e manutenção de registos e evidenciar as transacções realizadas pelos órgãos e instituições do Estado e os seus efeitos sobre o património do Estado.

2. A Contabilidade mantém os registos analíticos e sintéticos dos bens, direitos e obrigações integrantes do património dos órgãos e instituições do Estado abrangidos nos termos do artigo 2 da presente Lei.

### Artigo 39
### (Princípios e regras específicas)

A contabilidade pública respeita, de entre outros, os seguintes princípios geralmente aceites:

a) consistência, na base do qual os procedimentos contabilísticos de um exercício para o outro não devem ser alterados;

b) materialidade, segundo o qual a informação produzida apresenta todos os elementos relevantes que permitam o acompanhamento da utilização dos recursos públicos;

c) comparabilidade, em conformidade com o qual o registo das operações observa as normas determinadas ao longo da vida dos respectivos órgãos ou instituições, por forma a que possam ser comparados ao longo do tempo e do espaço os dados produzidos;

EXHIBIT 2 PAGE 33

*d)* oportunidade, pelo qual a informação deve ser produzida em *tempo oportuno* e *útil* por forma a apoiar a tomada de decisões e a análise da gestão.

### Artigo 40
#### (Princípio digráfico)

O critério utilizado para os registos dos actos e factos administrativos, no âmbito do SISTAFE, é o princípio digráfico ou método das partidas dobradas.

### Artigo 41
#### (Regime de registo)

O registo contabilístico adoptado é o regime misto, aplicando-se para as receitas o regime de caixa e para as despesas o regime de compromissos.

### Artigo 42
#### (Moeda)

A escrituração dos actos e factos administrativos é efectuada em moeda nacional.

### Artigo 43
#### (Demonstrações contabilísticas)

O Governo elabora, no fim de cada exercício económico, o Balanço, Mapas de Controlo Orçamental, Demonstração de Resultados e o Inventário Contabilístico.

### Artigo 44
#### (Amortizações e reintegrações)

Todo o património do Estado é amortizado e reintegrado de acordo com a legislação aplicável e as regras de contabilidade geralmente aceites.

### SECÇÃO III
### Conta Geral do Estado

### Artigo 45
#### (Objecto)

A Conta Geral do Estado tem por objecto evidenciar a execução orçamental e financeira, bem como apresentar o resultado do exercício e a avaliação do desempenho dos órgãos e instituições do Estado.

### Artigo 46
#### (Princípios e regras específicas)

1. A Conta Geral do Estado deve ainda ser elaborada com clareza, exactidão e simplicidade, de modo a possibilitar a sua análise económica e financeira.

2. A Conta Geral do Estado deve reflectir a observância do grau de cumprimento dos princípios de regularidade financeira, legalidade, economicidade, eficiência e eficácia na obtenção e aplicação dos recursos públicos colocados à disposição dos órgãos e instituições do Estado.

3. Tendo em vista reflectir a situação financeira e os resultados da execução orçamental dos órgãos e instituições do Estado, a Conta Geral do Estado deve ser elaborada com base nos princípios e regras de contabilidade geralmente aceites.

### Artigo 47
#### (Conteúdo)

A Conta Geral do Estado deve conter informação completa relativa a:

a) receitas cobradas e despesas pagas pelo Estado;
b) financiamento ao défice orçamental;
c) fundos de terceiros;
d) balanço do movimento de fundos entrados e saídos na Caixa do Estado;
e) activos e passivos financeiros e patrimoniais do Estado;
f) adiantamentos e suas regularizações.

### Artigo 48
#### (Estrutura da Conta Geral do Estado)

1. A Conta Geral do Estado deve conter os seguintes documentos básicos:

a) o relatório do Governo sobre os resultados da gestão orçamental referente ao exercício económico;
b) o financiamento global do Orçamento do Estado com discriminação da situação das fontes de financiamento;
c) o balanço;
d) os mapas de Execução Orçamental, comparativos entre as previsões orçamentais e a receita cobrada e daquelas com a despesa liquidada e/ /paga, segundo a classificação prevista nos n.os 1 e 2 do artigo 20 desta Lei;
e) a demonstração de resultados;
f) os anexos às demonstrações financeiras;
g) o mapa dos activos e passivos financeiros existentes no início e no final do ano económico;
h) o mapa consolidado anual do movimento de fundos por operações de tesouraria.

2. O Governo apresenta, como anexo à Conta Geral do Estado, o inventário consolidado do património do Estado.

3. O Governo deve ainda apresentar, como anexo informativo à Conta Geral do Estado, um resumo das receitas, despesas e saldos por cada instituição com autonomia administrativa e financeira.

### Artigo 49
#### (Contas de instituições autónomas)

As instituições com autonomia administrativa e financeira devem proceder à entrega ao Ministério do Plano e Finanças da informação referida no n.º 3 do artigo anterior, até ao dia 31 de Março de cada ano.

### Artigo 50
#### (Prazos)

1. O Governo deve apresentar à Assembleia da República e ao Tribunal Administrativo a Conta Geral do Estado, até ao dia 31 de Maio do ano seguinte àquele a que a referida conta respeite.

2. O Relatório e o Parecer do Tribunal Administrativo sobre a Conta Geral do Estado devem ser enviados à Assembleia da República até ao dia 30 de Novembro do ano seguinte àquele que a Conta Geral do Estado respeite.

3. A Assembleia da República aprecia e aprova a Conta Geral do Estado, na sessão seguinte à entrega do Relatório e Parecer pelo Tribunal Administrativo.

EXHIBIT 7 PAGE 34

## CAPÍTULO III
### Subsistema do Tesouro Público
#### SECÇÃO I
#### Organização e competências
##### ARTIGO 51
##### (Organização)

O Subsistema do Tesouro Público, designado abreviadamente por STP, compreende o conjunto dos órgãos e instituições do Estado que intervêm nos processos de programação, captação de recursos e gestão de meios de pagamento e abrange ainda as respectivas normas e procedimentos.

##### ARTIGO 52
##### (Competências)

Compete aos órgãos ou instituições do Estado que integram o STP nomeadamente:

a) zelar pelo equilíbrio financeiro;
b) administrar os haveres financeiros e mobiliários;
c) elaborar a programação financeira;
d) elaborar as estatísticas das finanças públicas;
e) gerir a conta única;
f) propor a formulação da política de financiamento da despesa pública e providenciar a sua execução;
g) gerir a dívida pública interna e externa;
h) realizar e gerir as operações de crédito público.

#### SECÇÃO II
#### Tesouro Público
##### ARTIGO 53
##### (Objecto)

O Tesouro Público, compreendendo os direitos, as garantias e obrigações da responsabilidade do Estado, tem por objecto a elaboração da programação financeira, os desembolsos e pagamentos relativos à execução orçamental e financeira.

##### ARTIGO 54
##### (Princípios e regras específicos)

1. A administração do Tesouro Público rege-se, de entre outros, pelos seguintes princípios:

a) unidade de tesouraria, segundo o qual todos os recursos públicos devem ser centralizados com vista a uma maior capacidade de gestão, dentro dos princípios de eficácia, eficiência e economicidade;
b) equilíbrio de tesouraria, pelo qual as entradas de recursos devem ser iguais ou superiores às saídas de recursos;

2. A cobrança de todas as receitas deve ser realizada em estrita observância do princípio da unidade de tesouraria.

3. A unidade de tesouraria abrange todos os fundos de origem fiscal e extra-fiscal e os provenientes de operações de crédito legalmente autorizadas.

##### ARTIGO 55
##### (Conta Única)

1. A Conta Única é uma conta bancária tipo piramidal, com as necessárias sub-contas, através da qual se movimenta quer a arrecadação e cobrança de receitas quer o pagamento de despesas, seja qual for a sua proveniência ou natureza.

2. É vedada a abertura de contas bancárias de que seja unicamente titular qualquer órgão ou instituição do Estado.

3. Na construção da Conta Única, compete ao Governo definir e determinar as vias mais adequadas à sua concretização, tendo em vista a melhor gestão de tesouraria e os superiores interesses do Estado.

##### ARTIGO 56
##### (Dívida pública)

1. A Dívida Pública compreende as obrigações financeiras assumidas em virtude de leis, contratos, acordos e realização de operações de crédito.

2. A Dívida Pública divide-se em:

a) Dívida Pública Interna, aquela que é contraída pelo Estado com entidades de direito público ou privado, com residência ou domiciliadas no País, e cujo pagamento é exigível dentro do território nacional;
b) Dívida Pública Externa, aquela que é contraída pelo Estado com outros Estados, organismos internacionais ou outras entidades de direito público ou privado, com residência ou domicílio fora do País, e cujo pagamento é exigível fora do território nacional.

## CAPÍTULO IV
### Subsistema do Património do Estado
#### SECÇÃO I
#### Organização e competências
##### ARTIGO 57
##### (Organização)

O Subsistema do Património do Estado, designado abreviadamente por SPE, compreende os órgãos ou instituições do Estado que intervêm nos processos de administração e gestão dos bens patrimoniais do Estado e abrange ainda as respectivas normas e procedimentos.

##### ARTIGO 58
##### (Competências)

1. Compete aos órgãos ou instituições que integram o SPE:

a) coordenar a gestão dos bens patrimoniais do Estado;
b) organizar o tombo dos bens imóveis do Estado;
c) elaborar anualmente o mapa de inventário físico consolidado e das variações dos bens patrimoniais do Estado;
d) proceder periodicamente ao confronto dos inventários físicos com os respectivos valores contabilísticos;
e) propor normas e instruções regulamentares pertinentes sobre os bens patrimoniais do Estado.

2. A inventariação e gestão do património do Estado compete à entidade onde se localizam os bens e direitos patrimoniais, de acordo com a legislação vigente.

EXHIBIT 1 PAGE 35

SECÇÃO II

## Património do Estado

ARTIGO 59

### (Objecto)

O Património do Estado tem por objecto a coordenação e gestão dos bens patrimoniais do Estado, a organização da informação relativa à inventariação dos referidos bens e à elaboração do respectivo inventário.

ARTIGO 60

### (Princípios e regras específicos)

O Património do Estado rege-se, de entre outros, pelos seguintes princípios e regras:

a) os bens de domínio público e os de domínio privado de uso especial do Estado são impenhoráveis e inalienáveis;

b) os bens patrimoniais do Estado são avaliados de acordo com critérios específicos a serem fixados pelo Governo;

c) a aquisição e alienação de bens patrimoniais do Estado realiza-se por concurso público, ressalvando-se as excepções legais;

d) os critérios e taxas de amortização e reintegração dos bens patrimoniais do Estado são objecto de legislação específica.

ARTIGO 61

### (Variações patrimoniais)

1. Constituem variações patrimonais os actos ou efeitos que produzam alterações ao Património do Estado, tais como a obtenção e concessão de crédito, aquisição ou alienação e depreciação ou valorização dos bens patrimoniais do Estado.

2. Compete ao Governo definir os critérios de depreciação e valorização dos bens patrimoniais do Estado.

3. Toda e qualquer variação patrimonial deve obedecer a determinações legais aplicáveis a cada caso.

CAPÍTULO V

### Subsistema do Controlo Interno

SECÇÃO I

### Organização e competências

ARTIGO 62

### (Organização)

O Subsistema do Controlo Interno, designado abreviadamente por SCI, compreende os órgãos e entidades que intervêm na inspecção e auditoria dos processos de arrecadação, cobrança e utilização dos recursos públicos e abrange ainda as respectivas normas e procedimentos.

ARTIGO 63

### (Competências)

1. Compete aos órgãos ou entidades que integram o SCI exercer as actividades de verificação da aplicação dos procedimentos estabelecidos e o cumprimento da legalidade,

regularidade, economicidade, eficiência e eficácia tendo em vista a boa gestão na utilização dos recursos postos à disposição dos órgãos e instituições do Estado.

2. O Governo, por intermédio do Ministro que superintende a área das Finanças, pode submeter à auditoria independente, pontual ou sistemática, os órgãos e instituições do Estado.

SECÇÃO II

### Controlo Interno

ARTIGO 64

### (Objecto)

O controlo interno tem por objecto:

a) fiscalizar a correcta utilização dos recursos públicos e a exactidão e fidelidade dos dados contabilísticos;

b) garantir, através da fiscalização, a uniformização da aplicação das regras e métodos contabilísticos;

c) verificar o cumprimento das normas legais e procedimentos aplicáveis.

ARTIGO 65

### (Princípios e regras específicas)

O controlo interno rege-se pelos princípios de independência e isenção e ainda pelos princípios e regras das organizações internacionais de auditoria aplicáveis.

## TÍTULO III

## Disposições finais e transitórias

ARTIGO 66

### (Regime de responsabilidade)

1. Os titulares dos cargos públicos, funcionários e agentes do Estado e demais entidades públicas respondem financeira, disciplinar, criminal e civilmente nos termos da lei, pelas infracções que pratiquem no âmbito do exercício das suas funções de execução orçamental ou financeira.

2. O Estado e demais pessoas colectivas públicas respondem civilmente pelos danos causados a terceiros, nos termos da lei.

3. As autoridades que ordenarem a percepção de quaisquer contribuições directas ou indirectas, seja de que natureza forem, não autorizadas por lei, e os funcionários que, por acto próprio ou em cumprimento de ordens superiores procederem à cobrança de contribuições ou impostos não autorizados, ou o fizerem por valor superior ao devido, sendo disso sabedores, são punidos com a pena que couber aos crimes de concussão ou imposição arbitrária de contribuições, previstos no Código Penal.

4. Todo o funcionário público que, por negligência, praticar acto em contrário ou omitir acto, dos definidos na presente Lei, responde disciplinarmente nos termos do Estatuto Geral dos Funcionários do Estado.

5. Sem prejuízo da responsabilidade disciplinar ou criminal que ao caso couber, o Estado tem direito de regresso sobre todo o funcionário público que cause, por seu acto ou omissão, prejuízos ao Estado.

EXHIBIT 7 PAGE 36

### ARTIGO 67
#### (Regulamentação)

1. Compete ao Governo regulamentar a presente Lei no prazo de 180 dias a contar da data da sua entrada em vigor.

2. O Governo deve criar as condições necessárias para, no prazo de um ano a contar da data da entrada em vigor da presente Lei, iniciar a implementação do SISTAFE.

### ARTIGO 68
#### (Entrada em vigor)

A presente Lei entra em vigor a partir do dia 1 de Janeiro de 2002.

### ARTIGO 69
#### (Revogação)

Fica revogada toda a legislação anterior que contrarie a presente Lei.

Aprovada pela Assembleia da República, aos 17 de Dezembro de 2001.

O Presidente da Assembleia da República, *Eduardo Joaquim Mulémbwè.*

Promulgada em 12 de Fevereiro de 2002.

Publique-se.

O Presidente da República, JOAQUIM ALBERTO CHISSANO.

IMPRENSA NACIONAL DE MOÇAMBIQUE

EXHIBIT 7 PAGE 37

Monday, May 24, 2010

SERIES 1, ISSUE 20

[escutcheon:]

**REPUBLIC OF MOZAMBIQUE**

**OFFICIAL GAZETTE OF THE REPUBLIC**

**The Official Publication of the Republic of Mozambique**

**SUPPLEMENT**

**Decree No. 15/2010:**

Approves Regulations for Contracting Public Works Contracts, the Supply of Goods and Rendering of Services to the State and revokes Decree No. 54/2005, of December 13.

Article 1

The Regulation on contracting the building of public works, and providing goods and services to the State is hereby approved, and it is an exhibit to and an integral part of this Decree.

Chapter 1

**Section 1**

General Part

Article 1

**(Purpose)**

1. This Regulation establishes the legal system for contracting public works undertakings and supplying goods and services to the State, including leasing, consulting and concessions.

Article 7

**(General System)**

The General System for contracting public works undertakings and supplying goods and services to the State is that of Public Bidding.

**EXHIBIT 8**

EXHIBIT 8 PAGE 38

Article 8

**(Special System)**

1. The Contracting Entity may adopt standards that are different from those set forth in this Regulation for:
   *a)* Contracting that stems from a Treaty or other form of international agreement between Mozambique and another State or international organization and that requires using a specific system; and
   *b)* Contracting that is conducted in the area of projects that are partially or substantially financed using resources stemming from financing or donations that come from an official foreign cooperation agency or a multilateral financial organization, whenever adopting different standards expressly appears as a condition in the respective agreement or contract.
2. Pursuant to this Article, adopting any standards that are different from those set forth in this Regulation must get prior authorization from the Minister overseeing the area of Finances.
3. The Contracting Entity must list in the Bidding Documents and Announcement any rules that have been adopted and that are different from the ones set forth in this Regulation.

Article 9

**(Exceptional System)**

1. Whenever it is shown to be in the public interest and the requirements set forth in this Regulation have been met, the Executive Management Department of Acquisitions must propose to the Competent Authority that the Exceptional System for the contracting of public works and the providing goods and services, leasing and concessions be used and must give reasons why this is necessary.
2. The ruling that declares that the requirements for contracting using the Exceptional System and that determines that this system will be applied for contracting the building of public works and providing goods and services, leasing and concessions must be authorized in writing by the Competent Authority.
3. The ways in which contracting may be conducted using the Exceptional System are as follows:
   *a)* Public bidding using a system of prior selection;
   *b)* Public bidding involving limited competition;
   *c)* Public bidding in two stages;
   *d)* Public bidding involving multiple bids;
   *e)* Small scale public bidding; and
   *f)* Direct Adjudication.

EXHIBIT _8_ PAGE _39_

4. Contracting done under the Exceptional System is also governed by the standards for Public Bidding that are set forth in this Regulation.

EXHIBIT 8 PAGE 40



**TRANSPERFECT**

### CERTIFICATE OF ACCURACY

I, Nida Nunka, of TransPerfect, Inc. do hereby declare that the following are to the best of my knowledge and belief, a true and accurate translation, within the given parameters, of the document "Portions of REPUBLIC OF MOZAMBIQUE OFFICIAL GAZETTE OF THE REPUBLIC The Official Publication of the Republic of Mozambique SUPPLEMENT: Monday, May 24, 2010, Series 1, Issue 20" translated from Portuguese into English.

A copy of the final translation is attached.

I so declare under penalty of perjury under the laws of the United States on this 30th day of April, 2013.

Nida Nunka
TransPerfect Translations, Inc.

Sworn before me this 30th of April, 2013

Signature, Notary Public

RYAN ALEXANDER DROST
Notary Public - State of New York
No. 01DR6262048
Qualified in NEW YORK County
My Commission Expires MAY 21, 2016

EXHIBIT __8__ PAGE __41__

Stamp, Notary Public

Case 2:13-cv-02309-MMM-CW   Document 32-2   Filed 05/02/13   Page 43 of 71   Page ID #:973

Segunda-feira, 24 de Maio de 2010

I SÉRIE — Número 20



# BOLETIM DA REPÚBLICA

## PUBLICAÇÃO OFICIAL DA REPÚBLICA DE MOÇAMBIQUE

# SUPLEMENTO

**IMPRENSA NACIONAL DE MOÇAMBIQUE, E.P.**

### A V I S O

A matéria a publicar no «Boletim da República» deve ser remetida em cópia devidamente autenticada, uma por cada assunto, donde conste, além das indicações necessárias para esse efeito, o averbamento seguinte, assinado e autenticado Para publicação no «Boletim da República».

• • • • • • • • • • • • • • • • • • • • • • • • • • • • •

### SUMÁRIO

Conselho de Ministros:

**Decreto n.º 15/2010:**

Aprova o Regulamento de Contratação de Empreitada de Obras Públicas, Fornecimento de Bens e Prestação de Serviços ao Estado e revoga o Decreto n.º 54/2005, de 13 de Dezembro.

Imprensa Nacional de Moçambique, E.P.

Rectificação.

• • • • • • • • • • • • • • • • • • • • • • • • • • • • •

## CONSELHO DE MINISTROS

### Decreto n.º 15/2010

de 24 de Maio

Havendo necessidade de conferir maior celeridade e flexibilidade aos procedimentos de contratação de empreitada de obras públicas, fornecimento de bens e prestação de serviços para os órgãos e instituições do Estado, incluindo autarquias e empresas do Estado, no uso das competências que lhe são atribuídas pelo nº1 do artigo 67 da Lei nº 9/2002, de 12 de Fevereiro – Lei do SISTAFE , o Conselho de Ministros decreta:

#### Artigo 1

É aprovado o Regulamento de Contratação de Empreitada de Obras Públicas, Fornecimento de Bens e Prestação de Serviços ao Estado, anexo ao presente Decreto, dele fazendo parte integrante.

#### Artigo 2

Compete aos Ministros que superintendem as áreas das Finanças, Indústria e Comércio, Obras Públicas e Habitação, Saúde e Educação, aprovar, por Diplomas conjuntos, os Documentos de Concurso específicos e respectivas fórmulas de revisão de preços.

#### Artigo 3

Compete ao Ministro que superintende a área das Finanças garantir a implementação do presente Decreto.

#### Artigo 4

É revogado o Decreto nº 54/2005, de 13 de Dezembro.

#### Artigo 5

O presente Decreto entra em vigor noventa dias após a data da sua publicação.

Aprovado pelo Conselho de Ministros, aos 20 de Abril de 2010.

Publique-se.

O Primeiro-Ministro, *Aires Bonifácio Baptista Ali.*

## Regulamento de Contratação de Empreitada de Obras Públicas, Fornecimento de Bens e Prestação de Serviços ao Estado

### CAPÍTULO I

### Disposições gerais

#### SECÇÃO I

Parte comum

#### ARTIGO 1

#### (Objecto)

1. O presente Regulamento estabelece o regime jurídico aplicável à contratação de empreitada de obras públicas, fornecimento de bens e prestação de serviços ao Estado, incluindo os de locação, consultoria e concessões.

2. A contratação que tenha por objecto, simultaneamente, empreitada de obras públicas, fornecimento de bens e prestação de serviços e locação, aplica-se ao regime previsto no presente Regulamento para a parcela do objecto que tenha maior expressão económica.

#### ARTIGO 2

EXHIBIT 8 PAGE 42

#### (Âmbito de aplicação)

1. O presente Regulamento aplica-se a todos os órgãos e instituições do Estado, até ao escalão mais baixo que tiver uma

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

Edição electrónica © Pandora Box Lda. – todos os direitos reservados

tabela orçamental por executar, incluindo as autarquias e empresas do Estado.

2. O presente Regulamento não se aplica à celebração de contratos entre órgãos e instituições do Estado.

3. Para efeitos do presente Regulamento, são empresas do Estado todas aquelas em que o Estado detém cem por cento do capital social.

### Artigo 3

#### (Definições)

Para efeitos do presente Regulamento, entende-se por:

a) Adjudicação: acto administrativo pelo qual a Entidade Contratante selecciona a proposta vencedora para subsequente contratação;

b) Anúncio de Concurso: comunicação sobre a abertura de concurso, por meio da imprensa, designadamente no jornal de maior circulação no País e edital, podendo ser utilizado outro meio de comunicação adequado e de fácil acesso para o público-alvo;

c) Autoridade Competente: agente que representa a Entidade Contratante, formalmente designado, com poderes para praticar os actos relativos aos procedimentos de contratação definidos no presente Regulamento;

d) Bens: objectos de qualquer natureza, cujo valor inclui também os serviços acessórios ao seu fornecimento desde que o valor destes não exceda o dos bens a serem fornecidos;

e) Caderno de Encargos: documento que contém as cláusulas jurídicas gerais e particulares, as especificações técnicas e o programa de concurso, que informam as obrigações da Entidade Contratante e da Contratada;

f) Concessão: transmissão, por período determinado, para exploração de uma actividade de domínio público existente ou a desenvolver;

g) Concessão de Exploração de Obras: outorga do direito de construir e explorar de forma temporária bens e serviços de domínio público, com a entrega dos mesmos no fim do correspondente contrato de concessão;

h) Consultor: pessoa singular ou colectiva, nacional ou estrangeira, que preste serviços de natureza intelectual ou de assessoria;

i) Contratada: concorrente vencedor a quem é adjudicada a realização de uma obra, fornecimento de bens ou prestação de serviços;

j) Documentos de Concurso: conjunto de documentos composto por Caderno de Encargos, Projecto e Programa do Concurso que devem conter os requisitos de qualificações jurídica, económico-financeira e técnica que disciplinam o concurso e a respectiva contratação de acordo com o disposto no artigo 65 do presente Regulamento;

k) Empreitada de Obras Públicas ou, simplesmente, Empreitada: obras de construção, reconstrução, ampliação, alteração, adaptação, conservação, restauro, reparação ou reabilitação de bens imóveis do Estado;

l) Empreiteiro de Obras Públicas: pessoa singular ou colectiva, nacional ou estrangeira, contratada para executar obras públicas;

m) Entidade Concedente: órgão ou instituição do Estado que promove a abertura de concurso e celebra o contrato de concessão;

n) Entidade Contratante: órgão ou instituição do Estado que promove a abertura de concurso e celebra o contrato, representado pela Autoridade Competente;

o) Especificações Técnicas: conjunto de prescrições técnicas constantes dos Documentos de Concurso, que definem as características exigidas para a contratação de empreitada de obras públicas, fornecimento de bens ou prestação de serviços e que permitam que a sua concretização corresponda à finalidade a que a Entidade Contratante os destina;

p) Fornecedor: pessoa singular ou colectiva, nacional ou estrangeira, contratada para fornecer bens e serviços ao Estado;

q) Júri: órgão colegial que zela pela observância de todos os procedimentos atinentes à contratação pública;

r) Média Empresa: Empresa cujo número de trabalhadores varia de cinquenta a cem e o volume anual de negócios é superior a 14.700.000,00 MT e inferior a 29.970.000, 00MT, não tendo mais de 25% de participações detidas por grande empresa ou pelo Estado;

s) Micro Empresa: Empresa cujo número de trabalhadores e o volume anual de negócios não excede quatro trabalhadores e 1.200.000,00 MT, respectivamente, não tendo 25% de participações detidas por grande empresa ou pelo Estado;

t) Pequena Empresa: Empresa cujo número de trabalhadores varia de cinco a quarenta e nove e o volume anual de negócios é superior a 1.200.000, 00 MT e inferior a 14.700.000,00MT, não tendo mais de 25% de participações detidas por grande empresa ou pelo Estado;

u) Programa de Concurso: Documento que contém todas as disposições e informações aos concorrentes, necessárias à elaboração e apresentação das propostas;

v) Projecto: Conjunto de peças escritas e desenhadas a constituir, juntamente com o Programa do Concurso e o Caderno de Encargos, o processo a apresentar a concurso, para adjudicação de empreitada, ou de fornecimento e a facultar todos os elementos necessários à boa execução dos trabalhos;

w) Proposta: documento pelo qual o concorrente manifesta à Entidade Contratante a vontade de contratar e indica as condições em que se dispõe a fazê-lo;

x) Serviços: Actividade em que a contratada fornece à Entidade Contratante o resultado do seu trabalho intelectual ou físico;

y) Serviços de Consultoria: actividade, incluindo assessoria, em que é fornecido à Entidade Contratante o resultado do trabalho de natureza eminentemente intelectual;

z) Unidade Funcional de Supervisão das Aquisições: órgão com competência de coordenação e supervisão de toda a actividade relacionada com a contratação pública, de gestão do sistema nacional centralizado de dados e informação e dos programas de capacitação em matéria de contratação;

aa) Unidade Gestora Executora das Aquisições: unidade integrada em cada órgão ou instituição do Estado, incluindo as autarquias e empresas do Estado que tiver uma tabela orçamental para executar, encarregue da gestão dos processos de aquisições, desde a planificação e sua preparação, bem como da execução do contrato, estando sob a supervisão da Autoridade Competente;

EXHIBIT 8 PAGE 43

Edição electrónica © Pandora Box Lda. – todos os direitos reservados

bb) Locação: contrato pelo qual a contratada se obriga a proporcionar à Entidade Contratante o gozo temporário de uma coisa, podendo ser:

i. Arrendamento: quando se trate de bem imóvel; e

ii. Aluguer: quando se trate de coisa móvel.

### ARTIGO 4

#### (Princípios e regras gerais)

1. Na aplicação do presente Regulamento as partes devem observar os princípios da legalidade, finalidade, razoabilidade, proporcionalidade, prossecução do interesse público, transparência, publicidade, igualdade, concorrência, imparcialidade, boa-fé, estabilidade, motivação, responsabilidade, boa gestão financeira, celeridade e os demais princípios de direito público aplicáveis.

2. A Autoridade Competente, em representação da Entidade Contratante deve, para efeitos de contratação, observar as seguintes regras gerais:

a) Desconcentrar e descentralizar a aplicação do Regulamento até ao órgão ou instituição do escalão mais baixo que tiver uma tabela orçamental para executar, excepto aqueles itens em que haja interesse na garantia da harmonização de tipos e ou ganhos de economia de escala, mediante a indicação da Unidade Funcional de Supervisão das Aquisições;

b) Procurar optimizar a satisfação das necessidades colectivas, tanto na formação como na execução dos contratos;

c) Actuar com isenção, sendo única e exclusivamente movida pela defesa e prossecução do interesse público em todo o procedimento de contratação;

d) Determinar o objecto, de forma precisa, suficiente e clara, sem especificações que, por excessivas ou desnecessárias, limitem a competição, sendo proibida a referência a marcas;

e) Fundamentar a autorização para a abertura de Concurso ou para o Ajuste Directo com a necessária justificação quanto à sua economicidade, eficiência e eficácia e os critérios de avaliação, devendo garantir a escolha da proposta com padrões de qualidade exigida à realização do interesse público, mediante adequada retribuição económica, dentro dos prazos acordados;

f) Garantir que as razões de facto e de direito da definição da modalidade de concurso adoptado e dos correspondentes actos praticados sejam previamente indicadas por escrito;

g) Garantir que as regras que disciplinam o concurso e os elementos que lhe servem de base se mantenham inalteradas durante à sua realização, salvo nos casos previstos no presente Regulamento;

h) Garantir a adequada publicidade da sua intenção de contratar;

i) Definir prazos razoáveis para preparação das propostas pelos concorrentes interessados;

j) Estabelecer qualificações jurídicas, económico-financeiras e técnicas, exigíveis indistintamente dos concorrentes, compatíveis e proporcionais ao objecto da contratação, que garantam o cumprimento das obrigações contratuais;

k) Proporcionar a todos os interessados iguais condições de participação, tratando todos os concorrentes segundo os mesmos critérios;

l) Garantir a máxima participação de interessados em contratar com a Entidade Contratante;

m) Garantir a selecção criteriosa da proposta mais vantajosa proporcionando igualdade de oportunidade aos interessados por meio de uma competição justa;

n) Estabelecer previamente os critérios de adjudicação e as condições essenciais do contrato, e divulgá-los pelos interessados;

o) Propiciar o alcance do objectivo da contratação, com celeridade e economicidade, sem prejuízo da segurança e dos direitos dos concorrentes, e

p) Observar as regras e formalidades estabelecidas no presente Regulamento e demais legislação aplicável.

### ARTIGO 5

#### (Língua)

1. Todos os documentos inerentes à contratação sujeita ao regime fixado no presente Regulamento devem ser redigidos em língua portuguesa.

2. A Entidade Contratante pode determinar a sua divulgação simultânea noutra língua, prevalecendo sempre a língua portuguesa.

#### SECÇÃO II

#### Dos regimes jurídicos de contratação

### ARTIGO 6

#### (Regimes Jurídicos)

Aplicam-se ao presente Regulamento os seguintes Regimes Jurídicos:

a) Geral;

b) Especial; e

c) Excepcional.

### ARTIGO 7

#### (Regime Geral)

O Regime Geral para a contratação de empreitada de obras públicas, fornecimento de bens e de prestação de serviços ao Estado é o Concurso Público.

### ARTIGO 8

#### (Regime Especial)

1. A Entidade Contratante pode adoptar normas distintas das definidas no presente Regulamento para:

a) Contratação decorrente de Tratado ou de outra forma de acordo internacional entre Moçambique e outro Estado ou organização internacional, que exija a adopção de regime específico; e

b) Contratação realizada no âmbito de projectos financiados, total ou substancialmente, com recursos provenientes de financiamento ou doação oriundos de agência oficial de cooperação estrangeira ou organismo financeiro multilateral, quando a adopção de normas distintas conste, expressamente, como condição do respectivo acordo ou contrato.

2. A adopção de normas distintas das do presente Regulamento, com fundamento neste artigo, deve ser previamente autorizada pelo Ministro que superintende a área das Finanças

EXHIBIT 8 PAGE 44

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

3. A Entidade Contratante deve fazer constar no Anúncio e Documentos de Concurso as regras adoptadas que sejam distintas das definidas no presente Regulamento.

### ARTIGO 9

#### (Regime Excepcional)

1. Sempre que se mostre conveniente ao interesse público e estejam presentes os requisitos fixados no presente Regulamento, a Unidade Gestora Executora das Aquisições deve, fundamentando, propor à Autoridade Competente a aplicação de Regime Excepcional para contratação de empreitada de obras, fornecimento de bens, prestação de serviços, locação e concessões.

2. A decisão que declara verificados os requisitos de contratação em Regime Excepcional e que determina a aplicação deste regime para contratação de empreitada de obras, fornecimento de bens, prestação de serviços, locação e concessão deve ser fundamentada por escrito pela Autoridade Competente.

3. As modalidades de contratação em Regime Excepcional são as seguintes:

*a)* Concurso com Prévia Qualificação;
*b)* Concurso Limitado;
*c)* Concurso em Duas Etapas;
*d)* Concurso por Lances,
*e)* Concurso de Pequena Dimensão; e
*f)* Ajuste Directo.

4. As contratações em Regime Excepcional regem-se, subsidiariamente, pelas normas do Concurso Público previstas no presente Regulamento

### SECÇÃO III

#### Da Entidade Contratante

### ARTIGO 10

#### (Orçamentação da contratação)

A Entidade Contratante só pode abrir concurso desde que o valor para a contratação tenha cabimento no Orçamento.

### ARTIGO 11

#### (Procedimento e requisitos de contratação)

1. O procedimento de contratação deve ser instaurado pela Unidade Gestora Executora das Aquisições, através da abertura de processo administrativo, devidamente autuado, numerado e contendo a autorização escrita da Autoridade Competente para sua realização.

2. Todos os documentos e actos decisórios do procedimento administrativo de contratação devem ser juntos e devidamente numerados no processo administrativo referido no número anterior.

### ARTIGO 12

#### (Atribuições da Autoridade Competente)

1. São atribuições da Autoridade Competente, em representação da Entidade Contratante:

*a)* Indicar o interesse público específico a ser prosseguido;
*b)* Definir de forma precisa, suficiente e clara, o objecto da contratação;
*c)* Determinar a estimativa do preço da obra, bens ou serviços a contratar;
*d)* Observar os preceitos do presente Regulamento no procedimento de contratação;

*e)* Definir, com a necessária fundamentação, a modalidade de contratação a ser adoptada;
*f)* Dispensar, nos termos previstos no presente Regulamento, os documentos de qualificação;
*g)* Declarar que os encargos estimados, que decorrerão do contrato têm cobertura orçamental em verba legalmente aplicável, cativa para o efeito;
*h)* Aprovar e fazer divulgar os Documentos de Concurso e o Anúncio de Concurso;
*i)* Designar os membros do Júri e indicar o respectivo Presidente;
*j)* Prestar esclarecimentos aos concorrentes, durante a avaliação;
*k)* Processar e instruir reclamações contra os actos do júri;
*l)* Justificar a adopção do critério de decisão, quando não for o de menor preço;
*m)* Adjudicar o objecto da contratação ao concorrente vencedor ou, quando for o caso, promover a declaração de cancelamento ou invalidade dos procedimentos irregulares;
*n)* Observar os requisitos para celebração do contrato e convocar o concorrente vencedor para o celebrar, e

*o)* Aprovar o escalonamento plurianual dos encargos, associado ao respectivo enquadramento orçamental, quando os compromissos decorrentes da contratação envolverem despesas em mais de um ano económico.

2. No exercício das suas atribuições a Autoridade Competente deve observar particularmente os princípios de independência, imparcialidade e isenção.

### ARTIGO 13

#### (Impedimentos de representar a Entidade Contratante)

1. A Autoridade Competente está impedida de representar a Entidade Contratante quando:

*a)* Tenha interesse na contratação, por si ou como representante ou gestor de negócios de outra pessoa;
*b)* O cônjuge, parente ou afim, ou pessoa com quem viva em comunhão de habitação, tenha interesse na contratação;
*c)* Tenha participação no capital de sociedade com interesse na contratação ou quando as pessoas referidas na alínea b) deste artigo tenham participação no capital dessa sociedade; ou
*d)* Mantenha vínculo de qualquer natureza com o concorrente na contratação ou tenha mantido vínculo em assunto relacionado com o processo ou seu objecto.

2. Nos casos referidos no número anterior, os visados devem, consoante os casos, declarar e arguir o impedimento, escusa ou suspeição nos termos das Normas de Funcionamento dos Serviços de Administração Pública.

### ARTIGO 14

#### (Atribuições das Unidades Gestoras Executoras das Aquisições)

1. São atribuições das Unidades Gestoras Executoras das Aquisições a gestão e execução dos processos de aquisição em todas as fases do ciclo de contratação, desde a planificação até à recepção de obras, bens ou serviços e execução pontual do

EXHIBIT 8 PAGE 45

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

contrato.

2. As UGEAs subordinam-se directamente à Autoridade Competente.

3. No exercício das suas atribuições e competências, as Unidades Gestoras Executoras das Aquisições estão sujeitas à supervisão técnica da Unidade Funcional de Supervisão das Aquisições.

### ARTIGO 15

#### (Competências das Unidades Gestoras Executoras das Aquisições)

Para o desempenho das suas atribuições, compete às Unidades Gestoras Executoras das Aquisições, dentre outras, as seguintes:

*a)* Efectuar o levantamento das necessidades de contratação da Entidade Contratante;

*b)* Preparar e manter actualizado o plano de contratações de cada exercício;

*c)* Realizar a planificação sectorial anual das contratações;

*d)* Elaborar os Documentos de Concurso;

*e)* Observar os procedimentos de contratação previstos no Regulamento;

*f)* Receber e processar as reclamações e os recursos interpostos e zelar pelo cumprimento dos procedimentos pertinentes;

*g)* Apoiar e orientar as demais áreas da Entidade Contratante na elaboração do catálogo contendo as especificações técnicas e de outros documentos pertinentes a contratação;

*h)* Prestar assistência ao Júri e zelar pelo cumprimento de todos os procedimentos pertinentes;

*i)* Submeter a documentação de contratação ao Tribunal Administrativo;

*j)* Prestar a necessária colaboração aos órgãos de controlo interno e externo, na realização de inspecções e auditorias;

*k)* Apoiar a Unidade Funcional de Supervisão das Aquisições em matérias técnicas sectoriais da sua competência;

*l)* Administrar os contratos e zelar pelo cumprimento de todos os procedimentos, incluindo os inerentes à recepção do objecto contratual;

*m)* Zelar pela adequada guarda dos documentos de cada contratação;

*n)* Propor à Unidade Funcional de Supervisão das Aquisições a realização de acções de formação;

*o)* Propor à Unidade Funcional de Supervisão das Aquisições a emissão ou actualização de normas de contratos;

*p)* Informar à Unidade Funcional de Supervisão das Aquisições sobre as situações de práticas anti-éticas e actos ilícitos ocorridos;

*q)* Receber e remeter à Unidade Funcional de Supervisão das Aquisições os documentos relativos à inscrição no cadastro único de fornecedores;

*r)* Responder pela manutenção e actualização do cadastro de fornecedores, em conformidade com as orientações da Unidade Funcional de Supervisão das Aquisições;

*s)* Propor à Unidade Funcional de Supervisão das Aquisições a inclusão no cadastro dos fornecedores impedidos de participar no processo de contratação;

*t)* Encaminhar à Unidade Funcional de Supervisão das Aquisições os dados e informações necessários à constituição, manutenção e actualização e estudos estatísticos;

*u)* Manter adequada informação sobre o cumprimento de contratos e sobre a actuação dos fornecedores e informar a Unidade Funcional de Supervisão das Aquisições o que for pertinente;

*v)* Apoiar a Unidade Funcional de Supervisão das Aquisições no que for necessário ao cumprimento do Regulamento.

### SECÇÃO IV

#### Do Júri

### ARTIGO 16

#### (Composição do Júri)

O Júri é composto por um mínimo de três membros, qualificados na matéria, dos quais pelo menos um é funcionário ligado à Unidade Gestora Executora das Aquisições.

### ARTIGO 17

#### (Atribuições do Júri)

1. São atribuições do Júri:

*a)* Receber as propostas dos concorrentes e proceder à sua abertura;

*b)* Solicitar esclarecimentos aos concorrentes durante a avaliação das propostas em nome da Entidade Contratante;

*c)* Propor à Entidade Contratante a consulta a técnicos e especialistas, quando necessário;

*d)* Propor alterações nas propostas iniciais, no Concurso em Duas Etapas;

*e)* Avaliar e classificar as propostas; e

*f)* Remeter o relatório de avaliação das propostas, com recomendação de adjudicação, à decisão da Entidade Contratante.

2. No exercício das suas atribuições os membros do Júri devem observar, particularmente os princípios de independência, imparcialidade e isenção.

3. Compete ao Ministro que superintende a área das Finanças aprovar a tabela de senhas de presenças para os membros de júri.

### ARTIGO 18

#### (Competências do Júri)

1. São competências do Júri:

*a)* Deliberar em reunião reservada com a participação da maioria dos seus membros; e

*b)* Deliberar por maioria de votos dos membros presentes

2. As deliberações do Júri devem ser registadas em acta devidamente assinada, dela constando a fundamentação e, havendo voto vencido de algum membro do Júri, tal facto deve ser registado indicando as razões da discordância.

3. É vedado aos membros do Júri delegar as suas competências.

### ARTIGO 19

#### (Impedimentos dos membros do Júri)

Aplica-se aos membros que integrarem o Júri os impedimentos estabelecidos no artigo 13 do presente Regulamento.

EXHIBIT 8 PAGE 46

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

## SECÇÃO V

### Dos concorrentes

### ARTIGO 20

#### (Elegibilidade)

São elegíveis a concorrer na contratação de empreitada de obras, fornecimento de bens ou prestação de serviços, as pessoas singulares ou colectivas, nacionais ou estrangeiras, que demonstrem possuir qualificações jurídica, económico-financeira e técnica e a regularidade fiscal, e que preencham ainda os outros requisitos previstos no presente Regulamento

### ARTIGO 21

#### (Impedimento de participação no concurso)

1. Não serão aceites as propostas apresentadas por concorrentes, relativamente aos quais se verifique uma das seguintes situações:

   a) Ser pessoa singular condenada por sentença judicial transitada em julgado, por qualquer delito que ponha em causa a sua idoneidade profissional, enquanto durar a pena;

   b) Ser pessoa singular disciplinarmente punida por falta grave em matéria profissional, enquanto durar a sanção;

   c) Ser pessoa, singular ou colectiva, sancionada por qualquer órgão ou instituição do Estado, com a proibição de contratar em razão de prática de acto ilícito em procedimento de contratação, durante o prazo de vigência da sanção;

   d) Ser pessoa singular que controla, directa ou indirectamente, pessoas colectivas enquadradas nas situações mencionadas na alínea c);

   e) Ser agente que integre o quadro da Entidade Contratante e pessoa responsável por decisão a ser proferida;

   f) Ser pessoa colectiva controlada, directa ou indirectamente, por pessoa enquadrada nas situações definidas nas alíneas anteriores;

   g) Ser pessoa, singular ou colectiva, que tenha defraudado o Estado ou envolvida em falências fraudulentas de empresa ou ainda em processo de falência ou concordata; e

   h) Ser pessoa, singular ou colectiva, cujo capital tenha proveniência comprovadamente ilícita.

2. Não pode participar, directa ou indirectamente, no concurso ou na contratação de empreitada de obra, de fornecimento de bens ou de prestação de serviço:

   a) O autor do projecto objecto da contratação, básico ou executivo, seja ele pessoa singular ou colectiva; e

   b) Pessoa colectiva, isoladamente ou em consórcio ou em associação, responsável pela elaboração do projecto ou da qual o autor do projecto seja, dirigente, accionista ou detentor de mais de cinco por cento do capital social dessa pessoa colectiva ou responsável técnico do projecto.

3. Pode ser permitida a participação do autor do projecto ou da pessoa colectiva a que se refere o número anterior, no concurso de empreitada de obra ou prestação de serviço, ou na execução, como consultor ou técnico, com a função de fiscalizar, supervisionar ou gerir, exclusivamente ao serviço da Entidade Contratante.

### ARTIGO 22

#### (Qualificação jurídica)

1. A qualificação jurídica afere-se pela apresentação dos seguintes documentos:

   a) Para pessoas singulares, formulário devidamente preenchido, acompanhado por fotocópia autenticada do documento de identificação;

   b) Para pessoas colectivas, formulário devidamente preenchido, acompanhado de certidão de registo comercial e escritura pública ou documento equivalente, e

   c) Declaração do concorrente de que não se encontra em qualquer das situações previstas no artigo 21.

2. Sempre que aplicável, deverá ser apresentado:

   a) Projecto do consórcio ou documento do consórcio constituído;

   b) Documentos comprovativos do preenchimento de outros requisitos estabelecidos em legislação especial para o desempenho da actividade objecto de contratação.

### ARTIGO 23

#### (Qualificação económico-financeira)

1. São documentos relativos à situação económico-financeira:

   a) No caso de pessoa singular:

      i. Declaração periódica de rendimentos;

      ii. Declaração anual de informação contabilística e fiscal; e

      iii. Declaração de que não há execução judicial do seu património que afecte a sua situação financeira.

   b) No caso de pessoa colectiva:

      i. Declaração periódica de rendimentos;

      ii. Declaração anual de informação contabilística e fiscal;

      iii. Balanço patrimonial e demonstrações contabilísticas do último exercício fiscal, apresentado nos termos da lei;

      iv. Declaração de que não há pedido de falência contra ela e de que não requereu concordata.

2. Os Documentos de Concurso podem ainda exigir que o concorrente tenha:

   a) Facturação em actividades similares ao objecto da contratação;

   b) Facturação média anual nos três últimos exercícios fiscais de valor igual ou superior ao valor fixado nos Documentos de Concurso, limitado entre uma e três vezes o valor estimado das obras, bens ou serviços objecto da contratação;

   c) Capital social não inferior ao montante fixado nos Documentos de Concurso, ou património líquido no último exercício fiscal igual ou superior ao valor fixado nos Documentos de Concurso, não devendo, em ambos os casos, ser superior a dez por cento do valor estimado das obras, dos bens ou serviços objecto da contratação;

   d) Confirmação de facilidades de acesso a créditos nos montantes especificados nos Documentos de Concurso.

3. As qualificações económico-financeiras devem ser compatíveis com os encargos a serem suportados pelo concorrente e proporcionais à natureza e dimensão do objecto.

EXHIBIT 8 PAGE 47

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

4. Sem prejuízo dos procedimentos estabelecidos em legislação específica no caso de Concurso para Concessão, o capital social ou património líquido estabelecido nos Documentos de Concurso levará em consideração a soma dos encargos económico-financeiros que a concessionária deve suportar nos três primeiros anos de vigência da concessão, de acordo com o orçamento elaborado pela Entidade Concedente, incluindo o valor do preço pela outorga da concessão durante o mesmo período, se houver.

5. O percentual a ser adoptado em relação ao número anterior será determinado por despacho conjunto dos Ministros que superintendem as áreas de tutela beneficiárias do objecto da contratação e das Finanças.

### Artigo 24

#### (Qualificação técnica)

1 São documentos relativos à qualificação técnica:

*a)* Certidão emitida por entidade competente, comprovativa do registo ou inscrição em actividade profissional compatível com o objecto da contratação;

*b)* Declaração do próprio concorrente comprovativa das instalações e equipamentos adequados e disponíveis para a execução do objecto da contratação, com indicação de todos os dados necessários à sua verificação;

*c)* Declaração do próprio concorrente comprovativa da equipa profissional e técnica disponível para a execução do objecto da contratação, acompanhada dos respectivos currículos;

*d)* Declaração emitida por pessoa de direito público ou privado comprovativa de que, no último exercício fiscal, o concorrente adquiriu experiência em actividades com características técnicas similares às do objecto da contratação, com indicação dos dados necessários à sua verificação;

*e)* Certificado de habilitações literárias e profissionais dos responsáveis pela execução do objecto do contrato, se for o caso;

*f)* Certificado de qualidade emitida por entidade competente, nacional ou estrangeira, ou declaração de compromisso da empresa de adopção do sistema de qualidade, homologada pela instituição responsável pela normalização e qualidade ou certificado comprovativo de ensaios laboratoriais;

*g)* Alvará ou documento equivalente emitido pela entidade competente.

2. Os Documentos de Concurso devem fixar, de forma clara e objectiva, os dados mínimos a serem demonstrados pelo concorrente para comprovar as exigências fixadas neste artigo.

3. A qualificação técnica deve ser compatível com os encargos a serem suportados pelo concorrente e proporcional à natureza e dimensão do objecto do concurso.

### Artigo 25

#### (Regularidade fiscal)

A regularidade fiscal do concorrente é comprovada através de

*a)* Certidão válida de quitação emitida pela Administração Fiscal; e

*b)* Declaração válida emitida pela instituição responsável pelo sistema nacional de segurança social

### Artigo 26

#### (Concorrente nacional)

1. Para efeitos do presente Regulamento, considera-se concorrente nacional:

*a)* Pessoa singular que possua nacionalidade moçambicana;

*b)* Pessoa colectiva que tenha sido constituída nos termos da legislação moçambicana e cujo capital social seja detido em mais de cinquenta por cento por pessoa singular moçambicana ou por pessoa colectiva moçambicana cujo capital social seja maioritariamente detido em mais de cinquenta por cento por pessoa singular moçambicana.

2. A Entidade Contratante pode restringir a participação a concorrentes nacionais, as modalidades de contratação definidas no presente Regulamento, sempre que se trate de contratação de empreitada de obras, de fornecimento de bens ou de prestação de serviços, cujo valor estimado não seja superior a três vezes o limite estabelecido nos termos dos n°s 2 e 3 do artigo 90

3. Caso a Entidade Contratante não aplique a prerrogativa prevista no número anterior, deve estabelecer as seguintes margens de preferência a concorrentes nacionais:

*a)* Dez por cento do valor do contrato, sem impostos, para obras; e

*b)* Quinze por cento do valor do contrato, sem impostos, para bens.

4. Para efeitos de aplicação da margem de preferência para bens, é indispensável a apresentação do modelo de declaração do produtor para prova de incorporação de factores nacionais correspondentes, cujo valor deve corresponder a pelo menos vinte por cento do preço a porta da fábrica do produto acabado, podendo o Ministro que superintende a área das Finanças ajustar a percentagem acima referida.

5. Caso pretenda exercer as prerrogativas previstas no n° 2, a Entidade Contratante deve obter autorização prévia e fundamentada do Ministro de tutela, fazendo-se constar, expressamente, a restrição da participação apenas de concorrentes nacionais no Anúncio e Documentos do Concurso.

### Artigo 27

#### (Concorrente estrangeiro)

1. O concorrente estrangeiro deve atender às normas gerais fixadas no presente Regulamento, em legislação específica e nos Documentos de Concurso, mediante apresentação de documentos equivalentes aos exigidos a concorrentes nacionais

2. O concorrente estrangeiro, quer esteja ou não autorizado a exercer a sua actividade em Moçambique, deve ainda:

*a)* Ter procurador residente e domiciliado no País, com poderes especiais para receber citação, intimação e responder administrativa e judicialmente pelos seus actos, juntando o instrumento de mandato com os documentos determinados no presente Regulamento;

*b)* Comprovar a sua qualificação jurídica, económico-financeira, técnica e regularidade fiscal no país de origem;

*c)* Comprovar a inexistência de pedidos de falência ou concordata em Moçambique e no país de origem; e

*d)* Proceder à entrega dos documentos escritos em língua portuguesa.

3. A Entidade Contratante poderá, sempre que o julgar necessário, confirmar a veracidade do conteúdo dos documentos referidos nas alíneas *b)* e *c)* do número anterior

EXHIBIT 8 PAGE 48

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

### ARTIGO 28
#### (Consórcios e associações)

1. É sempre permitida a participação, nos concursos, de concorrentes constituídos em consórcio ou associações.

2. Os membros integrantes de um consórcio ou associação não podem participar, no mesmo concurso, isoladamente nem integrando outro consórcio ou associação.

3. As omissões relativas a consórcios e associações serão colmatadas por legislação específica.

### ARTIGO 29
#### (Constituição de consórcio ou associação)

1. Do documento de constituição de consórcio deve constar:

a) Nome e qualificação de cada membro integrante do consórcio e a indicação da participação de cada um deles;

b) Indicação do membro representante do consórcio perante a Entidade Contratante, com poderes para assumir obrigações e para receber citação e intimação em nome de todos os membros integrantes do consórcio; e

c) Assunção de responsabilidade solidária dos membros integrantes do consórcio por todas as obrigações e actos do consórcio.

2. A constituição de associação rege-se por legislação específica.

### ARTIGO 30
#### (Habilitação especial de consórcio)

1. No caso de consórcio concorrente, cada um dos seus membros deve apresentar os documentos de qualificação jurídica, económico-financeira e técnica e de regularidade fiscal exigidos nos termos dos artigos 22 a 25 do presente Regulamento, devendo também ser apresentado o documento de constituição do consórcio ou o respectivo projecto acompanhado de declaração de compromisso para constituição do consórcio caso vença o concurso.

2. Os requisitos de facturação mínima e de capital social ou de património líquido do consórcio podem resultar da soma dos valores comprovados de cada um dos membros integrantes.

3. Os requisitos de qualificação técnica do consórcio podem ser comprovados por um dos seus membros ou pela soma de elementos que integram a capacidade técnica de cada um deles.

4. As garantias provisórias e ou definitivas do consórcio podem ser oferecidas isoladamente por qualquer dos seus membros ou ter o seu valor rateado entre a totalidade dos membros, a exclusivo critério do consórcio.

### SECÇÃO VI

#### Do concurso, publicação e notificação

### ARTIGO 31
#### (Elementos do Anúncio de Concurso)

1. O Anúncio de Concurso deve, entre outros elementos, definir de forma precisa, suficiente e clara:

a) Entidade Contratante que o promove;

b) Objecto;

c) Local, dias e horário em que podem ser consultados e obtidos os Documentos de Concurso;

d) Local, dias e horário da recepção das propostas; e

e) Local, dia e horário em que serão abertas as propostas.

2. No concurso para contratação de empreitada de obras, se a visita ao local da obra for obrigatória, o Anúncio deverá indicar os respectivos dias e horários.

### ARTIGO 32
#### (Publicação do Anúncio de Concurso)

1. O Anúncio de Concurso é divulgado mediante publicação na imprensa, pelo menos duas vezes, e na sede da Entidade Contratante, devendo no caso de Concurso Internacional, a divulgação ser feita através de *Boletim da República* e/ou página da *Internet*, podendo-se ampliar por outros meios.

2. É obrigatória a publicação de.

a) Anúncio de Concurso, que divulga a sua realização;

b) Convite público para inscrição no cadastro; e

c) Adjudicação do objecto do concurso à participante vencedora

### ARTIGO 33
#### (Direito de Consulta Pública)

1. Todos os documentos integrantes do procedimento administrativo de contratação são abertos à consulta do público, desde a publicação do Anúncio de Concurso até sessenta dias após a sua conclusão, independentemente de pagamento de taxa ou emolumento, salvo aqueles casos cuja divulgação possa comprometer a confidencialidade do processo de avaliação, a defesa e segurança nacionais.

2. A excepção referida no número anterior não é aplicável aos órgãos de controlo interno e externo, nos termos da legislação vigente.

3. Os documentos relativos a avaliação e as propostas dos concorrentes são confidenciais sendo apenas disponibilizados à entidade responsável por prestar esclarecimentos sobre os resultados do processo de avaliação, sem prejuízo do previsto no nº 3 do artigo 140 do presente Regulamento.

### ARTIGO 34
#### (Notificação de participantes)

1. Os actos praticados na contratação que interessam apenas aos participantes devem ser comunicados aos concorrentes pela Entidade Contratante por meio de notificação directa.

2. Devem ser objecto de notificação:

a) Convocatória para celebração do contrato;

b) Decisão sobre classificação de propostas e adjudicação;

c) Decisão sobre habilitação de participante;

d) Decisão sobre a inscrição no cadastro e sobre a actualização de dados cadastrais;

e) Interposição e decisão de reclamações e recursos;

f) Acto comunicando a pretensão de cancelar ou invalidar o procedimento;

g) Convocatória dos participantes para discussão de propostas iniciais, no caso de Concurso em Duas Etapas;

h) Convocatória para a confirmação de declarações apresentadas pelo vencedor; e

i) Outros actos julgados necessários.

3. Os actos definidos no número anterior devem ser notificados a todos os participantes, salvo aqueles cujo direito de participação tenha prescrito.

EXHIBIT 8   PAGE 49

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

## SECÇÃO VII

### Dos critérios de avaliação e decisão das propostas

### ARTIGO 35

#### (Critérios de Avaliação e Decisão)

1. A contratação de empreitada de obra, fornecimento de bens e prestação de serviços deve ser decidida com base no critério de menor preço.

2. Excepcionalmente, não sendo viável decidir com base no critério do menor preço, a Entidade Contratante pode fazê-lo com base em critério conjugado na avaliação técnica e no preço, fundamentando.

### ARTIGO 36

#### (Critério do menor preço)

1. A decisão com base no menor preço deve propiciar a escolha das propostas que garantam o nível de qualidade e qualificação do concorrente necessárias à realização do interesse público, de acordo com os Documentos de Concurso.

2. Na avaliação do preço podem ser levadas em consideração as condições de pagamento, desde que tal critério seja prévio e objectivamente definido nos Documentos de Concurso.

### ARTIGO 37

#### (Critério conjugado)

1. A avaliação baseada na conjugação das propostas técnica e preço é feita de acordo com os critérios de ponderação estabelecidos nos Documentos de Concurso.

2. Os Documentos de Concurso também especificarão os factores essenciais, além do preço, a serem considerados na avaliação da proposta, e o modo de sua aplicação com o fim de determinar a proposta de menor preço avaliado.

3. Os factores de avaliação técnica podem ser definidos por fórmula matemática que contemple, de forma objectiva, as variáveis referidas no número anterior.

4 Na avaliação podem ser considerados outros factores dentre os quais:

*a)* Custo de transporte e seguro até ao local especificado;

*b)* Cronograma de pagamentos;

*c)* Prazo de entrega;

*d)* Custos operacionais;

*e)* Eficiência e adequação do equipamento;

*f)* Disponibilidade de peças de reposição e serviços de manutenção;

*g)* Condições de garantia;

*h)* Treinamento;

*i)* Segurança;

*j)* Benefícios ambientais;

*k)* Disponibilidade de equipamentos e qualificação da equipe técnica, nos casos em que represente uma vantagem para a Entidade Contratante;e

*l)* Ser titular de certificado válido do selo do direito de uso do "Orgulho Moçambicano. Made in Mozambique."

5. Na medida do possível, ressalvado o preço, os demais factores de avaliação serão expressos em termos monetários.

6 A avaliação técnica e a decisão devem ser devidamente fundamentadas no relatório de avaliação.

### ARTIGO 38

#### (Solução em caso de empate)

1. Quando for adoptado o critério de menor preço e houver empate entre duas ou mais propostas, a classificação final deve ser apurada por sorteio em sessão pública.

2. Quando for adoptado o critério conjugado e houver empate entre duas ou mais propostas, a classificação final é atribuída ao concorrente detentor da melhor classificação técnica, e persistindo o empate, a classificação final deve ser decidida por sorteio, em sessão pública.

## SECÇÃO VIII

### Dos critérios de decisão de concurso para concessão

### ARTIGO 39

#### (Critérios de Decisão)

1. Sem prejuízo da legislação específica a decisão de concurso para a concessão de obras ou prestação de serviços públicos pode ser adoptada, isolada ou conjuntamente, os seguintes critérios:

*a)* Maior oferta de preço pela outorga;

*b)* Menor tarifa ou preço a ser praticado junto aos utilizadores;

*c)* Melhor qualidade dos serviços ou dos bens postos à disposição do público;

*d)* Melhor atendimento e satisfação da procura; e

*e)* Ser titular de certificado válido do selo do direito de uso do "Orgulho Moçambicano. Made in Mozambique."

2. A escolha da melhor oferta de preço pela outorga pode considerar as condições de pagamento, conforme critérios prévia e objectivamente fixados nos Documentos de Concurso.

3. O critério da melhor qualidade abrange técnicas empregues para garantir regularidade, eficiência, segurança, actualidade, generalidade e cortesia na prestação do serviço aos utilizadores ou na fruição do bem e deve ser aferido por parâmetros objectivos detalhados nos Documentos de Concurso.

4. A análise do melhor atendimento e satisfação da procura compreende a quantidade e qualidade dos bens ou serviços colocados à disposição para fruição, o prazo proposto para o início da prestação do serviço ou fruição do bem, do cronograma para fornecimento, da área de abrangência e da previsão de expansão, conforme critérios prévia e objectivamente definidos nos Documentos de Concurso.

5. A qualidade dos serviços ou bens e o atendimento e satisfação da procura podem ser avaliados através da verificação da sua suficiência e pela sua classificação, conforme dispuserem os Documentos de Concurso.

6. Sem prejuízo da legislação específica aplicam-se aos critérios de decisão de concurso para concessão de obra ou prestação de serviços públicos as normas da Secção VII anterior, no que não contrariarem as disposições da presente Secção.

## SECÇÃO IX

### Dos Contratos

### ARTIGO 40

#### (Natureza e regime)

1. Os contratos regulados pelo presente Regulamento têm natureza administrativa.

EXHIBIT 8 PAGE 60

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

2. Os contratos de empreitada de obras públicas, fornecimento de bens, prestação de serviços e de locação celebrados pelos órgãos e instituições do Estado, regulam-se pelas normas desta secção, por suas cláusulas e pelos preceitos de direito público, aplicando-se-lhes os princípios de teoria geral dos contratos e, supletivamente, as disposições de direito privado.

### Artigo 41

#### (Acto declarativo prévio)

1. Para celebração do contrato, a Entidade Contratante deve, no prazo de cinco dias úteis após a adjudicação, notificar o concorrente vencedor para apresentar, no prazo não superior a dez dias úteis a contar da data da recepção da notificação, certidões actualizadas dos requisitos de qualificação apresentados na fase de concurso que, entretanto, tenham caducado no decurso do mesmo.

2. Pode ser dispensada a apresentação das certidões e atestados referidos neste artigo, se a Entidade Contratante, em acto público de abertura das propostas, aferir directamente, inclusive por meio electrónico, a regularidade da situação do concorrente.

### Artigo 42

#### (Actos prévios da Entidade Contratante)

1. Terminado o acto prévio definido no artigo 41, a Entidade Contratante deve:

a) Confirmar e declarar o cabimento das despesas na correspondente verba orçamental;

b) Confirmar e declarar que elas são compatíveis com o escalonamento aprovado na fase preparatória, quando os compromissos do contrato envolverem despesas em mais de um ano económico; e

c) Solicitar autorização ao órgão competente, para celebração do contrato, quando as obrigações de pagamento decorram de compromissos assumidos em contratos ou acordos internacionais.

2 A cópia da autorização referida na alínea c) do nº 1 deve ser junta ao processo.

### Artigo 43

#### (Convocação do concorrente vencedor)

1 Cumpridos os procedimentos definidos no artigo anterior a Entidade Contratante deve convocar o concorrente vencedor para celebrar o contrato no prazo fixado nos Documentos de Concurso, que não pode ser inferior a dez dias úteis, nem superior a trinta dias úteis.

2. Caso o concorrente vencedor não compareça para assinar o contrato no prazo estabelecido, sem prejuízo da perda pelo concorrente vencedor da garantia provisória e de imposição de outras sanções previstas no presente Regulamento e nos Documentos de Concurso, a Entidade Contratante deve cancelar a adjudicação e examinar a documentação do melhor concorrente seguinte.

### Artigo 44

#### (Forma e formalidades)

1. Os contratos previstos no presente Regulamento, cujo valor seja superior ao limite previsto no nº 3 do artigo 113 devem ser reduzidos a escrito, obedecendo aos modelos constantes dos Documentos de Concurso que são parte integrante do presente Regulamento.

2. Celebrado o contrato, a Entidade Contratante deve, nos termos previstos em legislação específica, submetê-lo ao Tribunal Administrativo para efeitos de fiscalização.

### Artigo 45

#### (Cláusulas essenciais)

1. Os contratos devem mencionar, designadamente:

a) Identificação das partes contratantes;

b) Objecto do contrato, devidamente individualizado;

c) Prazo de execução da obra, fornecimento de bens ou prestação de serviços, com indicação das datas dos respectivos início e termo;

d) Garantias relativas à execução do contrato, quando exigidas;

e) Forma, prazos e demais cláusulas sobre o regime de pagamento;

f) Encargo total estimado resultante do contrato;

g) Sanções aplicáveis em caso de falta de cumprimento;

h) O foro judicial ou outro, para a solução de qualquer litígio emergente do contrato, seja na sua interpretação, ou na sua execução;

i) A inclusão obrigatória de uma cláusula anti-corrupção; e

j) Outras condições que as partes considerem também essenciais à boa execução do contrato.

2. O contrato pode prever a adopção de arbitragem independente para solução de conflitos resultantes da interpretação e execução do contrato, a ser realizada em Moçambique e em língua portuguesa, com observância da legislação específica sobre a matéria.

3. Constituem parte integrante do contrato, os Documentos de Concurso, a proposta da Contratada, projectos e demais elementos patentes do concurso.

4. Os Contratos para fornecimento de bens e prestação de serviços de consumo corrente serão limitados a uma duração máxima de um ano, prorrogável uma única vez, por igual período, desde que mantidas as condições contratuais iniciais.

5. É vedado qualquer pagamento, previsto no cronograma financeiro, sem a correspondente contraprestação de execução de obras, fornecimento de bens ou prestação de serviço.

### Artigo 46

#### (Garantias)

1. A Entidade Contratante deve exigir que a Contratada preste garantia definitiva adequada ao bom e pontual cumprimento das suas obrigações.

2. A apresentação da garantia do bom e pontual cumprimento das obrigações da Contratada é condição prévia de celebração do contrato.

3. A garantia definitiva poderá ser dispensada nos casos de contratação de empreitada de obras, fornecimentos de bens e prestação de serviços de pequena dimensão e na selecção de pessoas singulares para a prestação de serviços de consultoria.

4. Não é permitido o pagamento de adiantamento sem apresentação de garantia no mesmo valor.

### SECÇÃO X

#### Das prerrogativas públicas

### Artigo 47

#### (Prerrogativas)

A Entidade Contratante tem a prerrogativa de, nos termos do previsto no presente Regulamento:

a) Rescindir unilateralmente o contrato;

b) Fiscalizar a execução do contrato, directamente ou por fiscal por si contratado;

c) Suspender a execução do contrato;

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

EXHIBIT 8 PAGE 51

*d)* Aplicar as sanções pela inexecução total ou parcial do contrato;

*e)* Cancelar o concurso; e

*f)* Invalidar o concurso.

### SECÇÃO XI

### Da execução do contrato

### ARTIGO 48

### (Fiscalização)

1. A execução de qualquer obra pública deve ser fiscalizada por fiscais independentes, designados pela Entidade Contratante e, para o efeito contratados com base nos procedimentos especificados no Capítulo III do presente Regulamento.

2. Nos casos de contratação de empreitada de obras de pequena dimensão, a Entidade Contratante poderá optar por fazer a fiscalização directa.

3. Em caso de serem dois ou mais fiscais, um deles deve ser designado para chefiar.

4. Incumbe à fiscalização vigiar e verificar o exacto cumprimento do projecto e suas alterações, do contrato, dos Documentos de Concurso e do plano de trabalho.

### ARTIGO 49

### (Recepção provisória da obra)

1. Logo que a obra esteja concluída, a fiscalização deverá notificar a Entidade Contratante para proceder à vistoria para efeitos de recepção provisória da obra.

2. A vistoria será efectuada sob testemunho do fiscal, da Contratada e da Entidade Contratante, lavrando-se para o efeito o respectivo auto, confirmado pela fiscalização e assinado pelas três partes.

3. Do auto referido no número anterior deverá constar o registo de todas as anomalias detectadas, os prazos e responsabilidade pela sua correcção.

### ARTIGO 50

### (Recepção definitiva da obra)

1. Findo o prazo máximo de garantia de cinco anos contados desde a conclusão da obra, ou prazo não inferior a um ano, estabelecido no contrato, consoante a sua natureza, por iniciativa da Entidade Contratante ou a pedido do empreiteiro, deve ser promovida nova vistoria de todos os trabalhos da empreitada.

2. Se pela vistoria se verificar que as obras não apresentam deficiências, deteriorações, indícios de ruína ou de falta de solidez pelos quais deva responsabilizar-se o empreiteiro, deve ser promovida a recepção definitiva, por meio da emissão de auto, assinado pela Entidade Contratante, pela fiscalização e pelo empreiteiro.

### ARTIGO 51.

### (Deficiências de execução)

1. Se, em consequência da vistoria, se verificar que a obra não está em condições de ser recebida, o empreiteiro deve ser notificado pela Entidade Contratante para, no mais curto período, proceder à correcção das deficiências que se apresentem.

2. Se o empreiteiro não agir de acordo com o disposto no número anterior, a Entidade Contratante deve promover, à custa do empreiteiro, a realização das obras necessárias à remoção das deficiências. Para o efeito, a Entidade Contratante poderá recorrer à garantia definitiva.

3. A Entidade Contratante só deve proceder à recepção definitiva da obra depois da regularização das situações referidas nos números anteriores.

### ARTIGO 52

### (Recepção de bens ou serviços)

1. A Entidade Contratante deve designar, no mínimo de três elementos que não sejam os mesmos que compõem o Júri, responsáveis pela recepção dos bens ou serviços.

2. Os elementos referidos no número anterior devem proceder à verificação da conformidade dos bens fornecidos ou serviços prestados com o contrato, no local de entrega ou da execução

### ARTIGO 53

### (Deficiências no fornecimento ou prestação)

1. Se por virtude de deficiências constatadas os bens ou serviços não estiverem em condições de ser aceites, os elementos designados para a sua recepção devem comunicar de imediato à Entidade Contratante a respectiva rejeição e a obrigatoriedade da consequente substituição pela contratada.

2. O prazo para a substituição dos bens ou serviços rejeitados não pode exceder trinta dias a contar da notificação da decisão de rejeição.

### SECÇÃO XII

### Da modificação e cessação dos contratos

### ARTIGO 54

### (Modificação)

1. Os contratos regidos pelo presente Regulamento apenas podem ser modificados ou alterados, mediante fundamentação e por apostila quando haja necessidade de alteração de:

*a)* Projecto ou especificações para melhor adequação ao objecto da contratação;

*b)* Valor contratual em decorrência dos limites de acréscimo ou diminuição quantitativa decorrente da adequação ao objecto da contratação;

*c)* Regime de execução da obra ou prestação de serviço ou do modo de fornecimento de bens, em face da inexequibilidade dos termos originários da contratação; e

*d)* Condições de pagamento, em virtude de circunstâncias supervenientes, mantendo-se o valor inicial.

2. A Contratada fica obrigada a aceitar, nas mesmas condições contratuais, os acréscimos ou supressões que se fizerem nas obras, bens ou serviços, até vinte e cinco por cento do valor inicial do contrato.

3. Os acréscimos ou supressões superiores ao limite estabelecido no número anterior dependem da autorização por despacho do Ministro que superintende a área das Finanças.

### ARTIGO 55

### (Cessação)

1. Os contratos cessam

*a)* Pelo integral cumprimento das obrigações da Entidade Contratante e da Contratada;

*b)* Por mútuo acordo entre a Entidade Contratante e a Contratada; e

*c)* Por rescisão unilateral fundamentada em incumprimento de obrigações contratuais.

EXHIBIT 8 PAGE 52

2. A cessação do contrato por mútuo acordo ou por rescisão unilateral é obrigatoriamente feita por escrito.

## ARTIGO 56

### (Causas de rescisão unilateral)

1. A Entidade Contratante pode rescindir unilateralmente o contrato com fundamento em:

a) Incumprimento pela Contratada de cláusulas contratuais, especificações, projectos ou prazos;

b) Mora por prazo superior a sessenta dias, no cumprimento pela Contratada de obrigações constantes de cláusulas contratuais, especificações, projectos e prazos de execução ou fornecimento, ou prazo menor que tenha sido estabelecido nos Documentos de Concurso;

c) Cumprimento defeituoso reiterado de obrigações contratuais pela Contratada;

d) Sistemática inobservância pela Contratada das determinações da autoridade designada para acompanhar e fiscalizar a execução da obra ou serviços;

e) Declaração de falência, insolvência ou dissolução da Contratada;

f) Morte ou extinção da Contratada;

g) Alteração do pacto social, incluindo o objecto social e a estrutura societária da Contratada, por fusão, cisão ou incorporação, sem prévio conhecimento e consentimento da Entidade Contratante nos casos em que tal modificação prejudique ou possa ser susceptível de prejudicar a execução do contrato;

h) Transmissão, seja qual for a forma que revista e seja total ou parcial, da posição contratual da Contratada e bem assim a associação da Contratada a outrém, sem autorização prévia da Entidade Contratante; e

i) Acumulação, pela Contratada, de multas até vinte por cento do valor do contrato, se outro limite menor não estiver estabelecido nos Documentos de Concurso.

2. A Contratada pode rescindir unilateralmente o contrato com fundamento:

a) Na impossibilidade de acesso à área, local ou objecto para execução das obras ou para fornecimento de bens ou prestação de serviços nos prazos contratuais, ou de acesso às fontes de materiais originais especificados nos Documentos de Concurso ou na proposta, por acto imputável à Entidade Contratante;

b) No atraso por prazo superior a sessenta dias, nos pagamentos, totais ou parciais, devidos pela Entidade Contratante em razão da execução das obras, fornecimento de bens ou prestação de serviços; e

c) No decurso de sessenta dias a contar da recepção da ordem escrita da Entidade Contratante ordenando a suspensão da execução da obra ou prestação de serviços, por motivos não imputáveis à Contratada, salvo em caso de força maior ou caso fortuito.

3. A parte que pretenda rescindir unilateralmente o contrato deve notificar a outra da sua intenção de rescisão indicando, com precisão, as causas e os respectivos fundamentos.

4. Num prazo não superior a trinta dias a parte notificada deverá afastar as causas imputadas findo o qual poderá a parte notificante rescindir unilateralmente o contrato com base nos fundamentos constantes da notificação.

## ARTIGO 57

### (Consequências da rescisão unilateral)

1. Se a rescisão unilateral proceder da Entidade Contratante, tem esta o direito, sem prejuízo do que estiver estipulado nos Documentos de Concurso e no contrato, de:

a) Declarar perdida a seu favor a garantia definitiva prestada pela Contratada, em pagamento de multas contratuais e para ressarcimento dos prejuízos causados à Entidade Contratante;

b) Fazer retenção dos créditos decorrentes do contrato, para ressarcimento dos prejuízos causados à Entidade Contratante, até ao limite dos mesmos;

c) Exigir da Contratada indemnização pelos prejuízos causados; e

d) Tomar posse imediata do objecto do contrato, no estado e local em que se encontrar, ocupando e utilizando o local, instalações, equipamentos, material e pessoal empregues pela Contratada na execução do contrato, se necessários à continuidade da execução

2. Se a rescisão unilateral proceder da Contratada, tem esta o direito, sem prejuízo do que estiver estipulado nos Documentos de Concurso e no contrato, de:

a) Ser-lhe devolvida de imediato a garantia definitiva que tenha prestado;

b) Receber os pagamentos devidos pela execução do contrato até à data da rescisão; e

c) Ser ressarcida pelos custos da desmobilização de estaleiro.

### SECÇÃO XIII

### Do Cadastro

## ARTIGO 58

### (Constituição de cadastro)

1. Compete à Unidade Funcional de Supervisão das Aquisições:

a) Manter actualizado o cadastro único de empreiteiros de obras públicas, fornecedores de bens e de prestadores de serviços, elegíveis a participar nos concursos realizados pelos órgãos e instituições do Estado, incluindo autarquias e empresas do Estado, e

b) Criar um cadastro único de empreiteiros de obras públicas, fornecedores de bens e de prestadores de serviços impedidos de participar nos concursos referidos na alínea anterior.

2. Tendo em vista a manutenção e ampliação do cadastro referido no número anterior deve-se:

a) Formular, pelo menos uma vez em cada seis meses, convite público para inscrição no cadastro, por anúncio publicado na imprensa; e

b) Inscrever automaticamente no cadastro todas as pessoas que contratem com órgãos e instituições do Estado.

3. A manutenção e actualização do cadastro de empreiteiros de obras públicas, fornecedores de bens e prestadores de serviços referidos no n° 1 deste artigo são da competência das Unidades Gestoras Executoras das Aquisições.

## ARTIGO 59

### (Inscrição, manutenção e actualização do cadastro)

1. A inscrição no Cadastro depende da apresentação pelo interessado dos respectivos documentos de qualificação jurídica,

EXHIBIT 8 PAGE 53

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

Edição electrónica © Pandora Box Lda - todos os direitos reservados

económico-financeira e técnica, e da regularidade fiscal previstos no presente Regulamento, com excepção dos empreiteiros de obras públicas.

2. A inscrição de empreiteiros de obras públicas no cadastro depende da apresentação pelo interessado do Alvará emitido pela Comissão de Licenciamento dos Empreiteiros de Construção Civil.

3. A manutenção de inscrição no cadastro depende da actualização, pelo interessado, dos documentos referidos no números anteriores, sendo excluídos do cadastro os Empreiteiros de Obras Públicas fornecedores de bens e prestadores de serviços que deixem de observar os requisitos de inscrição no cadastro.

4. O cadastro deve estar permanentemente aberto à inscrição de qualquer interessado que reúna os requisitos estabelecidos no presente Regulamento, podendo os dados do cadastro serem actualizados pelo interessado, a qualquer momento e nos termos da lei

5. O pedido de inscrição no cadastro por iniciativa do interessado deve ser decidido pela Unidade Funcional de Supervisão das Aquisições, no prazo de quinze dias após a sua apresentação.

6. Em qualquer das modalidades de contratação, os requisitos de qualificação poderão ser comprovados pelos elementos do cadastro, sendo desnecessária a apresentação de documentos referidos no nº 1 do presente artigo

7 A decisão que indefere o pedido de inscrição no Cadastro deve ser fundamentada pela Unidade Funcional de Supervisão das Aquisições sendo susceptível de impugnação.

### Artigo 60

#### (Acesso ao cadastro)

O cadastro deve estar permanentemente aberto para consulta por qualquer pessoa, independentemente da demonstração de interesse e sem pagamento de qualquer taxa ou emolumento.

## CAPÍTULO II

## Modalidades de contração

### SECÇÃO I

### Do Concurso Público

### Artigo 61

#### (Definição)

O Concurso Público é a modalidade de contratação na qual pode intervir todo e qualquer participante interessado, desde que reúna os requisitos estabelecidos nos Documentos de Concurso.

### Artigo 62

#### (Fases)

O Concurso Público observa, pela ordem indicada, as seguintes fases:

*a)* De preparação e lançamento;
*b)* De apresentação e abertura das propostas e documento de qualificação;
*c)* De avaliação e saneamento;
*d)* De classificação e recomendação do júri;
*e)* De adjudicação; e
*f)* De reclamação e recurso

### Artigo 63

#### (Anúncio de Concurso)

A realização do Concurso Público obriga a Entidade Contratante à publicação de Anúncio do Concurso, nos termos previstos nos artigos 31 e 32 do presente Regulamento, e a sua comunicação à Unidade Funcional de Supervisão das Aquisições.

### Artigo 64

#### (Aquisição dos Documentos de Concurso)

A aquisição dos Documentos de Concurso não é condição para participar no Concurso Público, podendo a Entidade Contratante cobrar, para seu fornecimento, apenas o valor correspondente ao custo de reprodução gráfica.

### Artigo 65

#### (Conteúdo dos Documentos de Concurso)

1. Dos Documentos de Concurso devem constar:

*a)* Identificação do Concurso Público;
*b)* Objecto da contratação e sua especificação;
*c)* As fases do Concurso Público;
*d)* Endereço e data limite para solicitação dos esclarecimentos necessários à boa compreensão e interpretação de todas as normas e elementos que integram os Documentos de Concurso;
*e)* Exigências de entrega de amostras, se for o caso;
*f)* Exigências de qualificação do concorrente;
*g)* Modo de apresentação das propostas, com indicação dos elementos e documentos que devem acompanhá-las;
*h)* A moeda em que deve ser expresso o preço e as condições de pagamento;
*i)* Local, dia e horário para entrega das propostas e documentos de qualificação e para abertura das propostas;
*j)* Prazo de validade das propostas, durante o qual o concorrente fica obrigado a manter a proposta;
*k)* Possibilidade de apresentação de propostas com variantes, quando for o caso;
*l)* As garantias que sejam exigidas;
*m)* Critérios para avaliação e decisão de propostas;
*n)* Sanções aplicáveis;
*o)* Minuta do instrumento de contrato;
*p)* Especificações técnicas que observem prioritariamente as normas moçambicanas;
*q)* Formulários; e'
*r)* Outros elementos que a Entidade Contratante considere indispensáveis ou importantes.

2. Os modelos de Documentos de Concurso, que integram o presente Regulamento, são de uso obrigatório.

### Artigo 66

#### (Disponibilidade dos Documentos de Concurso)

Desde a publicação do Anúncio do Concurso até à abertura das propostas, os Documentos de Concurso devem ficar à disposição no local, para consulta dos interessados, independentemente da demonstração de interesse em contratar e sem pagamento de qualquer taxa.

EXHIBIT 8 PAGE 54

### Artigo 67

#### (Esclarecimentos sobre os Documentos de Concurso)

1. Os esclarecimentos necessários à boa compreensão e interpretação dos elementos patenteados serão solicitados pelos

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

Case 2:13-cv-02309-MMM-CW   Document 32-2   Filed 05/02/13   Page 56 of 71   Page ID #:986

Edição electrónica © Pandora Box Lda. – todos os direitos reservados

concorrentes no primeiro terço do prazo fixado para a apresentação das propostas e prestados por escrito pela Entidade para o efeito indicado nos Documentos de Concurso até ao termo do terço imediato do mesmo prazo.

2. A prestação de esclarecimentos não afecta o prazo estipulado nos Documentos de Concurso para apresentação de documentos de qualificação e elaboração de proposta.

3. Por iniciativa dos interessados ou da própria Entidade Contratante pode esta, por meio de esclarecimentos, apenas afastar possíveis dúvidas sobre os Documentos de Concurso.

4. A Entidade Contratante não pode alterar as disposições dos Documentos de Concurso nem proceder à inclusão de novas regras, salvo nos termos do disposto no artigo seguinte.

5. A Entidade Contratante deve comunicar os esclarecimentos que tiver prestado, nos termos dos números anteriores, a todos os interessados que tenham adquirido os Documentos de Concurso e aos que venham a adquiri-los.

### Artigo 68

**(Modificação dos Documentos de Concurso)**

Após a publicação do Anúncio de Concurso, a alteração dos Documentos de Concurso deve ser divulgada pela mesma forma que o texto original, com prorrogação do prazo, se necessário.

### Artigo 69

**(Prazo para apresentação de documentos de qualificação e propostas)**

1. Os Documentos de Concurso devem fixar prazo razoável e suficiente, não inferior a vinte e um dias para que os interessados preparem seus documentos de qualificação e propostas, de acordo com a natureza e características das obras, bens ou serviços a contratar.

2. O prazo para apresentação de documentos de qualificação e propostas começa a contar a partir da data de publicação do Anúncio de Concurso ou da data a partir da qual são postos a disposição os Documentos de Concurso, prevalecendo a data que ocorrer em último lugar.

### Artigo 70

**(Forma de apresentação de documentos de qualificação e propostas)**

Os documentos de qualificação e a proposta devem ser apresentados num único invólucro opaco e lacrado, com identificação completa do concorrente no seu exterior, bem como o objecto de concurso.

### Artigo 71

**(Prazo de validade das propostas)**

1. O prazo de validade das propostas deve ser definido nos Documentos de Concurso, não podendo ser inferior a vinte e um dias nem superior a cento e vinte dias, a contar da data final da sua entrega.

2. O concorrente é obrigado a manter a proposta durante o respectivo prazo de validade.

### Artigo 72

**(Garantias, tipos e formas)**

1. Os Documentos de Concurso devem fixar, como condição de aceitabilidade da proposta, a prestação de garantias nos termos previstos nos números seguintes.

2. As garantias podem ser:

   a) Provisórias, as prestadas no acto da apresentação da proposta para assegurar a sua manutenção nos Concursos cujo valor estimado seja superior aos limites previstos no nº 2 do artigo 90 do presente Regulamento; e

   b) Definitivas, as prestadas após a adjudicação e antes da assinatura do contrato, para assegurar o cumprimento das obrigações dele decorrentes.

3. O valor da garantia provisória não pode ser superior a um vírgula cinco por cento do valor da contratação estimado pela Entidade Contratante.

4. O valor da garantia definitiva não pode exceder dez por cento do valor da proposta da Contratada.

5. São aceites, pela Entidade Contratante, as seguintes formas de garantia:

   a) Garantia bancária;

   b) Caução em dinheiro;

   c) Cheque visado;

   d) Títulos de dívida pública; e

   e) Seguro-garantia.

6. Além das definidas neste artigo, a Entidade Contratante pode aceitar outras formas de garantia, desde que previstas nos Documentos de Concurso.

7. O concorrente pode combinar as garantias previstas no nº 5, desde que somem o valor previamente exigido.

### Artigo 73

**(Perda e devolução das garantias)**

1. Nos Concursos cujo valor estimado seja superior aos limites previstos no nº 2 do artigo 90 do presente Regulamento, o concorrente vencedor perderá a garantia provisória a favor da Entidade Contratante se:

   a) Recusar assinar o contrato;

   b) Entregar a garantia definitiva fora do prazo fixado; ou

   c) Não aceitar as correcções nos termos do nº 2 do artigo 78 do presente Regulamento

2. A garantia provisória prestada nos Concursos cujo valor estimado seja superior aos limites previstos no nº 2 do artigo 90 do presente Regulamento, deve ser restituída ao concorrente vencedor:

   a) Com a celebração do contrato;

   b) Quando o concurso for extinto; ou

   c) Quando o prazo de validade da sua proposta expirar e não for prorrogado.

3. As garantias provisórias dos restantes concorrentes são devolvidas após a assinatura do contrato.

4. Os Documentos de Concurso podem fixar que a garantia provisória pode ser convertida em garantia definitiva, sem prejuízo do seu reforço, quando for necessário.

### Artigo 74

**(Moeda)**

1. A proposta de preços deve ser apresentada em moeda nacional, o Metical, salvo nos casos excepcionais previstos nos Documentos de Concurso.

2. A proposta de preços em moeda diferente da moeda nacional deve ser devidamente fundamentada pela Unidade Gestora Executora das Aquisições e aprovada pela Autoridade Competente.

3. Na elaboração das suas propostas os concorrentes devem incluir todos os impostos, taxas e outros encargos incidentes sobre a empreitada de obras públicas, fornecimento de bens ou prestação de serviços.

EXHIBIT ___ PAGE ___

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

## Artigo 75

### (Acto público de abertura de propostas)

1. A abertura das propostas é feita pelo Júri em acto público e nele podem participar as pessoas que o desejarem.

2. O acto público de abertura das propostas inicia-se com a identificação do concurso e leitura da lista de concorrentes, elaborada de acordo com a ordem de recepção dos invólucros.

3. Cumpridas as formalidades previstas nos números antecedentes, são abertos os invólucros contendo os documentos de qualificação e as propostas, os quais devem ser rubricados pelos membros do Júri.

4. Caso o critério de avaliação seja o de conjugação de técnica e de preço, os Documentos de Concurso poderão, excepcionalmente, estabelecer que os invólucros com as propostas de preços apenas sejam abertos após a avaliação das propostas técnicas.

5. No acto da abertura das propostas, o Júri deve anunciar o nome dos concorrentes, os preços cotados, e, quando exigido nos Documentos de Concurso, (a) a existência ou não de garantia provisória; (b) a presença de proposta com variante; e (c) declaração de descontos oferecidos.

6. A sessão de abertura das propostas termina com a leitura da respectiva acta que deve ser assinada pelos membros do júri e representantes dos concorrentes presentes no acto.

7. O Júri procede de seguida, em sessão reservada, à análise da regularidade dos documentos de qualificação e das propostas apresentadas pelos concorrentes, de acordo com os critérios fixados nos Documentos de Concurso.

## Artigo 76

### (Diligências para correcção de falhas ou omissões)

1. Caso o Júri constate a existência de falhas ou omissões na documentação de qualificação solicitará, em nome da Entidade Contratante, o concorrente para suprir por escrito as falhas em questão, em prazo não inferior a dois dias úteis.

2. Caso o júri constate a existência de defeitos ou falhas nas amostras entregues e exigidas nos Documentos de Concurso, deve notificar o concorrente para saná-los no prazo não inferior a dois dias úteis.

3. Caso o Júri constate a existência de dúvidas nos documentos de qualificação ou em uma ou mais das propostas apresentadas, pode realizar diligências escritas para esclarecimentos das mesmas. Em caso algum podem os esclarecimentos modificar o conteúdo da proposta.

## Artigo 77

### (Desclassificação de concorrentes)

Caso não sejam sanadas as falhas ou omissões notificadas nas diligências de saneamento, o Júri procede à desclassificação fundamentada dos concorrentes.

## Artigo 78

### (Avaliação e qualificação)

1. O Júri avalia as propostas dos concorrentes, de acordo com os critérios fixados nos Documentos de Concurso.

2. Caso o Júri constate a existência de erros aritméticos em uma ou mais das propostas não desclassificadas, procederá à correcção dos mesmos nos termos previstos nos Documentos de Concurso e notificará aos Concorrentes dos erros e omissões detectados.

3. No Concurso Público a avaliação das propostas e a qualificação dos concorrentes deve ser realizada em etapa única.

## Artigo 79

### (Classificação das propostas)

1. Na classificação de propostas não deve ser considerada qualquer vantagem não prevista nos Documentos de Concurso, sendo obrigatória a observância de todos os requisitos neles fixados.

2. A classificação deve ser devidamente fundamentada de acordo com as disposições do presente Regulamento e dos respectivos Documentos de Concurso.

3. Deve ser desclassificada a proposta que

a) Seja apresentada fora do prazo definido nos Documentos de Concurso;

b) Não cumpra com as exigências previstas nos Documentos de Concurso; ou

c) Apresente condições inexequíveis ou abusivas.

4. Caso os Documentos de Concurso exijam a entrega de amostras, a reprovação em testes e análises das mesmas determina a desclassificação da respectiva proposta.

## Artigo 80

### (Relatório de Avaliação e Recomendação do Júri)

Encerrada a fase de avaliação das propostas, que inclui, de entre outras, a classificação e desclassificação, o Júri elabora o relatório, no qual recomenda à Entidade Contratante a melhor proposta apurada no Concurso, para efeitos de adjudicação.

## Artigo 81

### (Cancelamento do Concurso)

1. A Entidade Contratante deve cancelar o concurso, no caso de existência de eventos ocorridos após o Anúncio de Concurso que comprovadamente modifiquem o interesse público na contratação.

2. Quando a Entidade Contratante pretenda cancelar o Concurso notificará a todos os concorrentes das razões de facto e de direito nas quais baseie a sua pretensão, para que estes se manifestem no prazo de três dias úteis.

3. Decorrido o prazo de manifestação dos concorrentes, a Entidade Contratante notificará fundamentando a decisão tomada.

## Artigo 82

### (Invalidade)

1. A Entidade Contratante deve verificar a legalidade dos actos praticados no procedimento administrativo de concurso, previamente à tomada de decisão de adjudicação.

2. Caso a Entidade Contratante verifique a existência de qualquer ilegalidade à luz das normas do presente Regulamento, deve declarar a invalidade do concurso.

3. Quando a Entidade Contratante pretenda invalidar o concurso notificará a todos os concorrentes das razões de facto e de direito nas quais baseie a sua pretensão, para que estes se manifestem no prazo de até três dias úteis.

4. Decorrido o prazo de manifestação dos concorrentes, a Entidade Contratante notificará fundamentando a decisão tomada.

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

### Artigo 83

#### (Adjudicação)

1. Caso a Entidade Contratante não cancele nem invalide o concurso, deve tomar a decisão de adjudicação, de acordo com a recomendação do júri.

2. A Entidade Contratante deve comunicar a todos os concorrentes da sua decisão de adjudicação no prazo não superior a dois dias úteis.

### Artigo 84

#### (Comunicação de actos de adjudicação, invalidação e cancelamento)

1. Os actos de adjudicação, de invalidação ou de cancelamento da contratação devem ser justificados pela Unidade Gestora Executora das Aquisições à Autoridade Competente e devidamente comunicados à Unidade Funcional de Supervisão das Aquisições.

2. Os actos de adjudicação, de invalidação ou de cancelamento da contratação devem ser publicados na imprensa, pela Entidade Contratante.

### SECÇÃO II

#### Do Concurso com Prévia Qualificação

### Artigo 85

#### (Definição)

1. O Concurso com Prévia Qualificação é a modalidade de contratação restrita e específica, na qual intervêm os concorrentes que tenham sido qualificados em fase preliminar à apresentação de suas propostas.

2. O Concurso com Prévia Qualificação deve ser adoptado quando a competitividade por meio de Concurso Público possa ser restringida em face da complexidade dos requisitos de qualificação e da onerosidade na elaboração das propostas.

3. Só pode participar na fase de apresentação de proposta, exame e classificação o concorrente que tenha sido pré-qualificado.

4. Ao Concurso com Prévia Qualificação aplica-se, subsidiariamente, o regime do Concurso Público.

### Artigo 86

#### (Fases)

O Concurso com Prévia Qualificação observa, pela ordem indicada, as seguintes fases:

*d)* De preparação e lançamento;
*b)* De apresentação de documentos de qualificação;
*c)* De saneamento e pré-qualificação;
*d)* De reclamação e recurso à pré-qualificação;
*e)* De lançamento restrito;
*f)* De apresentação de proposta;
*g)* De avaliação e saneamento;
*h)* De classificação e recomendação do Júri;
*i)* De decisão;
*j)* De adjudicação; e
*k)* De reclamação e recurso.

### Artigo 87

#### (Anúncio e Documentos de Concurso)

1 A realização de Concurso com Prévia Qualificação exige da Entidade Contratante a publicação de Anúncio do Concurso, nos termos previstos nos artigos 31 e 32 do presente Regulamento.

2. Os Documentos de Concurso devem observar o previsto no artigo 65 do presente Regulamento e devem ainda definir:

*a)* Uma fase preliminar de pré-qualificação, com indicação de um prazo de apresentação de documentos de qualificação não inferior a vinte dias contado a partir da data do Anúncio do Concurso; e

*b)* Uma fase subsequente de apresentação de propostas, exame e classificação, com indicação do prazo de apresentação das propostas dos concorrentes qualificados na fase preliminar, prazo este que não pode ser inferior a vinte dias contado a partir da data de solicitação da proposta aos concorrentes pré-qualificados.

3. A solicitação de propostas deve ser emitida pela Entidade Contratante no prazo não superior a um ano da data da decisão final sobre a pré-qualificação.

### Artigo 88

#### (Competência específica do Júri)

Compete ao Júri, adicionalmente ao previsto no artigo 17 do presente Regulamento, verificar a observância dos requisitos de qualificação dos concorrentes e decidir da sua pré-qualificação.

### Artigo 89

#### (Desclassificação de concorrente pré-qualificado)

1. Se o Júri verificar facto superveniente que afecte as suas condições de qualificação ou que foram prestadas falsas declarações, o concorrente pré-qualificado deve ser desclassificado na fase de apresentação, avaliação e classificação da proposta.

2. A desclassificação de concorrente pré-qualificado não afecta a validade do concurso.

### SECÇÃO III

#### Do Concurso Limitado

### Artigo 90

#### (Definição)

1. O Concurso Limitado é a modalidade de contratação baseada no valor, como definido no nº 2 do presente artigo, e destinado às pessoas singulares, micro, pequenas e médias empresas, inscritas no cadastro único referido no artigo 58 na data definida para entrega de propostas e documentos de qualificação.

2. O Concurso Limitado pode ser adoptado quando o valor estimado da contratação não seja superior a:

*a)* Contratação de empreitada de obras públicas cujo valor estimado não seja superior a 3.500.000, 00MT (três milhões e quinhentos mil meticais); e

*b)* Contratação de fornecimento de bens e prestação de serviços cujo valor estimado não seja superior 1.750.000, 00MT (um milhão setecentos e cinquenta mil meticais).

3. Os valores definidos nas alíneas *a)* e *b)* do nº 2 serão ajustados periodicamente por diploma conjunto dos Ministros que superintendem as áreas das Finanças, da Indústria e Comércio e das Obras Públicas e Habitação, respectivamente.

4. Ao Concurso Limitado aplica-se, subsidiariamente, o regime do Concurso Público.

EXHIBIT $\boldsymbol{8}$ PAGE 59

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

Case 2:13-cv-02309-MMM-CW   Document 32-2   Filed 05/02/13   Page 59 of 71   Page ID #:989

### ARTIGO 91

#### (Fases)

O Concurso Limitado observa, pela ordem indicada, as seguintes fases:

a) De preparação e lançamento;

b) De apresentação e abertura das propostas e documento de inscrição no cadastro;

c) De avaliação e saneamento;

d) De classificação e recomendação do júri;

e) De adjudicação; e

f) De reclamação e recurso.

### ARTIGO 92

#### (Anúncio e Documentos de Concurso)

1. A realização de Concurso Limitado exige da Entidade Contratante a publicação de Anúncio do Concurso, nos termos previstos nos artigos 31 e 32 do presente Regulamento.

2. Os Documentos de Concurso devem observar o previsto no artigo 65 do presente Regulamento e devem ainda definir:

a) Os requisitos de qualificação dos concorrentes, verificáveis por documentos do cadastro;

b) O prazo para:

i. Apresentação das propostas, que não pode ser inferior a doze dias a contar dá data do Anúncio de Concurso;

ii. Entrega de declaração pelos concorrentes que certifiquem que os respectivos dados de cadastro não sofreram alteração, e os seus documentos de cadastro não estão caducados.

3. Os Documentos de Concurso podem exigir a apresentação de elementos adicionais para comprovação da qualificação técnica e económica dos concorrentes.

### ARTIGO 93

#### (Critério de Avaliação e Decisão)

O critério a observar pelo Júri na avaliação, classificação e recomendação da decisão a tomar no Concurso Limitado é o do menor preço previsto nos termos do artigo 36 do presente Regulamento.

### SECÇÃO IV

Do Concurso em Duas Etapas

### ARTIGO 94

#### (Definição)

1. O Concurso em Duas Etapas é a modalidade de contratação em que os concorrentes oferecem, na primeira fase, proposta técnica inicial e, na fase seguinte, proposta técnica definitiva e a proposta de preço.

2. O Concurso em Duas Etapas pode ser realizado quando:

a) A natureza das obras, bens ou serviços não permita à Entidade Contratante definir previamente e de forma precisa as especificações técnicas mais satisfatórias e adequadas ao interesse público em questão; ou

b) O interesse público possa ser satisfeito de diversas maneiras.

3. Ao Concurso em Duas Etapas aplicam-se, subsidiariamente, os procedimentos do Concurso Público.

### ARTIGO 95

#### (Fases)

O Concurso em Duas Etapas observa, pela ordem indicada, as seguintes fases:

a) De preparação e lançamento;

b) De apresentação de propostas técnicas iniciais;

c) De selecção de propostas técnicas iniciais;

d) De discussão de propostas técnicas iniciais;

e) De definição da solução técnica comum a todos os intervenientes;

f) De reclamação e recurso contra decisão sobre as propostas técnicas iniciais;

g) De lançamento restrito;

h) De apresentação de documentos de qualificação e de propostas técnicas definitivas e de preço;

i) De avaliação e saneamento;

j) De classificação e recomendação do Júri;

k) De adjudicação; e

l) De reclamação e recurso.

### ARTIGO 96

#### (Anúncio e Documentos de Concurso)

1. A realização de Concurso em Duas Etapas exige da Entidade Contratante a publicação de Anúncio do Concurso, nos termos previstos nos artigos 31 e 32 do presente Regulamento.

2. Os Documentos de Concurso devem observar o previsto no artigo 65 do presente Regulamento e definir de forma clara e precisa, o interesse público perseguido pela Entidade Contratante, as características fundamentais da obra, bens e serviços, as alternativas técnicas admitidas para o objecto do Concurso e ainda:

a) O prazo de apresentação da proposta técnica inicial, que não pode ser inferior a trinta dias a contar da data de publicação do Anúncio do Concurso; e

b) O prazo de apresentação, pelos concorrentes seleccionados, dos documentos de qualificação e das propostas técnica definitiva e financeira, o qual não pode ser inferior a trinta dias a contar da data de encerramento da fase de discussão.

3. Os Documentos de Concurso poderão estabelecer os prazos da fase de discussão para definição da solução técnica comum e da fase de selecção de concorrentes.

### ARTIGO 97

#### (Competência específica do Júri)

1. Compete ao Júri examinar, classificar e seleccionar, aceitando ou rejeitando, as propostas técnicas iniciais apresentadas pelos concorrentes de acordo com os critérios definidos nos Documentos de Concurso.

2. Feita a selecção de propostas técnicas iniciais, o Júri promove discussões com os concorrentes seleccionados, em dia, hora e local definidos nos Documentos de Concurso ou que venham a ser fixados na notificação com vista a definir a solução técnica mais adequada a satisfazer o interesse público em causa.

3. Definida a solução técnica prevista no número anterior, o Júri notificará os concorrentes seleccionados:

a) Da acta lavrada contendo a solução técnica mais adequada;

b) Do prazo para apresentarem as propostas técnica definitiva e financeira.   EXHIBIT ___ PAGE ___

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

### Artigo 98

#### (Critério de avaliação e decisão)

1. As propostas devem ser classificadas de acordo com os critérios definidos nos Documentos de Concurso.

2. Devem ser desclassificadas as propostas técnicas definitivas que não se conformem com a solução técnica comum.

### SECÇÃO V

#### Do Concurso por Lances

### Artigo 99

#### (Definição)

1. O Concurso por Lances é a modalidade de contratação para aquisição de bens e serviços comuns de disponibilidade imediata, na qual a disputa entre interessados é feita por meio de propostas de lances sucessivos em acto público.

2. Consideram-se bens e serviços comuns aqueles cujas normas de desempenho e qualidade podem ser objectivamente definidas nos Documentos de Concurso por meio de especificações usuais no mercado.

3. Compete à Unidade Funcional de Supervisão das Aquisições elaborar, actualizar e divulgar, para as Entidades Contratantes, a lista de bens e serviços comuns que podem ser objecto de aquisição por meio do Concursos por Lances.

4. O Ministro que superintende a área das Finanças regulamentará a realização de Concurso por Lances por meio electrónico.

5. Compete à Unidade Funcional de Supervisão das Aquisições implementar e operacionalizar o meio electrónico para sua utilização pelas Entidades Contratantes.

6. Ao Concurso por Lances aplica-se, subsidiariamente, o regime do Concurso Público.

### Artigo 100

#### (Fases)

O Concurso por Lances observa, pela ordem indicada, as seguintes fases:

*a)* De preparação e lançamento;
*b)* De apresentação e abertura de propostas e de documentos de qualificação;
*c)* De apresentação e encerramento de lances;
*d)* De qualificação;
*e)* Adjudicação; e
*f)* De reclamação e recurso.

### Artigo 10

#### (Anúncio e Documentos de Concurso)

1. A realização de Concurso por Lances exige da Entidade Contratante a publicação de Anúncio do Concurso, nos termos previstos nos artigos 31 e 32 do presente Regulamento.

2. Os Documentos de Concurso devem observar o estabelecido no artigo 65 do presente Regulamento e devem ainda definir:

*a)* O prazo de apresentação de propostas, que não pode ser inferior a quinze dias a contar da data da publicação do Anúncio de Concurso;

*b)* A data de abertura das propostas e de apresentação de lances;
*c)* Os critérios de selecção dos concorrentes;
*d)* O critério de fixação da diferença de valores a partir da melhor proposta para os concorrentes participarem na fase de lances; e
*e)* A não exigência de garantia provisória.

### Artigo 102

#### (Competência específica do Júri)

Compete ao Júri:

*a)* Receber as propostas dos concorrentes e proceder à sua abertura de acordo com os critérios definidos nos Documentos de Concurso;

*b)* Determinar que participem na fase de lances os concorrentes com propostas situadas no intervalo referido na alínea *d)* do nº 2 do artigo 101;
*c)* Acompanhar e regular a realização de lances;
*d)* Avaliar os documentos de qualificação do concorrente vencedor da fase de lances; e
*e)* Avaliar os documentos de qualificação do concorrente com o segundo menor preço, na eventualidade do concorrente vencedor ser excluído por falta de qualificação nos termos dos Documentos de Concurso, e, sucessivamente, até que seja declarado o vencedor.

### Artigo 103

#### (Lances)

1. A fase de lances é feita pela apresentação de novas e sucessivas propostas verbais pelos concorrentes que o desejarem, na sessão de apresentação de lances, até à proclamação de um vencedor.

2. Enquanto houver concorrentes interessados não pode ser impedida a apresentação de novos e sucessivos lances.

### Artigo 104

#### (Autoridade Competente)

A Autoridade Competente em representação da Entidade Contratante deve estar presente no acto da abertura das propostas, na fase de realização de lances, apuramento do concorrente vencedor e adjudicação do respectivo contrato.

### Artigo 105

#### (Critério de avaliação e decisão)

O Concurso por Lances é avaliado apenas pelo critério de menor preço, previsto nos termos do artigo 36 do presente Regulamento.

### SECÇÃO VI

#### Do Concurso de Pequena Dimensão

### Artigo 106

#### (Definição)

Concurso de Pequena Dimensão é a modalidade de contratação cuja estimativa de preço seja inferior a quinze por cento do limite estabelecido dos nºs 2 e 3 do artigo 90 do presente Regulamento, e restrita às pessoas singulares, micro e pequenas empresas.

EXHIBIT *8* PAGE *69*

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

Case 2:13-cv-02309-MMM-CW   Document 32-2   Filed 05/02/13   Page 60 of 71   Page ID #:990

### Artigo 107

#### (Fases)

O Concurso de Pequena Dimensão observa as fases definidas para o Concurso Público, nos termos do artigo 62 do presente Regulamento.

### Artigo 108

#### (Anúncio e Documentos de Concurso)

1. A realização do Concurso de Pequena Dimensão exige da Entidade Contratante a publicação de Anúncio do Concurso, nos termos previstos nos artigos 31 e 32 do presente Regulamento ou mediante divulgação na rádio e edital fixado na sede da Entidade Contratante.

2. Os Documentos de Concurso podem dispensar, no todo ou em parte, os documentos de qualificação previstos nos artigos 22, 23 e 25 do presente Regulamento, cabendo a Entidade Contratante definir e fazer expressamente no Anúncio e Documentos do Concurso, os requisitos de qualificação dispensados no todo ou em parte.

3. A certidão de quitação emitida pela Administração Fiscal, poderá ser substituída pela prova do pagamento de imposto através da retenção na fonte ou outra forma definida na legislação fiscal.

4 Os Documentos de Concurso devem ainda fixar prazo razoável e suficiente, não inferior a doze dias, para apresentação das propostas.

5. A Entidade Contratante poderá adoptar Documentos de Concurso simplificados para a contratação de empreitada de obras, fornecimento de bens e prestação de serviços de pequena dimensão.

### Artigo 109

#### (Garantia)

Na contratação de empreitada de obras, fornecimento de bens e prestação de serviços de pequena dimensão é permitido o pagamento de um adiantamento sem a apresentação de garantia, até ao limite de trinta por cento do valor do Contrato ou do orçamento dos materiais necessários à fase inicial da obra, o que for menor.

### Artigo 110

#### (Contrato)

A Entidade Contratante deve adoptar instrumentos escritos simplificados nos casos de contratação de obras, bens e serviços de pequena dimensão.

### Artigo 111

#### (Critério de Avaliação e Decisão)

O critério a observar pelo júri na avaliação, classificação e recomendação da decisão a tomar no Concurso de Pequena Dimensão é o do menor preço, previsto nos termos do artigo 36 do presente Regulamento.

### Artigo 112

#### (Recepção de Bens ou serviços)

Excepcionalmente, no caso de contratação de fornecimento de bens e prestação de serviços de pequena dimensão, quando comprovada a escassez ou falta de pessoal qualificado, a equipe de recepção poderá ser substituída por dois funcionários designados pela Entidade Contratante.

### SECÇÃO VII

#### Do Ajuste Directo

### Artigo 113

#### (Definição)

1. O Ajuste Directo é a modalidade de contratação aplicável sempre que se mostre inviável ou inconveniente a contratação em qualquer das outras modalidades definidas no presente Regulamento.

2: O Ajuste Directo aplica-se nas seguintes circunstâncias:

*a)* Se o objecto da contratação só poder ser obtido de um único empreiteiro de obras, fornecedor de bens ou prestador de serviços ou se a Entidade Contratante já tiver anteriormente contratado a aquisição de bens ou prestação de serviços de uma entidade e se justifique a manutenção da uniformidade de padrão;

*b)* Em situação de emergência, que possa causar danos irreparáveis ou de difícil reparação ao Estado ou à sociedade e apenas para satisfazer o objecto da emergência e pelo prazo da sua duração;

*c)* Em período de guerra ou grave perturbação da ordem pública;

*d)* Se em concurso anterior, o mesmo ficou deserto por falta de comparência de concorrentes ou por desclassificação de todos os concorrentes e não possa ser repetido sem prejuízo do interesse público;

*e)* Se o objecto da contratação respeitar à defesa e segurança nacional, especialmente na execução de obras militares sigilosas, fardamento e seus complementos, aquisição, reparação e manutenção de equipamento militar e de uso exclusivo das Forças de Defesa e Segurança;

*f)* Se o objecto da contratação se destinar ao abastecimento de navios, embarcações, unidades aéreas militares ou tropas e seus meios de deslocamento, quando em estadia eventual e de curta duração em portos, aeroportos ou localidades diferentes dos da sua nacionalidade e apenas o objecto da emergência e pelo prazo da sua duração;

*g)* Se a Entidade Contratante for o Serviço de Informações e Segurança do Estado; e

*h)* Na contratação de arrendamento.

3. O Ajuste Directo é ainda aplicável sempre que o valor estimado de contratação for inferior a cinco por cento do limite estabelecido nos termos dos n.ᵒˢ 2 e 3 do artigo 90 do presente Regulamento, devendo-se juntar pelo menos três cotações para justificar a razoabilidade do preço, da escolha do empreiteiro, fornecedor ou prestador de serviços.

4. Não é permitido o fraccionamento do valor estimado para a contratação com a finalidade de aplicar o Ajuste Directo.

### Artigo 114

#### (Fases)

O Ajuste Directo observa, pela ordem indicada, as seguintes fases:

*a)* De preparação;
*b)* De recebimento de proposta;
*c)* De aceitação da proposta;
*d)* De verificação de suficiência de qualificação para cumprimento do objecto, sempre que necessário; e
*e)* De adjudicação.

EXHIBIT ___F___ PAGE 60

Case 2:13-cv-02309-MMM-CW   Document 32-2   Filed 05/02/13   Page 62 of 71   Page ID #:992

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

### ARTIGO 115

#### (Anúncio e Documentos de Concurso)

1. A contratação por Ajuste Directo dispensa o Anúncio e Documentos de Concurso específicos, excepto na contratação do arrendamento, em que a Entidade Contratante deve publicar a sua intenção de contratar, nos termos do artigo 32 do presente Regulamento.

2. O modelo de contrato para o arrendamento, aprovado por Diploma Conjunto dos Ministros que superintendem as áreas das Finanças e das Obras Públicas e Habitação.

### ARTIGO 116

#### (Deveres da Entidade Contratante)

A Entidade Contratante deve:

*a)* Fundamentar a escolha da modalidade;
*b)* Verificar a qualificação do empreiteiro ou fornecedor;
*c)* Justificar a escolha da Contratada; e
*d)* Justificar a razoabilidade do preço e das condições de fornecimento.

### ARTIGO 117

#### (Critério de avaliação e decisão)

No Ajuste Directo, a Entidade Contratante deve observar as melhores condições de contratação, adoptando como parâmetros, sempre que possível, as condições praticadas no mercado.

### ARTIGO 118

#### (Comunicação obrigatória)

1. A contratação em Ajuste Directo deve ser notificada à Unidade Funcional de Supervisão das Aquisições

2. As comunicações referentes às Forças de Defesa e Segurança são feitas à Unidade Funcional de Supervisão das Aquisições.

## CAPÍTULO III

## Contratação de Serviços de Consultoria

### SECÇÃO I

#### Das disposições gerais

### ARTIGO 119

#### (Regras Gerais)

1. A contratação de Serviços de Consultoria deve obedecer a um processo prévio de selecção, ressalvados os casos previstos no presente Regulamento.

2. Na contratação de Serviços de Consultoria, a Entidade Contratante deve pugnar por serviços de qualidade, mediante competição justa, de acordo com as modalidades previstas no presente Regulamento.

3. O Consultor deve actuar e executar os serviços com diligência, profissionalismo e competência, no estrito interesse da Entidade Contratante.

4. No contrato de consultoria deve-se assegurar a transferência de conhecimentos do consultor para a contraparte designada pela Entidade Contratante.

### ARTIGO 120

#### (Consultores)

Os serviços de consultoria podem ser contratados a pessoas singulares, colectivas, públicas ou privadas, incluindo universidades e institutos de pesquisa

### ARTIGO 121

#### (Conflito de interesses)

1. Estão impedidos de prestar serviços de consultoria, os Consultores que estejam em conflito de interesses.

2. Considera-se conflito de interesses as situações que impeçam que o Consultor forneça um aconselhamento profissional, de forma objectiva e imparcial e dando preponderância aos interesses da Entidade Contratante, nomeadamente:

*a)* O Consultor que tenha participado, directa ou indirectamente e sob qualquer condição, na preparação dos termos de referência e outros documentos relacionados com a matéria objecto de contratação,

*b)* O Consultor contratado pela Entidade Contratante para a elaboração ou execução de uma tarefa, relativamente ao fornecimento subsequente de serviços relacionados com a mesma, excepto nos casos de continuação dos serviços anteriores de consultoria executados pelo próprio Consultor;

*c)* O Consultor cuja contratação para um serviço que, pela sua natureza, conflitue com outro serviço por si executado;

*d)* O Consultor cujos sócios, directores, membros de conselho superior ou pessoal técnico principal pertencer ao quadro permanente ou temporário da Entidade Contratante; e

*e)* O Consultor que mantenha uma relação contratual, directa ou por meio de terceiros, com a Entidade Contratante ou de parentesco nos termos da alínea *e)* do artigo 21, que lhe permita influenciar as decisões.

3. A verificação de uma situação de conflito de interesses resultará na desqualificação e rejeição da proposta apresentada pelo Consultor, ou na invalidade do contrato.

### ARTIGO 122

#### (Fases do processo de selecção)

O processo de selecção de consultores observa, pela ordem indicada, as seguintes fases:

*a)* De preparação e lançamento;
*b)* De apresentação de propostas técnicas e financeiras;
*c)* De abertura e avaliação das propostas técnicas;
*d)* De recomendação do júri;
*e)* De decisão sobre a avaliação das propostas técnicas;
*f)* De reclamação e recurso à avaliação das propostas técnicas;
*g)* De abertura e avaliação das propostas financeiras, simples ou conjugada, de acordo com o caso aplicável;
*h)* De recomendação do Júri;
*i)* De decisão sobre a avaliação das propostas financeiras;
*j)* De negociação do contrato, quando necessária;
*k)* De decisão;
*l)* De reclamação e recurso; e
*m)* De adjudicação.

### ARTIGO 123

#### (Termos de Referência)

Termos de referência é o documento que define claramente os objectivos, âmbito dos serviços, prazos, encargos e responsabilidade das partes, serviços almejados, qualificações desejadas, e fornecimento de informações disponíveis, tendo em vista a prestação de elementos necessários à elaboração das propostas pelos consultores.

EXHIBIT 4 PAGE 61

### Artigo 124

#### (Orçamento)

O orçamento deve tomar por base a avaliação da Entidade Contratante sobre os recursos necessários à execução dos serviços.

### Artigo 125

#### (Publicidade)

1. A Entidade Contratante deve publicar o anúncio no jornal de maior circulação no país, ou noutro meio de comunicação que melhor se justificar, solicitando manifestação de interesse.

2. As informações solicitadas devem limitar-se às mínimas necessárias a fim de determinar a qualificação dos consultores adequada ao objecto a ser contratado.

3. O prazo deve ser suficiente para a elaboração de respostas pelos consultores, o qual não poderá ser inferior a doze dias.

### Artigo 126

#### (Lista Curta)

1. A participação no processo de concurso está restrita a uma lista curta elaborada pela Entidade Contratante, em que se selecciona um mínimo de três e um máximo de seis consultores, para o mesmo objecto a ser contratado.

2. A elaboração da lista curta deve ser feita considerando os consultores que manifestem interesse, de acordo com o previsto no nº 1 do artigo 125 do presente Regulamento e possuam as qualificações necessárias, podendo-se recorrer aos que integram o cadastro, sempre que não se atinja o número referido no número anterior.

3. Na elaboração da lista curta, a Entidade Contratante deve sempre considerar pelo menos um terço de consultores nacionais, salvo nos casos de comprovada inexistência de consultores qualificados, para o efeito.

4. A Entidade Contratante deve preparar um relatório fundamentado sobre a escolha dos consultores integrantes da lista curta.

### Artigo 127

#### (Documentos de Concurso)

1. Dos Documentos de Concurso para selecção de consultores deve constar o seguinte:

   *a)* Carta de Solicitação de Propostas, que deverá indicar a intenção da contratação dos serviços, a data, hora, local de recepção e abertura das propostas;
   *b)* Informação aos Consultores, que deverá conter os elementos necessários à elaboração das suas propostas, critério de selecção, factores e respectivos pesos das propostas técnica e financeira, bem como a nota mínima para selecção;
   *c)* Termos de Referência; e
   *d)* Minuta do Contrato.

2. Os modelos de Documentos de Concurso, que fazem parte integrante do presente Regulamento, são de uso obrigatório.

### Artigo 128

#### (Prazo)

1. Os Documentos de Concurso para selecção de consultores devem fixar prazo razoável e suficiente para que os consultores elaborem as suas propostas, de acordo com a natureza e complexidade dos serviços, o qual não poderá ser inferior a vinte e um dias nem superior a noventa dias.

2. Os consultores podem solicitar esclarecimentos a respeito dos Documentos de Concurso, por escrito, no primeiro terço da data final prevista para recepção das propostas, devendo a Entidade Contratante responder por escrito, enviando cópia das respostas a todos os consultores constantes da lista curta.

### SECÇÃO II

#### Das modalidades de contratação

#### Subsecção I

#### Pessoas colectivas

### Artigo 129

#### (Regime Geral)

1. O regime geral para contratação de pessoas colectivas, constantes da lista curta, para execução de serviços de consultoria baseia-se na qualidade e no preço dos serviços a contratar.

2. A selecção com base na qualidade e no preço dos serviços a contratar é a modalidade regra para a selecção de consultores que sejam pessoas colectivas, constantes da lista curta, cujo critério baseia-se na avaliação conjugada da qualidade da proposta técnica e no preço oferecido para a execução dos serviços.

3. Nos Documentos de Concurso deve ser fixado o peso relativo atribuído à qualidade e ao preço, tendo em vista a natureza e complexidade do serviço, cabendo ao preço um peso não superior a trinta pontos de um total de cem.

4. As propostas serão classificadas de acordo com a conjugação das notas atribuídas às propostas técnica e financeira, com observância dos pesos referidos no número anterior.

5. A nota da proposta técnica de cada concorrente será obtida a partir da relação entre a pontuação atribuída a cada uma das propostas e a proposta que tenha obtido a maior pontuação.

6. A nota da proposta financeira de cada concorrente será obtida a partir da relação entre o menor preço entre as propostas apresentadas e o preço apresentado em cada proposta.

7. O consultor que obtiver a maior nota no total, conjugando as notas de técnica e de preço, e aplicação do peso referido no nº 3, será convidado para a subsequente negociação do contrato.

8. O júri deve elaborar relatório fundamentado sobre a avaliação das propostas, técnica e financeira.

### Artigo 130

#### (Regime Excepcional)

1. Sempre que se mostre conveniente ao interesse público e estejam presentes os requisitos fixados no presente Regulamento, a Unidade Gestora Executora das Aquisições deve, fundamentando, propor à Autoridade Competente a aplicação de regime excepcional para contratação de serviços de consultoria.

2. A decisão que declara verificados os requisitos de contratação em regime excepcional e que determina a aplicação deste regime para contratação de serviços de consultoria deve ser fundamentada por escrito pela Autoridade Competente.

3. As modalidades de contratação em regime excepcional são baseadas:

   *a)* Na qualidade;
   *b)* Em preço máximo;
   *c)* Em preço fixo.

EXHIBIT *8* PAGE *62*

*d)* Nas qualificações do consultor;

*e)* Selecção de pessoa singular; e

*f)* Ajuste directo.

4. A modalidade a que se refere a alínea *b)* do número anterior será limitada ao valor da alínea *a)* do n.º 2 do artigo 90 do presente Regulamento.

5. A modalidade a que se refere a alínea *d)* do n.º 3 do presente artigo será limitada ao valor da alínea *b)* do n.º 2 do artigo 90 do presente Regulamento.

6. As contratações em regime excepcional regem-se, subsidiariamente, pelas normas do Regime Geral de contratação de consultores.

### ARTIGO 131

#### (Selecção baseada na qualidade)

1. A selecção baseada na qualidade é a modalidade de contratação na qual a avaliação tem como base a qualidade da proposta técnica

2. A aplicação da selecção baseada na qualidade deve ser fundamentada pela Unidade Gestora Executora das Aquisições e depende de autorização prévia da Autoridade Competente.

3. Os Documentos de Concurso devem estabelecer que os consultores integrantes de uma lista curta apresentem as propostas técnica e de preço, simultaneamente, em envelopes separados

4. Após a determinação da melhor proposta técnica, e observadas as formalidades previstas no presente Regulamento, o consultor que tenha submetido a melhor proposta técnica aceitável, em conformidade com os Documentos de Concurso, deverá ser convidado para a abertura do envelope contendo a proposta financeira.

5. Observadas as disposições do presente Regulamento, a proposta financeira estará sujeita às negociações pertinentes.

6. O júri deve elaborar relatório fundamentado sobre a avaliação das propostas.

### ARTIGO 132

#### (Selecção baseada em preço máximo)

1. A selecção baseada em preço máximo é a modalidade de contratação na qual a avaliação tem como base a melhor proposta técnica, observados os limites do preço máximo estabelecido nos Documentos de Concurso.

2 Esta modalidade é aplicável quando os serviços não forem complexos e o preço máximo puder ser estabelecido.

3. Os Documentos de Concurso indicarão o preço máximo, convidando os consultores integrantes de uma lista curta à apresentação de suas melhores propostas técnica e financeira, em envelopes separados, dentro dos limites do preço máximo.

4. Na selecção baseada no preço máximo a Entidade Contratante deve assegurar que esse preço é suficiente para execução dos serviços previstos nos Termos de Referência.

5. Após a avaliação das propostas técnicas, e observadas as disposições do presente Regulamento, serão abertos em sessão pública os envelopes de preço das propostas que tenham obtido a pontuação mínima estabelecida nos Documentos de Concurso.

6. As propostas que ultrapassarem o preço máximo serão desclassificadas. O consultor que tenha submetido a melhor proposta técnica, dentro do preço máximo estabelecido nos Documentos de Concurso deverá ser seleccionado e convidado a negociar o contrato

7. O júri deverá elaborar relatório fundamentado sobre a avaliação das propostas.

### ARTIGO 133

#### (Selecção baseada em menor preço)

1. A selecção baseada em menor preço é a modalidade de contratação na qual a avaliação tem como base a proposta de menor preço, entre as propostas técnicas que obtiveram a pontuação mínima estabelecida nos Documentos de Concurso.

2. Esta modalidade é aplicável para contratação de serviços com padrões existentes ou rotinas estabelecidas.

3. Os Documentos de Concurso deverão estabelecer que os consultores integrantes de uma lista curta apresentarão proposta técnica e financeira, simultaneamente, em envelopes separados.

4. Os critérios de avaliação e a nota mínima exigida, constantes dos Documentos de Concurso, devem assegurar a qualidade mínima necessária para a execução dos serviços.

5. Após a avaliação das propostas técnicas e observadas as disposições do presente Regulamento, serão abertos os envelopes de preço das propostas que tenham obtido a pontuação mínima estabelecida nos Documentos de Concurso.

6. O consultor que tenha submetido a proposta de menor preço deverá ser seleccionado e convidado a celebrar o contrato.

7. O Júri deve elaborar relatório fundamentado sobre a avaliação das propostas.

### ARTIGO 134

#### (Selecção baseada nas qualificações do consultor)

1. A selecção baseada nas qualificações do consultor é a modalidade de contratação na qual a avaliação tem como base a comparação da qualificação de pelo menos três consultores.

2. Esta modalidade é aplicável para contratação de pequenos serviços de consultoria, quando não se justificar a preparação e avaliação de propostas competitivas.

3. A Entidade Contratante deve preparar os Termos de Referência, solicitar manifestações de interesse, informações relativas à experiência e competência dos consultores relevantes para a execução do serviço, elaborar uma lista curta e seleccionar o consultor com qualificação e referências adequadas.

4. O consultor seleccionado será convidado a apresentar proposta técnica e financeira e negociar o contrato.

5. O júri deverá elaborar relatório fundamentado sobre a avaliação das propostas.

### ARTIGO 135

#### (Ajuste Directo)

1. O Ajuste Directo é aplicável somente em circunstâncias excepcionais e condições de vantagem em relação ao procedimento competitivo.

2. São consideradas situações de vantagem em relação ao procedimento competitivo:

*a)* Serviços que envolvam continuação de trabalhos anteriores já executados pelo mesmo consultor;

*b)* Desenvolvimento do procedimento competitivo em prazo prejudicial ao interesse público;

*c)* Serviços cujo preço estimado seja inferior a cinco por cento nos termos do n.º 2 do artigo 90 do presente Regulamento; e

*d)* Existência de apenas um consultor qualificado ou com experiência relevante para a execução do serviço.

EXHIBIT *8* PAGE *63*

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

2. O Ajuste Directo deverá ser devidamente fundamentado pela Unidade Gestora Executora das Aquisições, excepto para os casos previstos na alínea *c)* do nº 3 supra.

### Subsecção II

### Pessoas singulares

### ARTIGO 136

#### (Selecção de pessoas singulares)

1. A selecção de pessoa singular é aplicável para serviços de consultoria em que a experiência e qualificações da pessoa são os requisitos principais.

2. As pessoas singulares são seleccionadas com base na comparação de, pelo menos, três candidatos dentre aqueles que manifestarem interesse na execução dos serviços, podendo a Entidade Contratante seleccionar entre consultores cadastrados ou entre consultores que já executaram serviços satisfatórios para a mesma.

3. Os consultores individuais contratados deverão preencher todos os requisitos relevantes de qualificações e capacidade para o desempenho da tarefa.

4. A capacidade será aferida com base nos antecedentes académicos, experiência e, quando necessário, no conhecimento das condições locais e outros factores relevantes.

5. O consultor seleccionado será convidado a apresentar propostas técnica e financeira, previamente à celebração do contrato.

### SECÇÃO III

### Outras Disposições

### ARTIGO 137

#### (Critérios de Avaliação)

1. A avaliação das propostas técnicas deve ter em conta as características dos serviços a serem contratados conforme os seguintes critérios:

*a)* Experiência do Consultor para a execução do serviço;
*b)* Qualidade da metodologia proposta;
*c)* Qualificação do pessoal chave proposto;
*d)* Transferência de conhecimento, quando aplicável; e
*e)* Grau de participação de pessoal nacional entre o pessoal chave utilizado na execução do serviço.

2. Os critérios indicados no número anterior deverão ser detalhados em subcritérios, conforme seja relevante para os serviços a serem contratados, com atribuição da respectiva pontuação.

3. Os elementos de avaliação técnica podem ser expressos por fórmula matemática que contemple, de forma objectiva, as variáveis previstas no número 1 do presente artigo.

4. Os critérios de avaliação das propostas técnicas previstas no nº 1 do presente artigo devem ser fixados tendo em consideração os seguintes parâmetros, totalizando cem pontos:

*a)* Experiência do Consultor: de cinco a dez pontos;
*b)* Metodologia: de vinte a cinquenta pontos;
*c)* Pessoal chave: de trinta a sessenta pontos;
*d)* Transferência de conhecimento: de zero a quinze pontos; e
*e)* Participação de consultores nacionais: zero a dez pontos.

5. A pontuação atribuída aos elementos de avaliação técnica e à decisão que os rejeite deve ser devidamente fundamentada no relatório de avaliação.

### ARTIGO 138

#### (Negociações)

1. As negociações compreendem discussões a respeito dos Termos de Referência, metodologia, pessoal, despesas e condições contratuais da Entidade Contratante e do Consultor. Destas discussões não poderão resultar modificações substanciais dos Termos de Referência originais ou dos termos do contrato, por forma a não afectar a qualidade do produto final, o preço e os aspectos fundamentais que foram objecto da avaliação.

2. Salvo circunstâncias excepcionais, devidamente fundamentadas, os preços unitários não serão objecto de negociação, visto terem sido utilizados como factor de selecção na proposta de preço.

3. Os Termos de Referência finais e os aspectos objecto de negociação serão incorporados ao contrato.

4. Salvo nos casos excepcionais, fora do controlo do Consultor, a substituição de pessoal chave resultará na rejeição da proposta. Nos casos permitidos, a substituição deve ser feita por profissional de igual ou maior qualificação.

5. No caso das negociações não resultarem satisfatórias, a Entidade Contratante encerrará as negociações notificando por escrito ao consultor e convidando a classificada seguinte. A notificação do término das negociações deverá indicar as razões que a fundamentam.

6. Todas as negociações serão registadas em acta e devidamente assinadas pelas partes.

### ARTIGO 139

#### (Tipos de Contrato)

1. Os serviços de consultoria obedecem aos seguintes regimes de contratação:

*a)* Por preço global: aplicável quando o escopo dos serviços estão vinculados à entrega de produto definido e cujo pagamento é fixado, com base no cumprimento de etapas ou entrega do produto;
*b)* Baseado no tempo: aplicável quando o escopo dos serviços não está vinculado à entrega de produto definido e cujo pagamento é fixado com base em preço por unidade de tempo estabelecido.

2. A utilização de outros tipos de contrato depende de prévia autorização da Unidade Funcional de Supervisão das Aquisições.

### CAPÍTULO IV

### Reclamações e recursos

### ARTIGO 140

#### (Admissão de reclamação)

1. Podem ser objecto de reclamação para a Entidade Contratante os actos de classificação, desclassificação e adjudicação previstos no presente Regulamento.

2. As reclamações devem ser apresentadas por escrito no prazo de três dias úteis a contar da data da sua notificação.

3. No decurso dos prazos para reclamação, os concorrentes têm consulta livre do procedimento administrativo do concurso.

4. Cabe ao Júri remeter a reclamação bem como o seu parecer à Entidade Contratante, no prazo máximo de três dias úteis após a recepção da reclamação.

5. A Entidade Contratante decidirá em definitivo a reclamação no prazo de três dias úteis a contar da data da sua recepção.

EXHIBIT 8 PAGE 64

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

6. A reclamação produz efeitos suspensivos no andamento do concurso.

### ARTIGO 141

#### (Taxa de reclamação)

1. Como condição de aceitabilidade da reclamação, o Concorrente deve apresentar uma garantia, a título de caução, cujo valor não seja superior a 0,25% do valor estimado da contratação limitado a 125.000,00MT (cento e vinte e cinco mil meticais), actualizável mediante despacho do Ministro que superintende a área das Finanças.

2. O montante recolhido deve ser restituído ao concorrente sempre que a reclamação seja considerada procedente e, não o sendo, revertido a favor da Entidade Contratante.

### ARTIGO 142

#### (Admissão de recurso hierárquico)

1. Dos actos da Entidade Contratante cabe recurso hierárquico, dentre outros, para o Ministro de tutela, Governador Provincial e Administrador do Distrito, relativamente aos níveis central, provincial e distrital, respectivamente.

2. O recurso hierárquico tem por fundamento, nomeadamente:

   *a)* A violação das normas do presente Regulamento;

   *b)* A violação das normas constantes nos Documentos de Concurso; e

   *c)* O vício de forma, incluindo a falta de fundamentação de facto e de direito do acto administrativo.

3. O recurso hierárquico deve ser interposto no prazo de três dias úteis após a notificação da decisão sobre a reclamação prevista no artigo 140 do presente Regulamento.

4. O recurso hierárquico produz efeitos suspensivos ao procedimento de contratação no prazo máximo de cinco dias úteis, sendo que a falta de decisão não implica deferimento ou indeferimento tácito.

5. Os órgãos indicados no n° 1 podem solicitar parecer especializado da Unidade Funcional da Supervisão das Aquisições.

### ARTIGO 143

#### (Taxa de recurso hierárquico)

1. Como condição de aceitabilidade do recurso hierárquico o concorrente deve apresentar uma garantia, a título de caução, cujo valor não seja superior a 0,25% do valor estimado da contratação limitado a 125.000,00MT cento e vinte e cinco mil meticais), actualizável mediante despacho do Ministro que superintende a área das Finanças.

2. O montante recolhido deve ser restituído ao concorrente se for verificado ser procedente o recurso e, não o sendo, revertido a favor da Entidade Contratante.

### ARTIGO 144

#### (Recurso contencioso)

1. A decisão proferida em recurso hierárquico é susceptível de recurso contencioso.

2. O recurso contencioso deve ser interposto no prazo de dez dias a contar da data da notificação da decisão proferida em recurso hierárquico.

3. O recurso contencioso rege-se pela legislação específica.

## CAPÍTULO V

### Ética e actos ilícitos

#### SECÇÃO I

##### Da ética

### ARTIGO 145

#### (Práticas anti-éticas)

1. A Entidade Contratante e os Concorrentes devem observar os mais elevados padrões de ética durante o procedimento de contratação e execução das obras, fornecimento de bens e prestação de serviços, nos termos da legislação em vigor.

2. No cumprimento destes princípios, consideram-se para efeitos do presente Regulamento as seguintes definições:

   *a)* "Prática corrupta" significa oferecer, dar, receber ou solicitar algo de valor para influenciar o acto de um funcionário público no procedimento de contratação ou na execução de contrato;

   *b)* "Prática fraudulenta" significa uma deturpação ou omissão dos factos, a fim de influenciar um procedimento de contratação ou a execução de um contrato em prejuízo da Entidade Contratante;

   *c)* "Prática de colusão" significa a prática conivente entre Concorrentes, com ou sem o conhecimento da Entidade Contratante, realizada para estabelecer preços de propostas em níveis artificiais, não competitivos e privar a Entidade Contratante dos benefícios da competição livre e aberta; e

   *d)* "Prática de coerção" significa ameaça ou tratamento ameaçador a pessoas ou seus familiares para influenciar a sua participação no procedimento de contratação ou a execução do contrato.

3. No caso de ocorrer uma ou mais práticas mencionadas no número anterior, a Entidade Contratante rejeitará a Proposta e declarará o Concorrente impedido nos termos do presente Regulamento.

#### SECÇÃO II

##### Dos actos ilícitos

### ARTIGO 146

#### (Actos praticados por agentes do Estado)

Independentemente de qualquer outro procedimento aplicável, são passíveis a procedimento disciplinar, nos termos do Estatuto Geral dos Funcionários e Agentes do Estado, os agentes ou funcionários, que participando ou tomando parte no procedimento de contratação, violem ou deixem de observar o preceituado no presente Regulamento e nos Documentos de Concurso.

### ARTIGO 147

#### (Actos praticados por concorrentes)

1. São passíveis de procedimento administrativo referido nos números seguintes os concorrentes que, por si ou por intermédio de outrem, induzam ou concorram para a prática de acto que viole o preceituado no presente Regulamento ou nos Documentos de Concurso.

2. Compete a Unidade Funcional de Supervisão das Aquisições instaurar, conduzir e decidir os procedimentos administrativos referidos no número anterior, nos termos a serem estabelecidos por despacho do Ministro que superintende a área das Finanças

EXHIBIT 8 PAGE 65

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

Edição electrónica © Pandora Box Lda. - todos os direitos reservados

3. Independentemente de qualquer outro procedimento são aplicáveis as seguintes sanções:

    *a)* Multa, conforme estabelecido no Documento de Concurso;

    *b)* Proibição de contratar com o Estado, pelo período de um ano; e

    *c)* Em caso de reincidência, proibição de contratar com o Estado pelo período de cinco anos.

4. As sanções referidas no número anterior terão em conta:

    *a)* A gravidade da infração relativamente ao objecto da contratação;

    *b)* Situação económico-financeira do concorrente, em especial a sua capacidade de geração de receitas;

    *c)* O grau de envolvimento do concorrente para a consumação do acto ilícito;

    *d)* O benefício colhido pelo concorrente;

    *e)* O valor das despesas administrativas causadas pela invalidação do acto ilícito; e

    *f)* A reincidência.

## IMPRENSA NACIONAL DE MOÇAMBIQUE, E.P.

### Rectificação

Tendo sido publicado com inexactidão a edição do suplemento do *Boletim da República*, 1.ª série, n.º 9, de 8 de Março de 2010, relactivamente as cabeças do *Boletim da República*, nas páginas interiores, rectifica-se que, onde se lê: « I Série – Número 51» deve ler-SE:« I Série – Número 9».

EXHIBIT 8 PAGE 66



Edição electrónica © Pandora Box Lda. - todos os direitos reservados

*privacy* *All people* *Speak* *without discrimination*

# California Secretary of State Debra Bowen

**Secretary of State**    **Administration**    **Elections**    **Business Programs**    **Political Reform**    **Archives**    **Registries**

**Business Entities (BE)**

Online Services
- E-File Statements of Information for Corporations
- Business Search
- Processing Times
- Disclosure Search

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Statements of Information** (annual/biennial reports)

**Filing Tips**

**Information Requests** (certificates, copies & status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- Business Resources
- Tax Information
- Starting A Business

Customer Alerts
- Business Identity Theft
- Misleading Business Solicitations

## Business Entity Detail

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Friday, April 19, 2013. Please refer to **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

| | |
|---|---|
| Entity Name: | SILBERBERG INNOVATIONS, LLC |
| Entity Number: | 201029410234 |
| Date Filed: | 10/20/2010 |
| Status: | ACTIVE |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 17250 W SUNSET BLVD STE 206 |
| Entity City, State, Zip: | PACIFIC PALISADES CA 90272 |
| Agent for Service of Process: | ALAN W SILBERBERG |
| Agent Address: | 17250 W SUNSET BLVD STE 206 |
| Agent City, State, Zip: | PACIFIC PALISADES CA 90272 |

\* Indicates the information is not contained in the California Secretary of State's database.

* **Note:** If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report.

- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search**  **New Search**  **Printer Friendly**  **Back to Search Results**

**Privacy Statement** | **Free Document Readers**
Copyright © 2013   California Secretary of State

EXHIBIT _9_ PAGE _67_

**EXHIBIT 9**

Business Search - Business Entities - Business Programs                                Page 1 of 1

# California Secretary of State Debra Bowen

Secretary of State    Administration    Elections    Business Programs    Political Reform    Archives    Registries

**Business Entities (BE)**

Online Services
- **E-File Statements of Information for Corporations**
- **Business Search**
- **Processing Times**
- **Disclosure Search**

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Statements of Information** (annual/biennial reports)

**Filing Tips**

**Information Requests** (certificates, copies & status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- **Business Resources**
- **Tax Information**
- **Starting A Business**

Customer Alerts
- **Business Identity Theft**
- **Misleading Business Solicitations**

## Business Search - Results

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Friday, April 19, 2013. Please refer to **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

- *Select an entity name below to view additional information.* Results are listed alphabetically in ascending order by entity name.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

Results of search for " SILBERBERG INNOVATIONS, LLC " returned 1 entity record.

| Entity Number | Date Filed | Status | Entity Name | Agent for Service of Process |
|---|---|---|---|---|
| 201029410234 | 10/20/2010 | ACTIVE | **SILBERBERG INNOVATIONS, LLC** | ALAN W SILBERBERG |

**Modify Search**  **New Search**

**Privacy Statement** | **Free Document Readers**
Copyright © 2013   California Secretary of State

EXHIBIT __9__ PAGE __68__

Division of Corporations - Online Services

Delaware.gov | Text Only

Governor | General Assembly | Courts | Elected Officials | State Agencies

**Department of State: Division of Corporations**

Frequently Asked Questions   View Search Results

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent
Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws
Online
Name Reservation
Entity Search
Status
Validate
Certificate
Customer Service
Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and
Fees
Taxes
Expedited
Services
Service of Process
Registered Agents
Get Corporate
Status
Submitting a
Request  How to
Form a New
Business Entity
Certifications,
Apostilles &
Authentication of
Documents

Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | 5095327 | Incorporation Date / Formation Date: | 01/11/2012 (mm/dd/yyyy) |
| Entity Name: | EDUMOZ, LLC | | |
| Entity Kind: | LIMITED LIABILITY COMPANY (LLC) | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |

**REGISTERED AGENT INFORMATION**

| | |
|---|---|
| Name: | **CORPORATION SERVICE COMPANY** |
| Address: | **2711 CENTERVILLE RD STE 400** |
| City: | **WILMINGTON** | County: | **NEW CASTLE** |
| State: | **DE** | Postal Code: | **19808** |
| Phone: | **(302)636-5401** |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information [ Submit ]

[ Back to Entity Search ]

To contact a Delaware Online Agent click here.

**EXHIBIT 10**

EXHIBIT 10 PAGE 69

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on counsel of record via ECF Notice of Electronic Filing in accordance with the Federal Rules of Civil Procedure and Local Rule 5-3.3.

By:     */s/ Juan C. Basombrio*
Juan C. Basombrio